FILED
JEANNE A. NAUGHTON, CLERK

JUN 21 2026

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY D. Chonam_____DEPUTY

# UNITED STATES BANKRUPTCY COURT — DISTRICT OF NEW JERSEY

### Caption in Compliance with D.N.J. LBR 9004-1(b)

AVRUMI LUBIN, Debtor Pro Se · 1460 Arboretum Parkway, Lakewood, New Jersey 08701 · (718) 570-3796 · josh@tetonfunding.com

**In re: AVRUMI LUBIN a/k/a Josh Lubin, Debtor. · Case No. 26-17342-EJO · Chapter 11 · Judge: Hon. Eamonn J. O'Hagan · Hearing Dates: Dkt. 13 (Motion to Vacate) — July 23, 2026 at 2:00 p.m., by Zoom; Dkt. 33 (Supplemental Motion for Stay Relief) — August 6, 2026 at 10:00 a.m., Courtroom 2, Trenton**

## DEBTOR'S OBJECTION TO THE FVP PARTIES' MOTION TO VACATE THE AUTOMATIC STAY AND TO DISMISS THE CASE WITH PREJUDICE (DKT. 13) AND SUPPLEMENTAL MOTION (DKT. 33)

**Contents:** I. Preliminary Statement (¶¶ 1–4) · II. Background (¶¶ 5–8) · III.A. No cause to dismiss (¶¶ 9–17) · III.B. § 362(d)(4) (¶ 18) · III.C. No cause to vacate the stay (¶¶ 19–23) · III.D. Supplemental motion: the stay applies; relief opposed (¶¶ 24–25) · III.E. The proposed order (¶¶ 26–29) · IV. Conclusion (¶ 30)

## I. PRELIMINARY STATEMENT

1. This case was seven days old when the FVP Parties moved to end it. Their proposed order would dismiss with prejudice; bar refiling for two years by the Debtor and "any person or entity acting in concert with or at the direction of the Debtor" (Dkt. 13-3 ¶ 4); switch the automatic stay off, in advance, in any case "filed by or against" the Debtor for two years — including one filed *against* him — as to his membership interests and "other property subject to FVP's judgment" (Dkt. 13-3 ¶ 5); grant in rem relief to the extent the Debtor "holds any interest in real property" (Dkt. 13-3 ¶ 6); and waive the fourteen-day stay of Fed. R. Bankr. P. 4001(a)(4) (Dkt. 13-3 ¶ 2). This is a first-ever filing by an individual debtor whose principal assets — membership interests in operating and asset-holding LLCs that hold substantial litigation claims — were days from a creditor-conducted private sale beyond the estate's reach, under orders now on appeal and subject to pending vacatur motions in the issuing court. Preserving that value for all creditors is what Chapter 11 serves, and the motion should be denied. Eleven days later, the movants filed a supplemental motion (Dkt. 33) so the Debtor's three Florida appeals may proceed — one whose memorandum "acknowledge[s] that, under controlling authority, the automatic stay applies to these appeals" (Dkt. 33-1 at 2). The Debtor responds to both here.

2. The Debtor proceeds pro se and has promptly addressed his post-petition duties and each request of the U.S. Trustee, as detailed at ¶ 6. The § 341 meeting is set for July 22, 2026 (Dkt. 10), and on July 16, 2026 the Court granted his timely application, extending the schedules and statement-of-financial-affairs deadline to July 23, 2026 (Dkt. 23; Order, Dkt. 39). The movants, by contrast, ask this Court to credit — conclusively — a record obtained after a co-defendant settlement whose operative terms are set out at ¶¶ 7–8 and supplied in full in the executed agreement itself (Debtor's Ex. M).

3. **The Debtor's position, in half a page.** *First,* this is the Debtor's first bankruptcy case of any kind, filed on the eve of an irreversible private sale of his principal assets. *Second,* the Debtor is a debtor-in-possession actively complying with, and curing, the requirements identified to date under court-approved deadlines, with a concrete reorganizational path beyond stopping the sale: completing the schedules and § 341 meeting, reconciling claims and credits, preserving the membership interests, preserving the disputed litigation rights while their ownership is resolved in the appropriate forum, and proposing a plan (¶¶ 6, 13). *Third,* § 362(d)(4) does not reach this case, as the movants' own memorandum concedes: the assets they are selling are "the Debtor's limited-liability-company membership interests — personal property, not real property." (Dkt. 13-2 at 5.) *Fourth,* on Dkt. 33 the Debtor opposes relief from the stay: the movants' own memorandum concedes the automatic stay applies to the three appeals, and the Fourth District's directive is fully satisfied by a neutral comfort order confirming that the stay applies — not by lifting it. If the Court

1

nonetheless grants relief, it should be confined to the narrow, appeals-only form the Debtor submits in the alternative (¶ 25). *Fifth*, any relief keyed to the size or status of the movants' claim should await one sworn payoff and credit accounting reconciling the conflicting balances the movants' own filings recite — "exceeds $8.84 million" versus approximately $4.51 million (¶¶ 16–17). The extraordinary add-ons — dismissal with prejudice, a refiling bar reaching nonparties, prospective stay-off relief in cases not yet filed, in rem relief the movants concede is unavailable, and a Rule 4001(a)(4) waiver — should be denied (§§ III.A, III.E).

4. **What the Debtor does not argue.** The Debtor does not ask this Court to vacate or review the Florida judgments; that relief belongs to the Florida courts, where it is being sought. He does not contend that settling with co-defendants is unlawful. The Debtor does not ask this Court to decide in this contested matter whether the settlement structure or its exclusion from the jury was lawful or proper; those issues are reserved for the Florida courts. The objection rests on this record: a first-time debtor actively complying under court-approved deadlines; an asset-holding estate; claims materially disputed as to amount, credits, satisfaction, and enforcement mechanism; and requested relief the movants' own authorities do not support.

## II. BACKGROUND

5. **A. The estate.** Subject to the schedules and statement of financial affairs, the Debtor's principal assets are his **membership interests** in operating and asset-holding limited-liability companies — a 100% single-member interest in Spin Capital, LLC (N.J.) and in Teton Funding, LLC (Del.); a 100% single-member interest in JL Special Investments, LLC (Del.) and in Teton Funding Group, LLC; and a membership interest in Teton Life, LLC (Del.), a multi-member company. Those interests, and no more, are what the stay preserves and the noticed private sales would convey. The companies hold their own assets — Spin Capital, for example, holds an affirmed New York judgment in *Spin Capital, LLC v. Bridgelink Engineering, LLC*, 2026 N.Y. Slip Op. 02296 (App. Div., 2d Dep't, Apr. 15, 2026) ($8,234,160.50, affirmed), plus a merchant-cash-advance portfolio — but the estate's interest is that of the member, not direct ownership of the underlying claims. Spin and the other companies also hold contested litigation and recovery claims, including rights under a January 28, 2022 Common Interest and Joint Litigation Agreement between Spin Capital and Hi Bar Capital, LLC and a related claim to recover the $2,107,548.61 released from the federal registry in the *Auto Wholesale of Boca* bankruptcy on August 27, 2025. Ownership of those rights — as between the Debtor and Spin Capital — is disputed and unadjudicated; the AWB court expressly declined to decide "the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds" (AWB Dkt. 952 at 9; Debtor's Ex. E). The Broward court's ensuing August 14, 2025 order endorsing the co-defendants' settlement (within Debtor's Ex. F) held that the Debtor lacked standing to interfere with that settlement and that he and his affiliated entities had no rights in the "Net Proceeds" as there defined; it did not allocate ownership of the underlying claims as between the Debtor and Spin Capital — and the movants' counsel acknowledged at the hearing the day before that even a settlement made in breach of the January 28, 2022 agreement "gives Lubin a cause of action" (Hr'g Tr. Aug. 13, 2025, at 15:13–15; Debtor's Ex. H), a claim among the contested rights this estate administers. The estate owns the Debtor's membership interests and any claims separately assigned to the Debtor — including under the Absolute Assignment of Interests and Rights executed by Spin Capital to the Debtor on March 17, 2025 (Debtor's Ex. L), whose continuing effect is itself among the disputed questions. Claims owned by Spin Capital or another non-debtor company remain that company's property; they bear on the value of the estate's membership interests only subject to each company's liabilities, governance documents, assignments, and the rights of any other members. The point here is narrower: the identity and ownership of these disputed rights should be preserved and resolved in the appropriate forum — not irreversibly transferred or impaired before ownership and standing are resolved. [Decl. ¶¶ 4–8; Debtor's Exs. E, G, L.]

6. **B. The filing and the Debtor's conduct.** The petition was filed June 25, 2026 — the day before a noticed private sale of the Spin and Teton Funding interests (Movants' Ex. K, Dkt. 15-10); a second private sale (JL

Special) is noticed for July 24, 2026 (Debtor's Ex. C). The full filing fee was paid at filing. The application to extend the schedules deadline was filed July 7, within the Rule 1007(c) period (Dkt. 23); the Court heard it July 16, granted it, and extended the deadline to July 23, 2026 (Dkt. 39). The U.S. Trustee's initial debtor interview was held July 10; the Debtor's document production reached the U.S. Trustee that same day. The Debtor filed his first periodic report under Fed. R. Bankr. P. 2015.3 (Official Form 426) on July 16, 2026 (Dkt. 38), with an entity report for each of the five entities in which he holds a substantial or controlling interest within the meaning of Rule 2015.3, a supporting statement, and an organizational chart. The U.S. Trustee's July 14 insurance follow-up was answered the same day; on July 17, 2026 the Debtor submitted the required policy-change requests to the carrier — through its portal and by signed written requests — and provided confirmation to the U.S. Trustee's office that day, with the carrier's completed endorsement to follow. The Debtor filed notices of compliance in the Fourth District on July 15, 2026, within the fourteen-day period directed by that court's July 1, 2026 order (Dkt. 34-1, as to Appeal Nos. 4D2026-1512 and 4D2025-3564) and its July 2, 2026 order (Debtor's Ex. N, as to Appeal No. 4D2026-1833). He requested limited CM/ECF access on July 7 (Dkt. 22); the request was denied July 14 (Dkt. 35), so this objection is filed on paper, within the Dkt. 18 deadline. Lacking electronic-filing access, the Debtor has served these papers by electronic mail on the parties currently receiving electronic notice in this case — the FVP Parties and Franklin Capital Funding, LLC through their appearing counsel, and the United States Trustee (see Dkt. 43) — and respectfully requests that the Court deem that service sufficient under the shortened-time circumstances, or permit the Debtor promptly to complete any additional service the Court directs. As to hearing dates: the movants' motion at Dkt. 13 is set for hearing on July 23, 2026 at 2:00 p.m. by Zoom, under the Court's July 6, 2026 order shortening time (Dkt. 18), and the Court's June 25, 2026 Order to Show Cause (Dkt. 5) was reset from July 16 to that same July 23, 2026 Zoom hearing. The supplemental motion (Dkt. 33), which the Court on July 16, 2026 re-designated as a motion for relief from the automatic stay, is separately scheduled for August 6, 2026 at 10:00 a.m. in Courtroom 2, Trenton (¶ 19). The July 16, 2026 docket entry relates Dkt. 33 to Dkt. 13 but does not reschedule the July 23, 2026 hearing on Dkt. 13. This objection is filed by the July 21, 2026 objection deadline applicable to Dkt. 13 and addresses both motions.

7. **C. The movants' judgments and the co-defendant settlement.** The movants — FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (together, the "FVP Parties") — hold a judgment entered October 3, 2025 by the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "Broward court"), in *FVP Opportunity Fund III, LP v. Karma of Broward, Inc.*, No. CACE-22-005125, a commercial action in which the Debtor and Hi Bar Capital, LLC were among the defendants; a separate October 6, 2025 judgment in the same action is held by the Franklin parties, non-movants here (¶ 10). The judgments followed a trial conducted after the movants, the Franklin parties, and the Debtor's co-defendants — Hi Bar Capital, LLC, Yisroel Herbst, and Mordechai Herbst (the "Hi Bar Parties") — entered into a written settlement agreement, executed in July 2025 and submitted in full as Debtor's Exhibit M (the "Settlement Agreement"). Settling with co-defendants is lawful; the Debtor does not ask this Court to decide in this contested matter whether the settlement structure or its exclusion from the jury was lawful or proper — those issues are reserved for the Florida courts (¶ 4). The Settlement Agreement is not offered to prove the validity, liability, or amount of any claim; it is offered under Fed. R. Evid. 408 for the limited purposes of showing party alignment and bias, the existence of material claim-administration disputes, and why the requested extraordinary relief should not be granted without an accounting.

The Settlement Agreement is submitted as Debtor's Exhibit M. Its pages bear a "Highly Confidential" footer, but no protective order or sealing order governing the Agreement has been identified in the record; the Debtor is not a party or signatory to it; and no identified provision imposes any confidentiality obligation on him — § 20 provides that "[n]o third party, and specifically, without limitation, Lubin, Spin or Getter, shall have any rights whatsoever under this Settlement Agreement" (Ex. M § 20). At the August 13, 2025 hearing before the Honorable David A. Haimes — in the same Broward action in which the judgments were entered — FVP's counsel stated on the record that "the agreement is not confidential," that he had "no

objection" to providing it to the Debtor, and that the Debtor was "entitled to see it"; Hi Bar's counsel confirmed that the Hi Bar settlement would be provided; and the court directed that the Debtor receive a copy. (Hr'g Tr. Aug. 13, 2025, at 25:5–14, 43:11–44:5, 45:7–8; Debtor's Ex. H.) The Debtor does not characterize that direction as an express ruling that the Agreement is public; but those open-court representations support submitting it as a regular public exhibit. The December 16, 2025 agreed order does not seal or identify the Settlement Agreement. Its confidentiality direction applies to the payment information and source-of-payment material the FVP Parties were ordered to provide to the Debtor's counsel concerning the setoff; that separately produced material is not attached or quoted here. (Ex. D, finding ¶ 3; see ¶ 17.) Accordingly, the Settlement Agreement is submitted as a regular public exhibit; its operative terms are set out at ¶ 8.

8. **The operative terms.** The Settlement Agreement's terms bear directly on party alignment, bias, and the administration of the movants' claims. The Hi Bar Parties "acknowledge and agree that both the FVP Parties and Franklin Parties shall prosecute all operative claims in the State Court Litigation against Hi Bar, as a necessary party of interest, in order to afford complete relief so as to pierce the corporate veil of Hi Bar to seek judgments against Lubin, Spin and Getter" (Ex. M § 9(a)), while "Hi Bar need not appear to defend any of the remaining claims" (id. § 9(f)); "neither the FVP Parties nor Franklin Parties shall request a standalone verdict against Hi Bar on any verdict form" (id. § 9(b)); any judgment "entered against Lubin, Spin and Getter, which imposes liability by piercing the corporate veil of Hi Bar" "will not have any res judicata or collateral estoppel effect against the Hi Bar Parties" (id. § 9(e)); the FVP and Franklin Parties exchanged mutual limited releases with the Hi Bar Parties, extending to the parties' attorneys (id. § 9(d)); the FVP Parties agreed to "transfer 10% of any such proceeds (net of all collection costs incurred by the FVP Parties in connection therewith)" of a separate Hi Bar judgment "to Hi Bar or its nominee" (id. § 8); and, reciting that "Lubin and Spin have both pled and alleged . . . that they, or their assignees, continue to have rights under the Spin Common Interest Agreement," the Hi Bar Parties agreed to "defend and hold the FVP Parties and Franklin Parties harmless from any and all claims brought against [them] by Lubin and Spin or any assignee . . . arising from or relating to the Spin Common Interest Agreement" (id. § 7). A settlement structured to keep Hi Bar nominally in the case as the vehicle to reach the Debtor while relieving it of any duty to defend, to foreclose a standalone Hi Bar verdict, to have the FVP and Franklin Parties agree not to assert res judicata or collateral estoppel against the Hi Bar Parties based on such a judgment, and to indemnify the FVP and Franklin Parties against the Debtor's own asserted rights, bears on alignment, bias, the weight of the resulting record, and the credits and distribution the estate must reconcile (¶¶ 16–17).

What the record shows confirms the point. The movants moved in limine to exclude any reference to the settlement (Filing #232295671), and none reached the jury; at trial no one appeared for Hi Bar; the verdict form contained no standalone Hi Bar liability question; and no judgment has been entered against Hi Bar (Decl. ¶ 16). The ownership, releases, credits, and distribution the settlement addresses remain disputed, and the $2,107,548.61 registry deposit the AWB court declined to distribute was, fifteen days later, released to the movants' counsel's firm (AWB Dkt. 952 at 9; AWB Dkt. 965; Debtor's Exs. E, G; ¶ 17). Three appeals and pending vacatur motions remain before the Florida courts (¶ 20).

### III. THE MOTION SHOULD BE DENIED

**A. There is no "cause" to dismiss under § 1112(b), and none for dismissal with prejudice.**

9. Good faith is assessed on the totality of the circumstances; no single factor is dispositive; and the inquiry asks whether the petition serves a valid bankruptcy purpose and was not filed for tactical litigation advantage. *In re SGL Carbon Corp.,* 200 F.3d 154 (3d Cir. 1999); *In re Integrated Telecom Express, Inc.,* 384 F.3d 108 (3d Cir. 2004); *In re LTL Mgmt., LLC,* 64 F.4th 84 (3d Cir. 2023). Even accepting that, once good faith is placed in issue, the burden rests on the Debtor — *15375 Memorial Corp. v. BEPCO, L.P.,* 589 F.3d 605, 618 (3d Cir. 2009), the movants' own cited standard (Dkt. 13-2 at 3) — this record carries it. Each

of those cases involved a debtor not in financial distress when it filed; none involved entered judgments in active execution, garnishment, contempt, and noticed forced sales.

10. This Debtor faces asserted judgments with a combined face amount of $14,841,219.72 — the movants' $8,841,219.72 judgment (Ex. A, Dkt. 15-1, ¶¶ 3–5, 14) and a separate $6,000,000 judgment held by the Franklin parties, non-movants appearing through separate counsel (Filing #233055539; Dkt. 32) — plus active execution, garnishment writs, charging orders, contempt and fee orders, and two noticed forced sales. The distress is one of liquidity and process. The movants' May 15, 2026 order bars any distribution from his companies — all "economic benefits otherwise payable to or for the benefit of Avrumi Lubin from the Subject LLCs shall instead be paid immediately and directly to the Judgment Creditors' counsel" — and exposes any third party who pays anything for the Debtor's benefit, with notice, to being "jointly and severally liable to the Judgment Creditors for the amount improperly paid." (Debtor's Ex. A, § B.) Those provisions foreclosed the funding a Florida supersedeas bond would require to stay enforcement pending appeal. A debtor whose assets are force-sold while enjoined from funding a bond — or counsel — is in the distress that *LTL* requires and Chapter 11 addresses.

11. A petition filed on the eve of a creditor's foreclosure-type sale, to preserve the estate while value is sorted out, is a proper use of Chapter 11 in this district. *Matter of Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444 (Bankr. D.N.J. 1993); *In re Walden Ridge Dev., LLC*, 292 B.R. 58 (Bankr. D.N.J. 2003) — the movants' own citation (Dkt. 13-2 at 3, 6) (a "breathing spell" to preserve value is a good-faith purpose; dismissal and stay relief denied). The movants' timing case, *In re Mondelli*, 558 F. App'x 260 (3d Cir. 2014) (not precedential), involved a filing "on the morning of a scheduled sheriff's sale, after state-court stay efforts failed" (Dkt. 13-2 at 3); here the noticed events were the movants' own private sales, and the Debtor's stay, reconsideration, and vacatur motions remained pending — not failed — when he filed (Dkt. 15-3, entries 2508, 2530). And the interests the movants would sell are governed by New Jersey and Delaware statutes making a charging order the exclusive remedy (¶ 22); preventing an irreversible sale while that question is decided preserves value, it does not abuse the system.

12. **Not a "two-party dispute."** Beyond the movants, the estate's creditors and litigation include: the Chapter 7 trustee for Excell Auto Group, whose adversary against the Debtor personally (Adv. Pro. No. 23-01132-EPK, Bankr. S.D. Fla.) — four RICO counts, one against the Debtor alone — was tried January 29 to February 6, 2026 and remains under advisement; the nine Golden Foothill plaintiffs, whose RICO claims against the Debtor personally ($1,777,619.53, or $5,332,858.59 trebled; S.D.N.Y. No. 1:24-cv-08515, Dkt. 158) were stayed as to the Debtor alone on July 9, 2026 (id. Dkt. 193); the Franklin parties (Dkt. 32); and estate-owned claims together with entity-held claims bearing on the value of the estate's interests (¶ 5). This Court rejects the "two-party dispute" label where the debtor has creditors and disputes beyond the movant, *In re Central Jersey Airport Servs., LLC*, 282 B.R. 176 (Bankr. D.N.J. 2002); preserving the estate's litigation claims for orderly administration serves those creditors generally (¶ 5).

**Claims allowance, not dismissal, is where the movants' claims belong.** A bankruptcy court "has full power to inquire into the validity of any claim asserted against the estate," and "the mere fact that a claim has been reduced to judgment does not prevent such an inquiry"; the court may "look behind the judgment." *Pepper v. Litton*, 308 U.S. 295, 305–06 (1939). That inquiry is narrow: under *Heiser v. Woodruff*, 327 U.S. 726, 732–33 (1946), the court respects matters actually litigated and decided while remaining free to consider issues not previously adjudicated — jurisdiction, and the credits, satisfaction, and amount of the claim. The Debtor does not seek to relitigate what the Florida courts decided. On a finding of cause, § 1112(b)(1) requires the Court to convert or dismiss, "whichever is in the best interests of creditors and the estate," unless a trustee or examiner under § 1104(a) is in those interests — nothing makes dismissal *with prejudice* a default. Dismissal now, before schedules or a single claim objection, would extinguish that process and the estate's affirmative claims at the movants' request.

13. **The Debtor's Chapter 11 path is concrete.** Beyond stopping the sale, the near-term path is: complete the schedules and statement of financial affairs under the extended deadline and attend the § 341 meeting; retain counsel as the estate's resources permit; reconcile the movants' claims and every credit, setoff, and collection against them (¶ 17); preserve the membership interests from an irreversible sale while the governing questions are resolved on appeal; preserve the contested litigation rights and have their ownership resolved in the appropriate forum (¶ 5); preserve and, as appropriate, realize the estate's contested claims for all creditors; and propose a plan of reorganization or orderly distribution. That is a reorganizational purpose the Code recognizes, not the tactical use the good-faith cases condemn.

14. Dismissal **with prejudice** and a **two-year refiling bar** are extraordinary. Under § 349(a), dismissal is without prejudice unless the court, "for cause," orders otherwise. A refiling condition can, on a proper record, attach to a for-cause dismissal to sanction bad-faith serial filers. *See In re LeGree,* 285 B.R. 615, 621 (Bankr. E.D. Pa. 2002) (quoting *In re Casse,* 198 F.3d 327, 337 (2d Cir. 1999)). But even where a bar may issue, this one cannot. It rests on a first-filing record — the Debtor's first bankruptcy case of any kind, the movants moving to bar refiling seven days after it began — with no serial-filing or filing-abuse history to sanction. And it is neither narrowly tailored to any offending conduct nor supported by the individualized findings such relief requires: by the movants' own account, *In re Ross,* 858 F.3d 779, 784 (3d Cir. 2017), holds that an "indefinite bar without explanation is an abuse of discretion" (Dkt. 13-2 at 4), and the debtor in their closest case, *In re Mo,* 650 B.R. 193 (Bankr. D.N.J. 2023), was — in their words — one "with serial appeals and repeated defiance of court orders" (Dkt. 13-2 at 4–5); nothing of the kind exists here (¶ 6). *Compare In re Montalvo,* 416 B.R. 381, 388–89 (Bankr. E.D.N.Y. 2009) (one-year bar imposed after six strategically timed filings); the movants seek twice that, on a first filing. Worse, it reaches beyond the Debtor — to unnamed nonparties "acting in concert" and to future estates belonging to other creditors — relief requiring additional process and an independent basis not addressed here (§ III.E).

15. The compliance the motion attacks — schedules in progress, no counsel yet retained — must be read against the movants' own orders. The same May 15 order that redirects the Debtor's funds to the movants' counsel and exposes any third-party payor to joint-and-several liability (¶ 10) — entered on a proposed order the movants' counsel uploaded (Hr'g Tr. May 13, 2026, at 21:7–12; Debtor's Ex. K) — also enjoined the Debtor, the LLCs, and their "attorneys" from opening accounts or redirecting funds without the movants' counsel's authorization (Debtor's Ex. A, §§ B, D(b)). The June 4, 2026 default judgment against Teton Funding enjoined it and "all persons and entities acting in concert with it, including Judgment Debtor Avrumi Lubin," from disposing of any Teton Funding asset, with no carve-out for legal fees (Debtor's Ex. B ¶¶ 28–30); and on June 26, 2026 — the day after the petition — the Fourth District, upon consideration of the parties' submissions, ordered the Debtor to show cause why sanctions should not issue, "including, but not limited to, prohibiting appellant from self-representation in this Court" (Movants' Ex. H-1, Dkt. 15-7). These orders bear on the Debtor's ability to retain and pay counsel; that difficulty cannot now be recast as bad faith. Whether delay is excusable turns on all circumstances, including the opposing party's role in causing it. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380 (1993); *In re O'Brien Envtl. Energy, Inc.,* 188 F.3d 116 (3d Cir. 1999). The schedules require no lawyer, and the Debtor is completing them under the extended deadline (Dkt. 23; Dkt. 39).

16. Five features of the motion's account are corrected by the movants' own exhibits.

a. **Amount.** The certification says the debt "exceeds $8.84 million" "[w]ith statutory interest and costs" (Dkt. 13-1 ¶ 3), without mentioning the movants' own Notice of Setoff and Partial Satisfaction of Judgment recognized in the December 16, 2025 agreed order (finding ¶ 2; Debtor's Ex. D); their own sale notices meanwhile recite a balance "including accrued post-judgment interest, attorneys' fees, and costs" that "exceeds $4,513.427.80" [sic] (Dkt. 15-10 at 3; Debtor's Ex. C), while a garnishment writ e-filed January 29, 2026 — six weeks after the partial satisfaction — still recited "$8,841,219.72 plus interest" (Dkt. 15-2 at 3). The lower figure (i.e., $4,513,427.80) appears to reflect a materially different

claimed balance — consistent with the setoffs and partial satisfactions the movants have recognized (Debtor's Ex. D) but never itemized under oath — yet the present record does not establish whether it is net of all credits, limited to particular components of the judgment, or computed on another basis. The roughly $4.3 million difference is unexplained under oath, and that uncertainty is itself the point (¶ 17). The figures may be reconcilable; the movants have never reconciled them, under oath, in this Court, while the relief they seek is keyed to the claim's size (¶ 17).

b. **Sale label.** The motion and proposed order describe "judicial sales," but the movants' own filed notices are each captioned "NOTICE OF PRIVATE SALE" — a court-authorized private sale conducted by the judgment creditors or their designee, "CONDUCTED BY ZOOM," with a reserved "credit bid by Judgment Creditors" and a reserved right to "adjourn or continue the sale" without further court order (Dkt. 15-10 at 2–3; Debtor's Ex. C at 1–2).

c. **"Adjudicated history."** The motion counts a "§ 68.093 vexatious-litigant show-cause" toward the Debtor's "adjudicated history," yet the order the movants attach shows that on March 20, 2026 the court held the Debtor "is not adjudicated to be a 'vexatious litigant' as defined by section 68.093(2)(c), Florida Statutes, at this time," and denied the motion without prejudice (Dkt. 15-6 ¶ 1).

d. **Clerk's order to show cause.** The Clerk's Order to Show Cause the motion invokes as "an independent ground" carries its own cure: "If all required documents are filed with the Clerk before the hearing date, this Order to Show Cause will be withdrawn and no appearance is required." (Dkt. 15-12.) The Debtor moved within that window (Dkt. 23), and the Court has since extended the deadline.

e. **Absent Exhibit E.** Both certifications cite "a Second Order Striking Pro Se Filings on January 22, 2026 (Exhibit E)" and certify that the referenced exhibits "are true copies of the documents they purport to be" — but no Exhibit E is attached to the filed set (Dkt. 15-1 through 15-12).

17. Before any relief keyed to the size or status of the movants' claim, the Debtor asks for one number, under oath, with sources. He does not ask the Court to find the judgment overpaid, and he does not concede any particular balance; he asks the Court to decline both figures quoted at ¶ 16 and to require a sworn payoff and credit accounting — the judgment amount and every payment, settlement, setoff, garnishment receipt, or credit from any source or co-obligor, with the resulting balance. The $2,107,548.61 (plus interest) disbursed to the movants' counsel's firm from the *Auto Wholesale of Boca* registry on August 27, 2025 (AWB Dkt. 965 ¶ 2; Debtor's Ex. G) is a material recovery event requiring allocation and accounting; the Florida court and the movants' counsel confirmed on the record that at least some judgment credit derives from that recovery — "there was an amount of money that was recovered in the bankruptcy case, and that's where I think that credit's coming from," to which counsel answered, "That's correct." (Hr'g Tr. June 2, 2026, at 8:18–23; Debtor's Ex. I) — but the present record does not disclose its precise allocation among the movants, claims, interest, fees, or co-obligors, and no amended setoff or partial satisfaction has issued since December 16, 2025, though the agreed order directed the movants to reflect payments received and reserved the Debtor's right to seek modification (Debtor's Ex. D, ORDERED ¶¶ 3–4). The Broward court found the Debtor "is entitled to know" the source of the payments received to satisfy the judgment (id., finding ¶ 3) and told him on June 2 that the remedy for "challenging any of the numbers" is a set-off hearing (Hr'g Tr. June 2, 2026, at 11:10–12). The Debtor accepted that course ("That's fine," id. at 10:12), but no set-off hearing was held before the June 11 charging orders, the private sale dates, and this motion overtook it. What was displayed on a screen at the June 2 hearing was neither sworn nor filed (id. at 9:7–20); the agreed order contemplates satisfactions filed of record (Debtor's Ex. D, finding ¶ 2, ORDERED ¶ 3). To the extent the agreed order's confidentiality condition applies to source information, the accounting may be received under seal (id., finding ¶ 3). Claims allowance exists for this (¶ 12). Until the movants state one number, under oath, with sources, no amount-based relief should issue.

**B. Section 362(d)(4) is facially inapplicable — as the movants' own memorandum concedes.**

18. Section 362(d)(4) applies only "with respect to a stay of an act against real property," on motion "by a creditor whose claim is secured by an interest in such real property," on a finding that the petition "was part of a scheme to delay, hinder, or defraud creditors" involving an unauthorized transfer of such real property or "multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4); *see In re Lemma*, 394 B.R. 315, 324–25 (Bankr. E.D.N.Y. 2008) (movant's burden; relief denied absent proof of a scheme); *In re Gray*, 558 F. App'x 163 (3d Cir. 2014) (not precedential; the movants' own citation, Dkt. 13-2 at 5). The movants' claims are secured by no real property; this is the Debtor's first case; and the motion identifies no transfer of any real property. The movants concede it: "Because the assets FVP is selling are the Debtor's limited-liability-company membership interests — personal property, not real property ... § 362(d)(4) does not by its terms reach them." (Dkt. 13-2 at 5.) Their proposed order concedes the same gap: "To the extent the Debtor holds any interest in real property ...." (Dkt. 13-3 ¶ 6.) ¶ 6 would deliver not in rem relief but a recordable, portable finding — that this first-time, publicly noticed, fee-paid filing "was part of a scheme to delay, hinder, or defraud creditors" — with no element briefed and no evidence offered. No such finding should be made. Nor does Dkt. 33 cure the gap: it invokes § 362(d)(4) nowhere, seeking only "relief from the automatic stay under 11 U.S.C. § 362(d)(1) to permit Appeal Nos. 4D2025-3564, 4D2026-1512, and 4D2026-1833 to proceed to resolution before the Fourth District," or a comfort order (Dkt. 33-1 at 4; Dkt. 33 at 1–2).

### C. There is no "cause" to vacate the stay under § 362(d)(1).

19. Stay relief begins with the movant: as the movants acknowledge, "the initial burden to show cause rests on the movant" (Dkt. 33-1 at 7); *accord In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 299 (Bankr. D. Del. 2011) (cited at Dkt. 13-2 at 4). To the extent the Dkt. 13 stay-relief request rests on the movants' bad-faith dismissal theory, it rises or falls with that showing; the Dkt. 33 request is separate and requires its own § 362(d)(1) balancing of prejudice, burden, judicial economy, and the interests of the estate (¶ 25). The Court has treated it accordingly: on July 16, 2026 the docket was modified to reflect that Dkt. 33 is a motion for relief from the automatic stay, the separate stay-relief fee was paid, and the Court scheduled the motion for hearing on August 6, 2026, in Trenton. Four reasons, each independently sufficient, support denial.

20. **C.1 — The movants' claims are materially disputed as to amount, credits, satisfaction, ownership, and enforcement mechanism.** The Debtor does not contend a Florida money judgment is unenforceable because an appeal is pending; absent a supersedeas bond it remains enforceable, and the May 15 order foreclosed the funding such a bond would require (¶ 10). What is materially disputed is the claim's amount and the credits, setoffs, and collections against it (¶¶ 16–17); the satisfaction recognized in the movants' own agreed order (¶ 17); the estate's contested litigation rights (¶ 5); and the enforcement mechanism, now on appeal (¶ 22). Those disputes are pending: three appeals are before the Fourth District (Dkt. 33-1 at 3), and stay, reconsideration, and vacatur motions filed June 11 and June 23, 2026 remain pending in the issuing court (Dkt. 15-3, entries 2508, 2530). The Settlement Agreement also bears on party alignment, potential preclusion questions, and claim administration: it provides that any judgment against the Debtor "which imposes liability by piercing the corporate veil of Hi Bar" "will not have any res judicata or collateral estoppel effect against the Hi Bar Parties" (Ex. M § 9(e); ¶ 8) — even as the movants' adversary complaint against the Debtor in this Court (Adv. Pro. No. 26-01315; Dkt. 14) asks that the Florida judgments be given conclusive, collateral-estoppel effect against him. These disputes justify preserving the estate, an accounting, and narrowly drawn relief — not immediate liquidation of the membership interests.

21. **C.2 — The movants' own positions confirm the dispute.** To impose liability, they pleaded that "the acts of Hi Bar and the acts of Lubin were identical" and that the Debtor "held himself out as the authorized decision maker for Hi Bar." (Debtor's Ex. J, Fourth Am. Compl., veil-piercing heading & ¶¶ 36, 38.) To take the $2,107,548.61, they told the courts the opposite. At the August 13, 2025 hearing on endorsement of the settlement — in the same Broward action in which their judgments were entered weeks later — their

counsel argued: "Hi Bar is the party. Josh Lubin is not the party." (Hr'g Tr. Aug. 13, 2025, at 15:25–16:1; Debtor's Ex. H.) The next day, jointly with Hi Bar and the Franklin parties, they told the AWB bankruptcy court that the Debtor "lacks any interest in the Net Proceeds" (Debtor's Ex. F, AWB Dkt. 954, preamble & ¶ 4), and the $2,107,548.61 was thereafter released to their counsel's firm (Debtor's Ex. G, AWB Dkt. 965 ¶ 2; ¶ 17). Whether as judicial estoppel, *see New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), or as proof that the claims are genuinely disputed, the movants cannot make the Debtor identical to Hi Bar for liability and a stranger for the money, then ask this Court to treat the result as beyond question.

22. **C.3 — A substantial question is pending on appeal.** The enforcement orders foreclose (and would sell) interests in a New Jersey LLC and Delaware LLCs under Florida procedure, although the legislatures that govern those companies make a charging order the exclusive remedy: N.J.S.A. 42:2C-43 (the charging order "shall be the sole remedy"; a creditor has "no right under . . . any other State law . . . to seek an order of the court requiring a foreclosure sale of the transferable interest"); 6 Del. C. § 18-703(d) ("The entry of a charging order is the exclusive remedy . . . and attachment, garnishment, foreclosure or other legal or equitable remedies are not available to the judgment creditor, whether the limited liability company has 1 member or more than 1 member."). Those orders are on appeal (Dkt. 33-1 at 3). Whether they can stand against the chartering statutes is for the Fourth District; the Debtor asks this Court only to recognize that the question is substantial and pending. Completing the sales before it is decided would be irreversible.

23. **C.4 — The stay is doing its statutory work.** Since June 25, the membership interests the movants seek to sell are property of the estate, 11 U.S.C. § 541, within this Court's exclusive jurisdiction, 28 U.S.C. § 1334(e). The stay holds them intact while the courts test the judgments and enforcement orders and any claim against this estate in claims allowance (¶¶ 12, 17). Stay relief is an equitable determination in which the court has wide latitude to balance the equities and may weigh the conduct of both sides. *In re Myers*, 491 F.3d 120 (3d Cir. 2007). Vacating the stay decides none of the pending questions and risks mooting the appeals by letting the movants complete a contested sale.

**D. The supplemental motion (Dkt. 33): the stay applies, and the Debtor opposes relief from it.**

24. The movants' supplemental memorandum concedes the governing law: the automatic stay applies to the three appeals (Dkt. 33-1 at 2; ¶ 1), because it reaches appeals in proceedings "originally brought against the debtor" regardless of who appeals — "[t]hat the Debtor is the sole appellant does not change the result." (Id., citing *St. Croix*, 682 F.2d 446, 448–49, and *Maritime Elec.*, 959 F.2d 1194, 1204, as the movants cite them.) It further concedes that the charging orders "reach only the Debtor's interests" in the companies "and not the separate assets or rights of the companies themselves" (id. at 3). And it sits uneasily beside the principal motion: a memorandum that cast the same three appeals as "a relentless campaign to avoid paying" (Dkt. 13-2 at 1) asked this Court, eleven days later, to let those appeals proceed because they "can only clarify or reduce FVP's claim" (Dkt. 33-1 at 2). Dismissal with prejudice and completed enforcement (Dkt. 13) would strand or moot the very appellate process Dkt. 33 asks this Court to allow.

25. The occasion for Dkt. 33 is the Fourth District's directive that the parties, within fourteen days, "request that the United States Bankruptcy Court issue an order stating whether this appeal should be stayed pursuant to 11 U.S.C. § 362(a) or any other provision of the United States Bankruptcy Code." The July 1, 2026 order filed at Dkt. 34-1 applies to Appeal No. 4D2026-1512 and traveling case 4D2025-3564; a materially identical July 2, 2026 order applies separately to Appeal No. 4D2026-1833 and is submitted as Debtor's Exhibit N. (Dkt. 34-1 at 2; Debtor's Ex. N.) The Debtor filed notices of compliance on July 15, 2026, within that window, advising the Fourth District that the request contemplated by those orders is pending before this Court (Decl. ¶ 13). The directive asks for an order *stating whether* the appeals are stayed — and that answer is conceded: they are (Dkt. 33-1 at 2); *accord Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446 (3d Cir. 1982); *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1035–37 (3d Cir. 1991); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125 (3d Cir. 1992) (the stay applies to appeals in actions brought against the debtor, whichever party appeals). A neutral comfort order therefore answers the Fourth

District completely. That is the reading the Fourth District itself signaled: the only authority its July 1 order cites is *In re Hill*, 364 B.R. 826, 828 (Bankr. M.D. Fla. 2007), quoted for the proposition that comfort orders "serve a valuable purpose," "often to help a sister state court attempting to determine whether it can proceed with a pending action" (Dkt. 34-1 at 2) — the same case the movants cite for their comfort-order alternative (Dkt. 33-1 at 7). And by the movants' own description, such an order "merely identif[ies] and reiterate[s] what has already occurred by operation of law" (Dkt. 33-1 at 7).

Whether cause exists to *modify* the stay is a separate, fact-specific question on which the movants bear the initial burden (¶ 19), judged on the totality of the circumstances. *In re Wilson*, 116 F.3d 87 (3d Cir. 1997). The Debtor **opposes** modification. The Debtor acknowledges that *Wilson* itself directed limited stay relief — but on two grounds, each absent here: the denial of relief there rested on a legally erroneous dischargeability premise, and it left the movant-creditor — the appellant whose own fully briefed appeal the stay had silenced — with no forum at all, because preclusion barred relitigating the state judgment in the bankruptcy court. 116 F.3d at 89–91. Here the movants are the appellees, not the appellants: they hold their judgment and invoke its preclusive force in this Court (Adv. Pro. No. 26-01315); the paused appeals are the Debtor's own; and they identify no concrete prejudice beyond delay — their own memorandum represents that the appeals "can only clarify or reduce FVP's claim" (Dkt. 33-1 at 2) — and two of the three appeals are not ready for decision: in No. 4D2025-3564 the movants' answer brief has not been filed — on July 17, 2026 their appellate counsel asked the Debtor to consent to a thirty-day extension of it, citing counsel's scheduling commitments (Decl. ¶ 14) — and No. 4D2026-1833 "is awaiting the filing of the record on appeal" (Dkt. 33-1 at 3; Decl. ¶ 14). The third, No. 4D2026-1512, on the movants' own description, "is fully briefed and awaits decision" (Dkt. 33-1 at 3); a short continuance therefore imposes no briefing burden on anyone and takes nothing from the movants: the stay suspends enforcement whether or not the appeals move, and their counsel's own request for thirty days is a representation that thirty days is not prejudice. And in *In re Edler*, 416 B.R. 147 (Bankr. E.D. Pa. 2009) — a chapter 7 case in the same posture, where a judgment creditor moved to lift the stay so the debtor-side appeal of the creditor's own judgment could proceed — the court denied relief without prejudice because the movant showed no present administration benefit outweighing the burden on the debtor. So here: requiring the pro se Debtor to prosecute three appeals now, while completing schedules under the Court-extended deadline and preparing for the § 341 meeting, would materially burden the opening administration of this case, with no countervailing benefit shown. The burden is concrete: the Debtor's ability to appear pro se in those very appeals is itself the subject of the Fourth District's pending show-cause order (Movants' Ex. H-1, Dkt. 15-7; ¶ 15), so immediate relief would push three appeals forward while the Debtor's present means of appearing in them remains under review. Nor is there tension between this opposition and ¶¶ 20 and 22: the appeals' substantiality goes to whether the movants' claims are disputed; opposing immediate relief goes to timing and forum. The Debtor does not abandon his appeals — he asks to prosecute them once counsel is retained, and may seek tailored relief himself at that time.

### Three proposed forms of order accompany this Objection:

(1) *Requested:* the neutral comfort order confirming that the stay applies (Proposed Order 1);

(2) *Alternative:* an order continuing the stay and adjourning Dkt. 33, with a status report on counsel retention due within seven days of entry, and with the stay expressly continued under 11 U.S.C. § 362(e)(2)(B) pending final decision (Proposed Order 2); and

(3) *Further alternative only:* a narrow appeals-only modification (Proposed Order 3) that (i) covers appellate proceedings only; (ii) authorizes no enforcement, execution, sale, collection, or proceedings supplementary; (iii) otherwise leaves § 362(a) fully in place, including the fourteen-day stay of Fed. R. Bankr. P. 4001(a)(4); and (iv) is without prejudice to the Debtor's rights, including all defenses in Adversary Proceeding No. 26-01315, with no finding as to dischargeability.

10

Each proposed order states whether the appeals are stayed, so any of the three fully answers the Fourth District; the Debtor will file the resulting order with the Fourth District within five days of entry (Dkt. 34-1 at 2; Debtor's Ex. N).

What the directive does not call for is Dkt. 34's renewed request — made inside a notice of filing, without a notice of motion, grounds statement, or proposed order — that the Court "dismiss this Petition outright" or lift the stay for "the underlying collection action" (Dkt. 34 at 2); the movants' own Dkt. 13 notice recites D.N.J. LBR 9013-1(b)'s requirement that grounds be stated in the notice (Dkt. 13 at 3).

**E. The proposed order (Dkt. 13-3) is overbroad, and its proposed findings are unsupported by the record.**

26. The defects run paragraph by paragraph. *Recitals (a)–(c)* would have the Court "find" bad faith, no valid bankruptcy purpose, a filing "on the eve of judicial sales," and a Rule 1007 default — findings contradicted or unsupported by the movants' own exhibits (¶ 16: the sales are private and creditor-run; the Rule 1007 period carried a cure the Debtor timely invoked and a deadline since extended; the "adjudicated history" exhibit is a denial). Findings belong to the evidence at the hearing. *Paragraph 1* would authorize "all enforcement . . . including the judicial and private sales of the Debtor's membership and other interests." "Other interests" is unbounded — it would reach every asset of the estate, including litigation claims, and commit their disposition to sales the movants' own May 15 order lets their counsel conduct "in their sole discretion, without further order of this Court" (Debtor's Ex. A, § F.8). Any stay-relief order must identify the specific property and proceedings it covers. *Paragraph 2* would waive the fourteen-day stay of Rule 4001(a)(4) (which the movants' proposed order cites by its former designation, Rule 4001(a)(3)) so relief is "effective immediately." If the Court grants only relief from the stay while the case remains pending, Rule 4001(a)(4) would stay that order for fourteen days unless the Court orders otherwise; dismissal presents a different issue, because the automatic stay terminates upon dismissal under 11 U.S.C. § 362(c)(2)(B). The movants therefore cannot rely on ordinary stay relief alone to conduct the July 24 private sale, and their own notice permits them to adjourn that sale without further court order in any event (¶ 16) — as they adjourned its June 26 predecessor (Dkt. 15-3, entry 2544). A waiver of the Rule 4001(a)(4) stay would serve only to let a sale follow any stay-relief order immediately, before any review.

27. *Paragraph 4* would bar "the Debtor — and any person or entity acting in concert with or at the direction of the Debtor —" from any title 11 filing for two years, thereafter only on prior leave and notice to FVP. That is a pre-filing injunction against nonparties. Injunctions bind parties and those in active concert or participation with them who receive actual notice; they do not reach persons who act independently and whose rights have not been adjudged. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13–14 (1945); *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 436–37 (1934) (an injunction reaching all persons with notice of it is erroneous and must be confined to parties and their confederates or associates). In this Circuit, § 105(a) confers no independent jurisdiction, and relief affecting non-debtors requires an independently established basis with findings, *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225, 236–37 (3d Cir. 2004); a pre-filing gatekeeping injunction requires exigent circumstances shown by continuous abusive filings, notice and an opportunity to be heard, and narrow tailoring, *Brow v. Farrelly*, 994 F.2d 1027, 1037–39 (3d Cir. 1993); *In re Oliver*, 682 F.2d 443, 445–46 (3d Cir. 1982). Even assuming an appropriately tailored refiling condition may accompany a for-cause dismissal under § 349(a), the relief requested here reaches unnamed nonparties and future estates without notice, an identified jurisdictional basis, individualized findings, or narrow tailoring — and to the extent the movants seek a standalone injunction binding nonparties, that relief requires additional process, *see* Fed. R. Bankr. P. 7001(a)(7). None of that is addressed, let alone met, for a first-time filer and strangers to this case.

28. *Paragraph 5* is broader still: in any case "filed by or against" the Debtor within two years, the stay "shall NOT apply" to FVP's enforcement against the Debtor's membership interests "or other property subject to FVP's judgment." That would pre-adjudicate a case that does not exist, operate even in an involuntary case

the Debtor did not choose to file, and strip protection from an estate belonging to that future case's creditors; "other property subject to FVP's judgment" is boundless. The movants' own authority undercuts the ask: the *Stoltzfus* passage they quote justifies prospective orders because "[t]he prospective order does not interfere with the right of the debtor to file a bankruptcy" (Dkt. 13-2 at 5, quoting *In re Stoltzfus* as the movants cite it) — yet ¶ 4 would bar the filing itself, and ¶ 5 reaches cases no one has filed. The ordinary scope of § 362 is the opposite: on July 9, 2026 the Southern District of New York ordered that "all proceedings against Lubin in his personal capacity are stayed, but the case will remain open" against the non-debtor co-defendants (No. 1:24-cv-08515, Dkt. 193 (July 9, 2026)). *Paragraph 6* (in rem relief) fails for the reasons at § III.B. *Paragraph 7* would declare the Clerk's June 25 Order to Show Cause "resolved by this Order" — swallowing a separate process with its own cure and a now-granted extension (Dkt. 5; Dkt. 23; Dkt. 39; ¶ 16).

29. Every defective paragraph shares one vice: the order reaches beyond the Debtor and the specific property before the Court — to nonparties "acting in concert" (¶ 27) and, through unbounded terms, to the whole estate and cases not yet filed (¶¶ 26, 28). A federal stay-relief order should be confined to the specific property and proceedings identified.

## IV. CONCLUSION

30. For these reasons, the Debtor respectfully requests that the Court: (i) deny the Dkt. 13 motion in its entirety, including its proposed findings and its requests for a refiling bar, prospective relief, in rem relief, and waiver of Fed. R. Bankr. P. 4001(a)(4); (ii) on Dkt. 33, deny relief from the automatic stay and enter the Debtor's proposed comfort order confirming that the stay applies to Appeal Nos. 4D2025-3564, 4D2026-1512, and 4D2026-1833 (Proposed Order 1); alternatively, continue the stay and adjourn Dkt. 33 with a counsel-retention status report within seven days of entry (Proposed Order 2); and only in the further alternative, enter the narrowly drawn appeals-only order (Proposed Order 3), authorizing no enforcement, execution, sale, or collection, otherwise leaving § 362(a) in place, and without prejudice to the Debtor's rights, including in Adversary Proceeding No. 26-01315; (iii) condition any relief keyed to the size or status of the movants' claim on the sworn payoff and credit accounting described at ¶ 17; (iv) if the Court finds any present cause, decline to dismiss with prejudice and instead adjourn consideration of dismissal until after the schedules are filed under the extended deadline (July 23, 2026) and the § 341 meeting is held (July 22, 2026, Dkt. 10), or to the August 13, 2026 status conference (Dkt. 6), with any cure conditions the Court deems appropriate; and (v) grant such other relief as is just. The July 24 private sale is adjournable by the movants without any court order (Debtor's Ex. C; ¶ 16); while § 362(a) remains in effect, the movants cannot rely on ordinary stay relief alone to conduct it on that date, because an order granting stay relief while the case remains pending is itself stayed fourteen days under Fed. R. Bankr. P. 4001(a)(4) unless the Court orders otherwise (¶ 26).

**Dated: July 21, 2026**



_____ Avrumi Lubin, Debtor and Debtor-in-Possession, *Pro Se* *Accompanying papers: Declaration of Avrumi Lubin under 28 U.S.C. § 1746 with Exhibits (see Exhibit Index), including the executed Settlement Agreement (Ex. M), excerpts from the August 13, 2025 hearing transcript before the Honorable David A. Haimes (Ex. H), and the Fourth District's July 2, 2026 order in Appeal No. 4D2026-1833 (Ex. N); the Debtor's proposed order denying Dkt. 13; the Debtor's three proposed forms of order on Dkt. 33 — Proposed Order 1 (requested): neutral comfort order confirming that the stay applies; Proposed Order 2 (alternative): order continuing the stay and adjourning Dkt. 33 with a status report; Proposed Order 3 (further alternative only): narrow appeals-only modification; Certificate of Service.*