**BALDASSARE & MARA, LLC**
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 604-6686
F: (973) 556-1071
E: jmara@mabalaw.com

**SCHWARTZ | BRESLIN, PLLC**
The DuPont Building, 169 East Flagler Street, Suite 700
Miami, Florida 33131
T: 305-577-4626
F: 305-577-4630
E: JB@JSJB.Law  |  EService@JSJB.Law

*Attorneys for Creditors*
*FVP Servicing, LLC,*
*FVP Opportunity Fund III, LP,*
*and FVP Investments LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>AVRUMI LUBIN a/k/a Josh Lubin,<br><br>Debtor. | Case No.: 26-17342-EJO<br>Chapter 11 |

**MEMORANDUM OF LAW IN SUPPORT OF FVP'S MOTION FOR**
**<u>APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>**

**<u>PRELIMINARY STATEMENT</u>**

This case presents precisely the circumstances Congress had in mind when it authorized the appointment of a Chapter 11 trustee under section 1104(a) of the Bankruptcy Code. Avrumi Lubin asks to remain in possession of an estate whose only assets of consequence are his interests in four limited liability companies — JL Special Investments, LLC, Teton Life, LLC, Spin Capital, LLC, and Teton Funding, LLC. A court has already examined those very entities and found that Lubin dominates and controls them and uses the corporate form "to shield assets from creditors."

(Order Imposing Charging Orders at 3, **Exhibit F**) When his judgment creditor tried to reach the assets behind that structure, Lubin refused to disclose his finances, and a court held him in civil contempt for that refusal. (Lubin Contempt Order at 1, **Exhibit Q**)

Nothing changed when Lubin entered bankruptcy. He has produced no records of his business interests or the transfers among his entities. He has not filed a personal or business tax return since 2023. And in the months before he filed, he moved property into the same insider entities the Florida court had already identified as instruments of concealment. A debtor-in-possession holds the estate in trust for creditors and owes them the undivided duties of a trustee — candor, disclosure, and the preservation of estate property. Lubin has shown, in one forum after another, that he will not honor those duties. His interests in the four entities cannot be valued, marshaled, or investigated by the one person with every incentive to keep them obscured. Cause therefore exists to appoint a trustee under section 1104(a)(1), and appointment independently serves the best interests of creditors and the estate under section 1104(a)(2). FVP respectfully asks the Court to appoint an independent Chapter 11 trustee.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334(b) and 157, and the Standing Order of Reference entered by the United States District Court for the District of New Jersey. This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A). The Movant consents to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

**BACKGROUND**

The judgment. FVP holds an unsatisfied money judgment against Lubin. On October 8, 2025, the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida entered a Final Judgment in FVP's favor in the action styled FVP Opportunity Fund III, L.P. v. Zankl, No. CACE22005125 (the "Final Judgment"). (Final Judgment, **Exhibit A**) The Final Judgment remains wholly unpaid.

Lubin's assets sit behind four entities he controls. Lubin holds nothing of consequence in his own name. His property consists of transferable interests in four limited liability companies: JL Special Investments, LLC, a Delaware entity "wholly owned and controlled by Avrumi Lubin" (Order Imposing Charging Orders at 2, **Exhibit D**); Teton Life, LLC, a Delaware entity in which Lubin holds a membership interest (FVP Opportunity Fund III v. Lubin, Charging Order at 2, **Exhibit E**); Spin Capital, LLC, a New Jersey entity; and Teton Funding, LLC, a Delaware entity — the last two, like the first, single-member entities Lubin wholly owns and controls. (FVP Opportunity Fund III v. Zankl, Charging Order at 1, **Exhibit F**)

The charging orders and the findings of domination. When FVP moved to collect, it obtained charging orders against each of Lubin's interests under section 605.0503, Florida Statutes. (Exs. 4–6) In entering them, the Florida court made the findings that drive this Motion. It found that the entities "are operated under the complete domination and control of the Judgment Debtor," that "the corporate form is used to shield assets from creditors," and that "[i]mmediate relief is necessary to prevent the concealment, transfer, dissipation, or diversion of assets." (Order Imposing Charging Orders at 3, **Exhibit F**) The court foreclosed Lubin's interest in JL Special Investments, LLC and authorized a private sale of that interest. (Order Imposing Charging Orders at 4, **Exhibit D**)

3

The contempt. Lubin's response to collection was to withhold his finances. Ordered to disclose his assets in aid of execution, he refused, and the Florida court held him in civil contempt for his "willful failure to comply." (Lubin Contempt Order at 1, **Exhibit Q**)

The concealment did not stop at the courthouse door. Even under the compulsion of the contempt finding, Lubin produced nothing of substance. Across essentially every category of financial discovery, he produced no records of his business ownership, his entity interests, or his transfers of assets. (Lubin Production Index and Deficiency Chart at 3, **Exhibit O**)

The unfiled tax returns. Lubin has filed no personal or business tax return for 2024 or 2025. The most recent returns he has produced are for 2023. (Lubin Production Index and Deficiency Chart at 3, **Exhibit O**)

The transfers into the insider entities. During the same period, Lubin moved property into the very entities the Florida court had identified as instruments of concealment. He transferred property to JL Special Investments, LLC in April 2025 and to Teton Life, LLC on August 13, 2025 — each disclosed, and each marked "Disputed," in his Statement of Financial Affairs. (Lubin Summary of Assets and Liabilities at 41, **Exhibit C**) Earlier, Lubin and his wholly controlled Spin Capital, LLC assigned a litigation claim, and all of its proceeds, to Teton Life, LLC. (Spin Assignment to Teton, **Exhibit G**)

The movement of cash among the entities. A tracing of Lubin's bank records shows the same course of dealing. Lubin signs as "President" on accounts at three banks. Money moved among those accounts — including the accounts of the judgment-debtor entities Spin Capital, LLC and JL Special Investments, LLC — then out to affiliated funding entities and to Lubin himself, and the accounts were left at or near zero. (Lubin Bank Statement Analysis at 1, 2, 6, **Exhibit L**) Entity funds also paid Lubin's personal obligations outright: two $100,000 transfers from a Spin

Capital account into his personal checking account, and payments of his personal credit cards from entity deposit accounts. (Lubin Bank Statement Analysis at 7, **Exhibit L**)

The bankruptcy filing. On June 25, 2026 (the "Petition Date"), Lubin commenced this case under Chapter 11. (Voluntary Petition, **Exhibit B**) He scheduled liabilities of roughly $15.15 million against assets of roughly $13,568, and his debts are not primarily consumer debts. (Lubin Summary of Assets and Liabilities at 36, **Exhibit C**) No plan has been confirmed, and Lubin remains in possession as a debtor-in-possession. His interests in the four entities are now property of the estate under section 541 of the Bankruptcy Code, and the automatic stay of section 362 now bars FVP from enforcing its charging orders or completing the foreclosure sale without relief from this Court.

The Debtor's examination confirmed the concealment. On June 15, 2026 — ten days before the Petition Date — FVP examined Lubin under oath in aid of execution. (Lubin Dep., **Exhibit W**) His answers repeatedly identified receivables and claims that appear nowhere on his schedules, disclaimed any knowledge of the records for the entities that hold the estate's value, and — as to Spin Capital, LLC — refused to answer at all. His testimony is summarized below:

1. Undisclosed receivables. He could not say whether BMF Advance owes him money — "I don't know. I have to audit it." (Dep. 14) He testified that Hi Bar Capital and TeleEscrow, Inc. each owe money to Spin Capital, LLC — "They owe Spin money" (Dep. 15); "they owe Spin money" (Dep. 48) — and that Spin holds a judgment against TeleEscrow "for like 6-, $7 million" (Dep. 55). None of these receivables appears on his schedules.

2. A multi-million-dollar claim he says is his. He claims FVP's principal "owes

me between $ 15 to $50 million", a claim "assigned to me individually." (Dep. 16) That claim is not scheduled.

3.  Money owed to him by his own entity. He testified that "Spin owes me money", that "I put a lot of money into Spin" — "Probably" millions — and that he "expected Spin to pay me money." (Dep. 50-52) His schedules do not disclose that claim, and the records confirm a $100,000 transfer from Spin to his personal account. (Dep. 50)

4.  Other undisclosed transfers. He described lending Shalom B. Schonbrun roughly $500,000 as "money temporarily at no interest" (Dep. 56-57), could not explain a Cheetah deposit into the Spin and personal accounts — "I don't know off the top of my head" (Dep. 29) — and did not recall RMF Capital, Inc. or roughly $40,000 to $50,000 deposited into his account — "there's a mess over there" (Dep. 125-126)

5.  Unfiled returns and missing records. His 2024 and 2025 returns are unfiled, and he has hired no one to prepare them — "I've got other priorities." (Dep. 20) He identified no custodian or records for Spin ("I don't think I have -- I don't know") or JL Special Investments, LLC ("There isn't any"), calling his affairs "a mess." (Dep. 36-38) He did not know whether he owns cryptocurrency or a digital wallet — "I have to look into that." (Dep. 40)

6.  Sole control of the estate's entities. He testified that Spin has "One member" — himself — and that he controls it. (Dep. 49)

7.  Refusal to answer. He refused to answer questions about Spin — "I'm refusing to answer"; "take it up with the Judge" (Dep. 42) — and refused questions about the Spin/Golden Foothill litigation (Dep. 60), Spin's assignment of litigation rights to him

6

(Dep. 69, 71), and the judgments Spin holds against others, which he could not detail and whose collection attorneys he could not name — "I don't recall." (Dep. 111, 113)

8.  Hostility to the inquiry. He warned opposing counsel that he "may suffer consequences down the line" and called the judgment "procured by fraud" (Dep. 22).

## RELIEF REQUESTED

FVP seeks entry of an order appointing a Chapter 11 trustee under section 1104(a) of the Bankruptcy Code and Bankruptcy Rule 2007.1(a). Cause exists under section 1104(a)(1), and appointment independently serves the best interests of creditors and the estate under section 1104(a)(2).

## ARGUMENT

## LEGAL STANDARD

Section 1104(a) directs that, on a party in interest's request before confirmation, "the court shall order the appointment of a trustee" in either of two circumstances:

1.  for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause ... ; or

2.  if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate ....

A trustee is the exception in Chapter 11, and FVP does not minimize the showing it must make. Appointment "should be the exception, rather than the rule," and a "strong presumption" leaves the debtor in possession. *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998). That presumption is simply another name for FVP's burden: it must prove the need for a trustee, under either subsection, by clear and convincing evidence, a burden that "does not shrink or shift." *In re*

*G-I Holdings, Inc.*, 385 F.3d 313 (3d Cir. 2004). But the presumption rests on an assumption —

that current management "can be depended upon to carry out the fiduciary responsibilities of a

trustee." *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998).  Where that assumption fails,

the Code is not permissive. Once cause is shown under section 1104(a)(1), appointment "is

mandatory." *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998). Section 1104(a)(2) is

independent and "envisions a flexible standard," authorizing appointment whenever it serves the

interests of creditors and the estate, even absent any misconduct.  *In re Marvel Ent. Grp., Inc.*, 140

F.3d 463 (3d Cir. 1998). This District applies that framework as an "extraordinary remedy"

measured by clear and convincing evidence. *Martelli v. Colts Neck Golf & Country Club*, No. 14-

8101 FLW, 2015 WL 5032621 (D.N.J. Aug. 25, 2015).  Both grounds are satisfied here.

I.   **CAUSE EXISTS TO APPOINT A CHAPTER 11 TRUSTEE UNDER SECTION 1104(A)(1)**

The question before the Court reduces to a single one: can Lubin be trusted to serve as the

fiduciary that a Chapter 11 debtor-in-possession must be? The record answers no, and every

ground that follows is a facet of that answer. A debtor-in-possession is not merely a litigant; he is

a fiduciary. On filing, Lubin "assumed the same fiduciary duties as would an appointed trustee"

— the duty of care to safeguard estate assets, the duty of loyalty that forbids self-dealing and

conflicts of interest, and the duty of impartiality among creditors. *In re Morningstar Marketplace,

Ltd*, 544 B.R. 297 (Bankr. M.D. Pa. 2016). Those duties require "[o]pen, honest and

straightforward disclosure to the Court and creditors" and the "duty to protect and conserve

property in [his] possession for the benefit of creditors." *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463

(3d Cir. 1998)) They are conditions of remaining in control, not privileges of it, and a debtor

forfeits that control when he neglects them. *In re Morningstar Marketplace, Ltd*, 544 B.R. 297

(Bankr. M.D. Pa. 2016). The enumerated grounds for cause — fraud, dishonesty, incompetence,

gross mismanagement — are not exclusive; they "cover a wide range of conduct," leaving the Court discretion to decide when a debtor's conduct warrants a trustee. *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998). The subsections that follow are not a catalogue of unrelated missteps. Each is proof of the same conclusion — that Lubin will not discharge the duties his possession of the estate demands.

### a. Another court has already found that Lubin dominates the estate's only assets and uses them to conceal wealth from creditors.

The estate's only meaningful property is Lubin's interests in four entities, and a court has already examined how he runs them. The Florida court found that those entities "are operated under the complete domination and control of the Judgment Debtor" and that "the corporate form is used to shield assets from creditors." (Order Imposing Charging Orders at 3, **Exhibit F**) It made those findings not in passing but as the basis for charging orders and the foreclosure of an entity interest, and it acted because "[i]mmediate relief [was] necessary to prevent the concealment, transfer, dissipation, or diversion of assets." (Order Imposing Charging Orders at 3, **Exhibit F**)

That finding is not background; it is close to dispositive. A judicial determination that one entity is dominated as the alter ego of its owner is the kind of finding that can bind that owner by issue preclusion in later proceedings. *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602 (D. Del. 2018). Whatever its ultimate preclusive reach, the finding means this Court need not take Lubin's word about entities he controls; another court, on a developed record, has already concluded that he uses them to keep assets from the creditors he now asks this Court to trust him to repay. A debtor found to wield the estate's assets as instruments of concealment is not a debtor who can be left in possession of them.

### b. Lubin diverted assets into those same entities on the way into bankruptcy.

Lubin did not stop moving assets once the Florida court flagged the entities — he accelerated. He transferred property to JL Special Investments, LLC in April 2025 and to Teton Life, LLC in August 2025, marking each transfer "Disputed" on his own Statement of Financial Affairs. (Lubin Summary of Assets and Liabilities at 41, **Exhibit C**) He and his wholly controlled Spin Capital, LLC assigned an entire litigation claim, and all of its proceeds, to Teton Life, LLC. (Spin Assignment to Teton, **Exhibit G**)

The bank records show the mechanism. Lubin signs as "President" on accounts at three banks; funds moved among the accounts of the judgment-debtor entities Spin Capital, LLC and JL Special Investments, LLC, then out to affiliated funding entities and to Lubin himself, leaving the accounts at or near zero. (Lubin Bank Statement Analysis at 1, 2, 6, **Exhibit L**) Entity money paid Lubin's personal bills directly — two $100,000 transfers from a Spin Capital account into his personal checking account, and payments of his personal credit cards from entity deposit accounts. (Lubin Bank Statement Analysis at 7, **Exhibit L**) The Court can draw its own conclusion from a controlling owner who routes company funds into his own pocket and leaves the entities empty.

The Third Circuit has treated this precise conduct as cause. In Sharon Steel, management "engaged on the eve of bankruptcy in a systematic syphoning of [the debtor's] assets to other companies under common control," and the court held that such conduct "raises grave questions about current management's ability to fulfill its fiduciary duty as debtor-in-possession." *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989). A bankruptcy court in this Circuit reached the same result for an individual debtor who diverted estate proceeds "to entities he owned," holding that the diversion "constituted mismanagement sufficiently egregious to justify the appointment of a Chapter 11 Trustee under both § 1104(a)(1) and § 1104(a)(2)." *In re Grasso*, 490 B.R. 500

10

(Bankr. E.D. Pa. 2013). Lubin's transfers into entities he dominates are the same conduct on the same facts.

### c. Lubin has withheld the records a debtor-in-possession is required to disclose.

A debtor's most basic obligation is to lay his financial affairs open. Lubin has done the opposite. Across essentially every category of financial discovery, he produced no records of his business ownership, his entity interests, or his transfers of assets. (Lubin Production Index and Deficiency Chart at 3, **Exhibit O**) Where a debtor will not account for what he owns and what he moved, creditors are "without the means to identify what assets are available to repay their claims," and courts in this Circuit have appointed trustees precisely to protect "the integrity of the bankruptcy system." *In re Grasso*, 490 B.R. 500 (Bankr. E.D. Pa. 2013). Inadequate recordkeeping, failure to file required documents, and failure to disclose are settled grounds for cause. *In re Vascular Access Centers, L.P.*, 611 B.R. 742 (Bankr. E.D. Pa. 2020).

### d. Lubin has already been held in contempt for refusing the very disclosure Chapter 11 demands.

Lubin's refusal to disclose is not a matter of inference; a court has adjudicated it. The Florida court held him in civil contempt for his "willful failure to comply" with orders directing him to disclose his finances in aid of execution. (Lubin Contempt Order at 1, **Exhibit Q**). That history maps directly onto the duties Chapter 11 imposes. A debtor-in-possession must file complete schedules and a statement of financial affairs and must disclose his assets fully and honestly under section 521 of the Bankruptcy Code and the duties he assumed with possession. *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998). A debtor who defied those obligations under the compulsion of a contempt order cannot credibly be expected to satisfy the more demanding versions of the same obligations now that he holds the estate in trust. The contempt

finding is not stale collateral history; it is the best available predictor of how Lubin will behave as a fiduciary.

### e.   Lubin has not filed tax returns for two years.

Lubin has filed no personal or business tax return for 2024 or 2025; his most recent returns are for 2023. (Lubin Production Index and Deficiency Chart at 3, **Exhibit O**) A debtor who has not filed returns cannot produce the financial picture reorganization requires, and "transgressions related to taxes" and the failure to file required documents are recognized components of cause. *In re Vascular Access Centers, L.P.*, 611 B.R. 742 (Bankr. E.D. Pa. 2020).

### f.   Lubin cannot investigate himself, and the estate's claims run against him and his own entities.

Every fact above converges on a single, disqualifying conflict. The estate's most valuable rights are its potential claims to recover the transfers Lubin made into the entities he controls. Pursuing those claims means suing Lubin and his own affiliates. No debtor can be expected to do that. As the Third Circuit recognized in Sharon Steel, a debtor-in-possession who "shares common management with the recipients of the transfers" cannot be relied on to pursue the estate's avoidance claims, and disclosure of the transfers "did not cure" the conflict. *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989). Courts in this Circuit hold that the mere existence of the estate's colorable claims against a debtor's insiders "evidenced a conflict of interest" that "constituted cause for appointment of a Chapter 11 Trustee." *In re Grasso*, 490 B.R. 500 (Bankr. E.D. Pa. 2013). Where the controlling insider's conflicts make it "impossible" for him to pursue "preference claims against his own" entities, that conflict alone supports appointment. *In re Vascular Access Centers, L.P.*, 611 B.R. 742 (Bankr. E.D. Pa. 2020). The principle is old and settled: a court "cannot reasonably expect the debtor in possession, which is controlled by [the

insider], to subject to rigorous scrutiny the dealings between the two." *In re William H. Vaughan & Co., Inc.*, 40 B.R. 524 (Bankr. E.D. Pa. 1984).

The Debtor's sworn testimony confirms every ground above. At his June 15, 2026 examination, Lubin identified receivables and claims the estate never scheduled — a judgment Spin Capital, LLC holds "for like 6-, $7 million," money that "Spin owes me," and his contention that FVP "owes me between 15- to $50 million" — while refusing to answer basic questions about Spin Capital, LLC and professing ignorance of who keeps its records. (Lubin Dep., **Exhibit W**) Testimony that simultaneously exposes undisclosed assets and refuses to account for them is the clearest proof that Lubin will not discharge the disclosure and candor duties Chapter 11 imposes.

For the same reason, the estate's assets cannot be entrusted to Lubin. His interests in the four entities must be valued, marshaled, and either reorganized or sold for creditors, and that work requires access to books and records that Lubin has refused to produce and cooperation from an owner whose interest is to keep the entities opaque. Only an independent fiduciary — one who owes no loyalty to Lubin or his affiliates — can investigate the transfers, coordinate with the charging-order proceedings, and administer these interests for creditors rather than for the man who has spent two years hiding them. On this record, cause is established several times over, and appointment under section 1104(a)(1) is therefore mandatory. *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998).

## II.     APPOINTMENT ALSO SERVES THE BEST INTERESTS OF CREDITORS AND THE ESTATE UNDER SECTION 1104(A)(2)

Section 1104(a)(2) provides an independent basis for the same relief, and it does not require any finding of misconduct. *In re Morningstar Marketplace, Ltd*, 544 B.R. 297 (Bankr. M.D. Pa. 2016). The Court asks whether appointment would serve the estate, weighing the debtor's trustworthiness, his past and present performance and the prospects for reorganization, creditor

confidence in present management, and the benefit of a trustee against the cost. *In re Morningstar Marketplace, Ltd*, 544 B.R. 297 (Bankr. M.D. Pa. 2016). Each consideration points one way.

Lubin has forfeited any claim to creditor confidence. He has diverted assets into entities he controls, refused to produce his records, failed to file tax returns, and been held in contempt for concealing his finances. This is not "personal dislike for management"; it is well-founded distrust that "relate[s] to the objectives of the case," and such distrust alone can support appointment. *In re Morningstar Marketplace, Ltd*, 544 B.R. 297 (Bankr. M.D. Pa. 2016)) A court confronting a controlling individual who "consistently puts his own interests ahead of" the estate and "is not credible and untrustworthy" appointed a trustee as being in the creditors' best interests. *In re Vascular Access Centers*, L.P., 611 B.R. 742 (Bankr. E.D. Pa. 2020). His June 15, 2026 examination removed any remaining doubt: under oath he claimed millions of dollars in receivables that his schedules omit and refused to answer basic questions about Spin Capital, LLC. (Lubin Dep., **Exhibit W**)

Appointment is also the surest path to value. The estate's worth is locked inside entities Lubin dominates, and realizing it depends on an investigation and, likely, litigation that Lubin will not conduct against himself. An independent trustee can marshal and monetize the entity interests, prosecute the estate's avoidance claims, and coordinate the stayed charging-order and foreclosure proceedings — steps that stand to enlarge the estate rather than preserve the status quo that has left creditors unpaid. Measured against a scheduled estate whose nominal assets are dwarfed by more than $15 million in liabilities, the benefit of competent, loyal administration plainly justifies the cost. (Lubin Summary of Assets and Liabilities at 36, **Exhibit C**); *Martelli v. Colts Neck Golf & Country Club*, No. 14-8101 FLW, 2015 WL 5032621 (D.N.J. Aug. 25, 2015). Appointment serves the best interests of creditors and the estate under section 1104(a)(2).

14

## NOTICE

Movant will provide notice of this Motion to: (a) the Debtor; (b) counsel to the Debtor; (c) the Office of the United States Trustee for Region 3; (d) any official committee appointed in this case or, if none, the holders of the twenty (20) largest unsecured claims against the Debtor; (e) all parties that have filed a notice of appearance and request for service of papers in this proceeding pursuant to Bankruptcy Rule 2002; and (f) any other parties designated by the Court. Considering the nature of the relief requested herein, the Movant submits that no other or further notice is necessary.

## NO PRIOR REQUEST

No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

Chapter 11 leaves a debtor in possession on the expectation that he will act as a faithful fiduciary for his creditors. Lubin is not that fiduciary, and the whole of this record proves it. He has forfeited that trust in every forum that has examined him. A court has found that he dominates the estate's only assets and uses them to shield wealth from creditors; another order held him in contempt for refusing to disclose his finances; and he entered this Court having produced no records, filed no recent returns, and moved property into the very entities the earlier findings condemned. Under oath, he claimed millions of dollars in receivables his schedules omit and refused to answer basic questions about the entities that are the estate. Each of these facts is a breach of a distinct fiduciary duty — candor, loyalty, preservation of estate property, and impartiality — and together they establish that Lubin cannot be entrusted with the duties his

15

possession of the estate demands. An independent trustee is not simply the better option here — it is the only way to protect the estate's assets and preserve the integrity of this proceeding.

WHEREFORE, FVP respectfully requests that the Court enter an order appointing a disinterested Chapter 11 trustee in this Chapter 11 Case under section 1104(a) of the Bankruptcy Code and Bankruptcy Rule 2007.1(a), and granting such other and further relief as is just and proper.

Respectfully submitted,

**BALDASSARE & MARA, LLC**

Dated: July 29, 2026

By:   */s/ Jennifer Mara*
Jennifer Mara, Esq.
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 604-6686
F: (973) 556-1071
E: jmara@mabalaw.com

Jerrell Breslin, Esq. (*pro hac vice*)
The DuPont Building,
169 East Flagler Street, Suite 700
Miami, Florida 33131
T: 305-577-4626
F: 305-577-4630
E: JB@JSJB.Law |
EService@JSJB.Law

*Attorneys for Plaintiffs*
*FVP Servicing, LLC,*
*FVP Opportunity Fund III, LP,*
*and FVP Investments LLC*

16