UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE: . Case No. 26-17342-EJO

AVRUMI LUBIN, . 402 East State Street
. Trenton, NJ 08608
Debtor. .
. July 23, 2026
. . . . . . . . . . . . . 2:00 p.m.

TRANSCRIPT OF ORDER TO SHOW CAUSE, MOTION TO VACATE STAY
and DISMISSAL

BEFORE HONORABLE EAMONN JAMES O'HAGAN
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For the Debtor: AVRUMI LUBIN, PRO SE
1460 Arboretum Parkway
Lakewood, NJ 08701

For the U.S. Trustee: Office of the U.S. Trustee
By: RACHEL WOLF, ESQ.
One Newark Center
Suite 2100
Newark, NJ 07102

Audio Operator: Michelle Fogleman

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609) 586-2311 Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

| | |
|---|---|
| For FVP Investments LLC, et al.: | Schwartz Breslin PLLC<br>By: JERRELL "JERRY" BRESLIN, ESQ.<br>JONATHAN SCHWARTZ, ESQ.<br>The DuPont Building<br>Suite 700<br>169 East Flagler Street<br>Miami, FL 33131 |
| | Baldassare & Mara, LLC<br>By: JENNIFER MARA, ESQ.<br>75 Livingston Avenue<br>Suite 101<br>Roseland, NJ 07068 |
| | Law Office of Alan I. Karten, PLLC<br>By: ALAN IRA KARTEN, ESQ.<br>321 Anderson Pond Road<br>Aiken, SC 29803 |

\- - -

THE COURT: Okay. Next on the calendar we have Numbers 55 and 56, Lubin, Case Number 26-17342.

I'll take appearances, please.

MR. BRESLIN: Yes. Good afternoon, Your Honor. My name is Jerry Breslin. I represent the creditor, the FVP parties. Also present is Jennifer Mara, Alan Karten and my partner Jonathan Schwartz. Ms. Mara is New Jersey counsel.

MS. MARA: Good afternoon, Your Honor. Jennifer Mara, Baldassare & Mara, on behalf of the FVP creditors.

MR. LUBIN: And good afternoon. Sorry.

MS. WOLF: Go ahead.

MR. LUBIN: Good afternoon, Your Honor. Josh Lubin on behalf of myself individually.

MS. WOLF: Good afternoon, Your Honor. Rachel Wolf representing the United States Trustee.

THE COURT: Anyone else appearing on Lubin?

(No audible response)

THE COURT: Okay, so we are here on an order to show cause as well as the motion to vacate stay and for dismissal. I note that with respect to the order to show cause, Mr. Lubin filed his schedules yesterday. The clerk's quality control noted that there were no missing documents and that all required documents were filed. So, that resolves, for present purposes, the order to show cause that was returnable today.

MR. LUBIN: And I cured a fee.

THE COURT: Yes. I also see that there was receipt of a fee today in the amount of $34 that the court's docket reflects has been received.

So, we're here on, you know, essentially the motion to dismiss. But before we get into the merits of the motion to dismiss and the related relief, you know, I had the opportunity to review the schedules that were filed, Mr. Lubin, and I feel like kind of a gate keeping issue that needs to be addressed here, Mr. Lubin, is whether this case is properly venued in the District of New Jersey. Could you, Mr. Lubin, give your understanding as to, in light of the information in your schedules why you believe that venue is proper in this court?

MR. LUBIN: First, I live at 1460 Arboretum Parkway for I think like 31 years. I have the apartment in the city, I probably slept there like maybe 20 nights in the last -- in 2026. My father has an apartment in Florida that I spend some time at as well. And I've been mostly -- I snowboard a lot. I've been dealing with a lot of litigation so I've been in like Montana, Wyoming for like -- during -- like six months straight during the winter. I fly back for hearings and stuff like that. So, New York is not my -- New York, I had an office there for Spin. I haven't been to that office in a couple of years. I got into a hornet's nest.

And regarding to a few things like the schedules, like Spin isn't operating. Like I don't want to get emotional

and I don't want to call people names but these Franklin and FVP parties, they're not my favorite people. And if this other stuff wasn't going on, these companies would be operating successfully.

THE COURT: I need you to stay on point. I need you to stay on point with the question that I asked you.

MR. LUBIN: Oh, I'm sorry.

THE COURT: So, you are in Manhattan right now, is that correct, sir? Where are you currently doing this Zoom from?

MR. LUBIN: Yeah. I'm currently in Manhattan right now. I haven't been in this apartment up until a few weeks ago for a few months straight.

THE COURT: Okay. Well, Mr. Lubin, I'm looking at Page 55 and 56 of the schedules that you filed --

MR. LUBIN: Yeah.

THE COURT: Your are saying that the debtor maintained and used Apartment Penthouse 3A, 605 West 42nd Street, New York, New York 10036 from approximately June 2025 through the June 25th, 2026 petition date.

MR. LUBIN: So, I'm getting into that, Your Honor. I had this apartment --

THE COURT: Hold there, sir. Then you're saying the petition date residence is 1460 Arboretum Parkway. So you're telling me that your schedules say that you were leasing a

penthouse apartment that you resided at through June 25th but now you're saying you didn't live there?

MR. LUBIN: Your Honor, I had this apartment -- access to this apartment since 2019. It was in someone else's name and we used to split it and then he stopped paying for it so it got transferred to my name. Your Honor, my tax returns that are complete when I was operating -- Your Honor, I have eight-digit settlement offers in cash on the table with one of the people that Rachel spoke with last week, with Fred Stevens.

THE COURT: Mr. Lubin I'm asking you about your residence.

MR. LUBIN: No, I'm saying my residence, I'm saying yes, I have this -- I've been paying -- I paid this apartment. It's legally in my name for the last -- since those dates but I've been paying it since 2018 or 2019 between seven, $8,000 a month. I split it with someone originally because I had an office in New York so I would sleep there some nights. But like the last two years this apartment has been vacant most of the time, the last three years give or take. And my primary residence is 1460 Arboretum Parkway and has been for the last 31 years. I mean I intend on moving to Florida in the next couple of years but, yeah, my residence, my license, my tax return, everything is 1460 Arboretum Parkway.

THE COURT: So, you're saying that notwithstanding what you provided in writing in your schedules that, in fact,

you've been consistently residing in Lakewood and not in your apartment which you stayed --

MR. LUBIN: More than this apartment. I've been in Florida a lot too but like the majority the last few years is Wyoming and Montana because I've been dealing with a lot of litigation and I go out there to snowboard, I like the mountains and it's good for my head. But the majority of my time has been in the mountains but, yeah, between Florida and New Jersey. I may switch it to -- my father has been trying to convince me for tax purposes to try to get a residence in Florida, but my parents' address at 1460 is mine, yes.

THE COURT: So, I'm just going to say to the other parties, I feel like this is a threshold issue that needs to be addressed before we get into the other issues. I mean Mr. Lubin is making statements that are in I think a charitable view inconsistent with what his schedules say in terms of what his primary residence was for the 180 days leading up to the petition date. You know, taking at face value the statements in the schedules -- you don't need to put your finger up, sir, I'll give you an opportunity to speak when I'm done.

MR. LUBIN: Yeah.

THE COURT: Taking the statements and the schedules that you were renting a penthouse apartment and that you, you know, in your words maintained and used through the petition date I think raises a gate keeping issue in terms of whether or

not, in fact, this case is properly venued in the District of New Jersey. So, I'd like to hear from the other parties on this.

I don't know if they have also had an opportunity to review Mr. Lubin's schedules, but I'd like to start with you, Mr. Breslin, and get your take on this.

MR. BRESLIN: Yes, Your Honor. Thank you. Quite frankly, Mr., as we're prepared to argue today, it's our position that Mr. Lubin filed this bankruptcy by his own admission, by his own sworn statements as a litigation tactic and I was certainly prepared to address that.

As far as the venue issue goes, Judge, the very last thing the FVP parties want is for him to have obtained what he sought by filing the bankruptcy. Everything was stayed and then this matter has now just moved for venue purposes when it's patently obvious that he filed it as a litigation tactic by his own admission. So, we didn't raise the venue issue, Judge, because we want nothing more than a merits determination that this petition was filed in bad faith. I think that certainly the fact that you just brought up, the inconsistencies as you said charitably, about venue.

What we don't want, Judge, is for him to simply do it again and that's our biggest worry because, you know, what we're dealing with, we have an AI on the other side of this paperwork, and this Court is now starting to see a little bit,

just a fraction of what other Courts have seen, the trial Court in Florida, the Appellate Courts in Florida.

And so to answer your question, Judge, we didn't raise it. I certainly understand Your Honor's position but we would certainly like a ruling on the merits if we could get to one and we would like to, you know, prevent this happening again and just try to proceed with collecting our judgment. Thank you, Judge.

THE COURT: Ms. Wolf, I'd like to hear from you next. Do you have any position on the venue issues raised by the information on Mr. Lubin's schedules?

MS. WOLF: Your Honor, the U.S. Trustee received a copy of the debtor's 2022 and 2023 tax returns which do list the New Jersey property as the return address on the tax return, however, we don't have any better information than what is before the Court today as to the debtor's residence.

THE COURT: Thank you.

Any of the other parties wish to be heard with respect to the issue of whether or not this case was properly venued in the District of New Jersey?

UNIDENTIFIED ATTORNEY: Your Honor, may I add something? I'm not an attorney of record. I am an attorney. I represent one of the creditors. I would just like to point out that the tax returns being referred to are from 2023.

THE COURT: Okay. So, look, this is an issue of

concern to the Court in terms of, you know, whether or not it's going to, you know, expend resources in a case that is not properly before it. In light of the fact that there's not crystal clear clarity and kind of the inconsistency of what Mr. Lubin has stated in his schedules and what he's representing here, I don't think the Court is in a position to, you know, make any type of finding or conclusion that venue is appropriate. So, I'm prepared to go ahead and hear argument on, you know, the merits of the motion before the Court and kind of reserve, you know, in terms of how we're going to go forward after hearing argument and whether or not further briefing is necessary on the venue issue.

So, you know, given that we're here on Mr. Breslin's motion, I'll hear from him first and --

MR. LUBIN: Your Honor, sir, can I bring up something about the venue first?

THE COURT: What is it, Mr. Lubin?

MR. LUBIN: I just want two minutes. First, Mr. Breslin is right about AI. I do use it to the best of my ability. I do have dyslexia. There's no intention to have inconsistencies. At the last hearing I told Your Honor I'm doing to the best of my ability. I wanted to retain an attorney to do my schedules to have it 100 percent accurate to the best of my ability.

Another thing I want to mention, I don't want to be

pro se. I have no interest in being -- I'm trying to protect my rights. I am in a position right now due to cross form and overlapping issues where I met with a bunch of attorneys that I believe Rachel's office spoke with which are doing due diligence on whether I can legally retain them or whether I need to appoint a special or conflict-free type of counsel as a debtor-in-possession due to cross form issues.

I can't even retain an attorney right now. It's not about money. We both talked about money because Breslin -- FVP has an order from Florida that says any attorney that accepts money from me, whoever pays it is liable to their judgment. I don't know if the judge signed that order intentionally or not. He might have misread it. But there's a lot of other issues here.

I understand the inconsistency was intentional. I was working as quick as I could the last few days to put my schedule. I'm sure there's other inconsistencies that are not intentional. I have -- I've been doing research on getting -- on filing some type of motion. I'm talking to attorneys that I think this Court knows that I'm doing research on whether they can be -- legally represent me as a regular debtor-in-possession attorney or whether they would be appointed as some type of conflict-free counsel. There's a court order in Michigan that says that Spin Capital's rights to any claims, whether known or unknown are --

THE COURT: Mr. Lubin, I'm going to stop you there. So I understand that you wish to retain counsel and that there's complications there. I don't think there's anything else that really can be accomplished by having a further dialogue on that although I will say, sir, that, you know, to the extent that your case survives beyond today, I see very little possibility that you can prosecute a Chapter 11 case to completion in a matter with this universal creditors without counsel. So, you know, to the extent that you are going to stay pro se in this matter, I expect that this is, assuming you can get past today, the reporting requirements, the legal issues that need to be dealt with, this is not something that I would expect you to have counsel.

MR. LUBIN: I agree. I intend to have -- I wish I had counsel yesterday. I intend to have counsel. I mean, counsel is doing due diligence, a few attorneys, but I intend to have counsel as soon as possible. It might take a couple of weeks or so, but, no, I should not be pro se. It's a rights issue here with my civil rights, and no, I -- someone that has dyslexia, yeah, I do have Claude with West Law so -- and I'm able to put together a little bit of a motion, but, no, I should not be pro se. And my first priority is having attorneys that are legally protecting my interest put together all schedules and whatever needs to be done to protect my interest, and it should not be -- I fully agree with Your Honor

on that.

I'm sure there's more inconsistencies. They're not intentional. In my schedules, there's a lot of paperwork. It's overwhelming for someone like -- it's above my pay grade, this type of stuff. I'm good at negotiating and speaking. I'm not good at putting together schedules.

THE COURT: So, turning to the motion, Mr. Breslin, you know, I'll hear from you and, you know, one of the things that I do just have to say at the outset is that given Mr. Lubin's current pro se status and the fact that he is -- it sounds like he is endeavoring to hire counsel, you know, on this matter, I have to say that while I haven't decided anything yet, I think I would need to overcome a pretty high hurdle to make any ruling today as opposed to kind of treating this as a preliminary hearing subject to supplemental briefing including getting some sworn statements from Mr. Lubin that this case is even properly venued here.

I want to, if Mr. Lubin is getting counsel, you know, I think it benefits everyone including the Court to have a bankruptcy lawyer address these issues. And so I realize that you have no control over that, Mr. Breslin, and that you want the relief that you want but I will also say that I do have some pause here.

I understand your client's frustration, but it is certainly not the first time that a judgment debtor has sought

protection from creditors in Chapter 11 and that I understand that your client is not happy with that but one of the things I need to be persuaded of is that this really, you know, rises to the level of bad faith that would warrant dismissal and I'm not sure that there's the factual record there. And so I'm saying this to you just to be as helpful as I can in aiding you in your presentation so with that, let me hear from you, please, sir.

MR. BRESLIN: Thank you, Your Honor. And I'll brief. I certainly understand Your Honor's position. As far as Mr. Lubin's counsel, and we could file affidavits to this effect, this has been an ongoing problem with Mr. Lubin. I was trial counsel during the trial which returned the fraud verdict against Mr. Lubin that is now both in post-judgment collection and on appeal, and I'll be happy to submit an affidavit to this effect.

Mr. Lubin went through eight different lawyers in the trial and he wound up hiring I believe the ninth a few days before the trial. After the trial that counsel withdrew and Mr. Lubin has been pro se in the collection matters for at least six months and there's been an ongoing common theme presented before Judge Haimes, the complex business judge in Fort Lauderdale, about Mr. Lubin and counsel and it's a common theme and I'm happy to outline all of it in detail to Your Honor.

Circling back to why we didn't move for a motion for relief from stay, we filed the adversary case, Judge, and this is a fraud judgment. It was tried before a jury. The jury made a determination and so we believe that it's black and white at least as far as the FVP parties go whether or not Mr. Lubin can get any protection from the bankruptcy courts with this fraud judgment.

That said, there are ongoing collection issues and there was sale after hearings were held by Judge Haimes which Mr. Lubin attended evidentiary hearings and his interest in various companies was subject to collection and foreclosure and Judge Haimes ruled on that and Mr. Lubin attempted to take an appeal from that and it is that that he's -- it is the failure for him to get relief at the trial court that the appellate courts didn't give him any relief and so what he did was he came here and he filed a bankruptcy and he got the immediate stay so he got the relief he needed. So, the question is, Judge --

THE COURT: Let me pause you there, Mr. Breslin.

MR. BRESLIN: Of course.

THE COURT: I just want to pause there. I'm with you. So is it your position that the timing of the bankruptcy in and of itself is an indicia of bad faith?

MR. BRESLIN: Absolutely.

THE COURT: Because you have many debtors that, you

know, there's a litigation loss or there's a judgment enforcement activity that precipitates the bankruptcy filing. So at this point in our time line is it your client's position that that, that the timing of the bankruptcy filing is and of itself tainted?

MR. BRESLIN: Yes, but there are additional things, Judge. And one of the things, just like you said, is venue. There's an inconsistency what we would suggest are material intentional misstatements that were made regarding venue, that's A. B, we have waited -- Mr. Lubin filed his schedules a day before this hearing. And if you look at the schedules, Judge, venue aside, he filed the petition in the bankruptcy court that said he had assets between I believe 10 and 50 million or 100 million. There are very large numbers that are thrown around.

And if you look at his schedules that he filed yesterday, there are -- he lists $13,000 in assets but he lists interest in companies. And when it comes to valuing any of those interest in companies which was one of the foreclosure sales that he stopped, it's unknown. So what he's done, Judge, is he's come before Your Honor and he's filed these schedules and he doesn't say anything in these schedules. He says I own these interests, I'm not going to value these interests, I'm not going to give you any information about these interests but I'm using the automatic stay to keep the collection process

moving forward.

So, what we did was, Judge, you know, we moved for relief from stay which I believe I think we'd be entitled to. I think it's painfully obvious that this was a litigation tactic. And if we used, you know, the case law just went from this district, the burden shifts to the debtor to prove that it was filed in bad faith if there is indicia of a last-minute deadline filing which we've outlined in our papers.

So, when you couple that, Your Honor, with the inconsistencies in the venue, the fact that he filed schedules yesterday that don't say anything, he doesn't list any value as to any of these companies, he lists Spin Capital, Teton Life and all -- he lists his interests but he doesn't give any value.

So, what we have, Judge, is it's not -- you know, the question before Your Honor is from what you see, is there a legitimate bankruptcy purpose as to this filing in this case because it was filed because of the relief that we were seeking on a fraud judgment? So, I think one thing Your Honor can consider ultimately is, you know, what's the likelihood of his success on getting any relief on a jury trial a fraud judgment?

And that's the thing, when it comes to judicial resources, Judge, it's our position that Your Honor's resources should not be taken up nor should any bankruptcy court's resources be taken up on the FVP parties' attempts to enforce

their fraud judgment.

And so, what we did, Judge, we changed our ask in Docket Entry 13 to make it very simply just as far as our fraud judgment goes and what we asked is that it be dismissed with prejudice and that he can't simply go to another bankruptcy court and do the same thing because, you know, I understand Your Honor's position that when you talk about frustration but it's more than that. Mr. Karten who has been heading the collection efforts by FVP, he just had to take Mr. Lubin's deposition several times. He hasn't appeared. You know, he's able to testify today if Your Honor wants to hear more about it.

But I think, ultimately, Judge, you know, I think it's painfully obvious here that this is just a tactic. This was just a -- it was filed for no other reason other than to stop the FVP parties from doing what we had hearings on in Florida and the judge ruled that we could foreclose his personally held interest in these entities and that is why it got filed when it did. It was at the last minute.

And I certainly believe, Your Honor, that he can't prosecute a Chapter 11 without counsel. But, you know, when you stop and think about it, Judge, the only reason it's a Chapter 11 is so, you know, I guess his AI told him that he would then be in charge and keep some control as opposed to just filing a 7 and then the Trustee could then, you know, just

take over and we'd only be dealing with the Trustee.

So, I'm very, very sympathetic to what Your Honor's concerns are but it's these very concerns about the waste of judicial resources that we attempted to resolve by moving to vacate as opposed to just seeking a relief from stay. Because ultimately, I just don't see any goal that he can achieve against a fraud judgment and that's the only matter that's before Your Honor. I don't see any other creditors here seeking any type of relief.

So, that's our position, Judge. And don't get me wrong. I'm in line with Your Honor 100 percent on what you would seek. But, you know, if you're really interested in hearing the entire history of these ongoing efforts to just obstruct a jury verdict after a lengthy trial, we're happy to present that to Your Honor. Thank you, Your Honor.

THE COURT: Thank you, Mr. Breslin. And just, look, so for me, I need to distinguish between whether or not a case that I think has legs and that can be completed and that's speculation on my part versus a case that clearly is filed in bad faith and serves no possible reorganizational purpose.

And so regarding your point about Mr. Lubin's schedules not containing any information, you know, I looked very carefully at them and, you know, taking the schedules at face value, he does note on Page 53 of 56 on his addendum to Schedule AB that, you know, with respect to Spin Capital which

Mr. Lubin maintains he owns 100 percent of that, you know, it has assets that include litigation claims in the face amount of in excess of $50 million.

So, again, I’m trying to view this from both sides. You know, is it not at least theoretically possible that the potential value of up to $50 million can’t be the basis for trying to put together a plan? I mean your client is owed less that $9 million, is that correct?

MR. BRESLIN: Yes, Judge. We supplemented. It’s around five at this point.

THE COURT: Okay. So, again, putting aside the pro se issue, putting aside, you know, the litigation issues that preceded the filing of the bankruptcy case, you know, at least in the record that I have before me, I have a debtor alleging to have assets that are potentially worth in excess of $50 million, whether that turns out to be true or not, I mean that’s what, you know, the rest of the Chapter 11 process can bear out.

But in terms of determining today, you know, taking the statements and the schedules at face value that -- I mean it would be one thing if Mr. Lubin was conceding yeah, like my assets have zero value, there’s nothing to try to restructure around or nothing that I can try to do a plan around as opposed to saying well, there’s going to be a forced sale here, I filed for bankruptcy to get some breathing room and I want to

potentially explore away where I can monetize the assets through a plan that could also pay creditors.

So, again, not speaking to how likely those events are to happen, speaking to good faith and proper bankruptcy purpose as it stands today, I'm having trouble seeing how I can make that conclusion on the record that we have right now.

MR. LUBIN: Your Honor, can I mention one thing?

MR. BRESLIN: I understand, Judge. Thank you.

MR. LUBIN: Your Honor, the FVP parties have been -- they keep serving demand letters to Fred Stevens which I think you know, he's -- I appoint him as receiver on a matter of $9.3 million. My company is the only creditor to the estate -- $9.3 million in cash. And they keep on sending frivolous letters to try to get Fred to turn over the money which he's not going to do. Fred is a very straight shooter.

But these assets they know about, the reason why there weren't values listed is I don't know what the values are of all these claims. Not only that, I own Spin 100 percent but on these deals yes, there's over $100 million in claims, I don't own these participants. Maybe 20 to 30 percent of all the claims out there is entitled to me is other people that are in these deals.

And FVP is trying to make believe there's no disclosure. Eighty percent is public records. You know, they're asking one of my receivers to try to turn over $9.3

million when now they're saying they're owed five with an $8.8 million judgment. There are so many other moving parts but like regarding -- I'm not looking to screw anybody.

And regarding the fraud judgment, I think you have -- I forgot the statute which prevents Your Honor from getting into -- there was no fraud there. I don't think it belongs in this court. There is a pending appeal annoying, and for that -- most of that appeal, but I didn't. I think I need an attorney to handle it. And there's three pending appeals. They know where this money is, and they're trying to foreclose on an entity that I own 100 percent when its participants in those deals, they're going to take all the money and keep it. And it's a few participants, a few funds that would give me money.

And these complications over here regarding restructuring, I think all the banks, there's maybe like a few hundred thousand dollars that are owed to banks. I think they should all get paid in full not over five years -- immediately, like when there's liquid to pay it. The settlement offer is on the table. I can't take this. I technically could. There's legal questioning on whether I can accept it right now until Chief Judge Kimball is a bankruptcy judge rules on Spin Capital's rights which is supposed to come out in the next month or two and he indicated really well that it's going to belong to me and not to Franklin and FVP.

I sat through a six-day trial on that. Rachel could call Heidi Feinman and they know very well about the people messing around with my rights. He mentioned I went through nine attorneys? I went through over 100 attorneys throughout the country because of -- I'm not looking to get into merits because of the shenanigans that people played with my litigation rights, control of claims. And there's law firms that are -- that ensue that are offering me money which I haven't accepted. It's a mess.

THE COURT: Mr. Lubin, so I'm going to --

MR. LUBIN: Yeah. I just want to say, you could appoint a court examiner today to investigate everything and I agree with it.

THE COURT: So, listen, Mr. Lubin, I do have questions for and I'm going to hear from you but before I do that, I would like to hear from the Office of the United States Trustee in terms of what their position is on Mr. Breslin's motion.

MS. WOLF: Your Honor, the United States Trustee does not take a position on the creditor's motion today but we are serving and the 341 meeting did not take place yesterday but it has been rescheduled and there could be an additional opportunity to question the debtor under oath regarding his financial affairs. Thank you.

THE COURT: When is that scheduled for, Ms. Wolf?

MS. WOLF: July 31st which is next Friday and I believe it’s at ten o’clock. There was a blip with the notice, the original notice that went out by the clerk’s office and so it had to be rescheduled.

THE COURT: Okay, thank you, Ms. Wolf.

So, Mr. Lubin, I want to ask you a couple of questions and I would just ask that you just answer my questions directly and don’t give me more information than what I’m asking for.

So, I very much do have concerns as I already mentioned about whether or not this case is properly venued which is going to be something that we need to figure out.

I also do have concerns about the efforts to delay the collection process and just filing pleadings for the sake of filing pleadings. The fact that you spent the time filing a motion regarding a pro hac vice application is indicative to me of someone who just wants to create chaos and slow things down as opposed to address these things on the merits.

MR. LUBIN: I can withdraw it.

THE COURT: I’m not asking you to withdraw anything. You are --

MR. LUBIN: I can withdraw, whatever.

THE COURT: A litigant can file what they file. I’m just saying that the picture that’s being painted here is, you know, you filed your schedules yesterday but the amount of time

going into trying to oppose a routine pro hac vice admission does not really indicate to me someone who's looking to take this bankruptcy as an opportunity to restructure as opposed to, you know, lob metaphorical grenades. And so I do -- and given the history that I've been made aware of the state court litigation, I do have concerns as to your good faith in terms of this process. That I'm saying is I have concerns. I don't have conclusions, okay?

So, against that backdrop, I would just like to hear from you in terms of what is it that you realistically hope to achieve in this Chapter 11 case in terms of -- and how. So, obviously, there's the issue of getting counsel and a timetable for when that would be done. And if it's not -- the way a Chapter 11 case moves forward and is concluded is by preparing and filing a plan and disclosure statement and soliciting votes and prosecuting a confirmation hearing. Assuming you remain pro se, how can you possibly --

MR. LUBIN: I'm not remaining pro se. I can't remain pro se. How -- I've been pro se only in Florida because I couldn't get an attorney to represent me. The previous that did represent me, I didn't know until Judge Kimball told me and I went through a trial that it's questionable whether I'm allowed to retain a Spin Capital -- I don't want to get into that right now. I just kept on hiring attorneys and they would go missing in action on me and they would withdraw for

conflict. They wouldn't say why.

How do I plan? I plan on getting this thing on guardrails. When I filed this, I was in contact with some bankruptcy attorneys in New Jersey already and they -- one of them told me to file it pro se, they said, because this whole overlapping claims and litigation rights dispute is potentially a big liability and they can't go in blind. They have to know what's going on.

And it's being looked at by some attorneys and I need to have counsel not only -- I need to have counsel. I need to appoint special counsels to go to Florida and deal with the Florida court and issues like that because I need conflict-free counsel. You're not going to be able to get a Florida law firm unless it's appointed through bankruptcy. And there's creditors that are owed money. I managed to put Spin into bankruptcy, too. I don't know, I need to speak as a creditor, as an investor -- participants.

Just to put it on guardrails, there's people that are owed a lot of money there including myself. And once I figure out how to get an attorney here, which I'm in contact with some people, I hope to get that done immediately. Like somebody was willing to come in today. That would have been great. I wish I had an attorney come to this hearing. I cannot be pro se. I've only been pro se because, otherwise, I'd just be defaulting on everything and everything would go to the

garbage. But I do need an attorney.

THE COURT: Can we just pause right there? So I appreciate your candor in recognizing that it is not realistic or feasible for you to proceed without an attorney in this matter.

MR. LUBIN: No way.

THE COURT: So, would you -- are you willing to stipulate to either voluntary dismissal of this case or conversion to Chapter 7 if you have not retained counsel by a date that we impose?

MR. LUBIN: I would stipulate, not that I'm converting to Chapter 7, but a trustee being appointed and a court examinator (sic) if I can't get an attorney by -- I mean I would not -- I would prefer the trustee not -- they're going to go bill -- they like to bill, whatever and I don't get to make any decisions and they can see money and it can be a problem. But yeah, I do -- yeah. Your Honor, I agree to appoint a court examiner today that can start investigating me. I have nothing to hide and --

THE COURT: That's not --

MR. LUBIN: An attorney should be -- I don't know how long it's going to take. I might have to file a motion. I'm looking at some different angles. I don't even want to mention attorneys' names because the FVP parties already have sent demand letters to my attorneys, including Ray Robinson, which I

just hired, I should upload it to the Court, a denial to represent these entities, that about ten minutes afer they notice in they have a court order issue that says anyone that pays Mr. Lubin's legal fees is liable for our judgment. I think I may have uploaded that in one of my exhibits.

Basically, they don't want me to have the right to defend myself because, whatever, I don't want to have to get into merits or anything. Yeah, I do need an attorney but I want some time. If I was able to get an attorney tomorrow, I would but it might take a few weeks. Your Honor may have to appoint by like a conflict-free special counsel type of motion.

THE COURT: No, sir, you don't get an attorney appointed in bankruptcy. Filing bankruptcy -- this isn't a criminal proceeding where you're entitled to an attorney.

MR. LUBIN: Not a criminal proceeding. I'm talking about so people can't allege that they own my litigation rights. I have to have a conflict free counsel that is protecting my interest.

THE COURT: But I'm telling you I can't appoint counsel for you is what I'm telling you. I'm saying this is a bankruptcy case. This is not --

MR. LUBIN: Right. Doesn't it have to be approved by a motion?

THE COURT: You need to retain your own counsel that you choose and get retained.

MR. LUBIN: Your Honor, there's procedures in bankruptcy to appoint a special -- a lawyer which I pay the legal fees or one of my family members, somebody pays the legal fees that prevents a lawyer from being conflicted on someone else alleging that they own my litigation rights.

THE COURT: You're mistaken, sir. A Chapter 11 Trustee can be appointed to supplant you as the debtor-in-possession but there's no -- I don't have the ability to appoint a lawyer for you to --

MR. LUBIN: Not appoint a lawyer. It's basically granting the lawyer that he can't be conflicted. I don't know -- I forgot what the procedure is called. Let me contact with some attorneys about it.

THE COURT: Okay.

MR. LUBIN: Your Honor is aware of a special counsel being appointed in the adversary proceeding, right, due to conflicts? So, I may need some type of -- I'm going to -- the legal fees will get -- I need some time. I need counsel and it's not that simple for me to get counsel. The U.S. Trustee's Office spoke to some attorneys I was trying to retain and none of them denied because of money.

MS. WOLF: Your Honor, the U.S. Trustee wholly disagrees with that statement.

THE COURT: Say no more, Ms. Wolf.

MR. BRESLIN: Your Honor, would you consider, you

know, allowing us to, you know, let Mr. Lubin's ideas of how Your Honor should run these matters and there will be a lot of papers coming. Just give us stay relief and we can just go on about trying to collect our judgment. You know, we moved to vacate because to us it was painfully obvious it was filed in bad faith. We filed a supplement to it that was deemed by the clerk to be a motion for stay relief. I think that, you know, we're certainly I believe entitled to stay relief on our fraud judgment at a minimum.

MR. LUBIN: Mr. Breslin, can you get into that in a minute? I'm concerned --

MR. BRESLIN: And so I certainly understand Your Honor's position but I'm just trying to find a resolution where we're removed from yet another three-ring circus created by Mr. Lubin and his AI.

THE COURT: Mr. Breslin, I fully understand your desire to do that, but the stay -- and that's something else I wanted to get into in terms of the stay relief. I feel like there are two different issues that were discussed in the pleadings. One was related to appellate proceedings and one had to do with executing on the judgment. Can you clarify like how those two things are related?

MR. BRESLIN: You know, oddly, Judge, to give you a little background, we're going to collection in standard collection processes in the court and we were attempting to

foreclose on Mr. Lubin's assets and part of those assets were his interests in some companies. Hearings were held. The Court found that they were assets that we were entitled to foreclose on those assets. And Mr. Lubin then filed an appeal of that.

So, we have the main appeal going of the fraud judgment where no bond was posted so that's why collection proceedings were moving forward. Then for two different rulings by Judge Haimes Mr. Lubin filed appeals. So I believe there's three different appeals going down in Fourth DCA and it was the Fourth DCA that issued an order saying please notify the bankruptcy court that we would like a comfort order to know whether or not we can proceeding with ruling on these issues that have been brought before them by Mr. Lubin. So that whole --

THE COURT: Those being appellate issues?

MR. BRESLIN: Well, right, the Fourth DCA issued an order saying please bring this matter to the attention of the bankruptcy court and ask the bankruptcy court to advise whether or not they can proceed with the appeal. So that's the order that was filed, the record by both Mr. Lubin and us because the appellate court -- the Fourth District Court of Appeals said that it had to be done within 14 days of issuance so we were hoping that there would be some ruling on our motion to vacate to make it moot but that didn't happen.

So, that order was brought to Your Honor's attention. Now it's out of our hands. Whatever Your Honor wants to do or not do is entirely, of course, up to Your Honor, but yeah, I mean the appellate courts, they want to know whether or not they can proceed with the multiple ongoing appeals and --

MR. LUBIN: Your Honor, can I get into the stipulation? I'm willing to --

THE COURT: Not just yet, Mr. Lubin. Not just yet, Mr. Lubin.

So, are you only now -- are you particularly just focused, Mr. Breslin, on getting stay relief to just execute?

MR. BRESLIN: Well, we filed an adversary complaint for Your Honor to make a determination that our judgment, and only our judgement, nothing else, is not discharged. So like I said, we made a motion to vacate as opposed to a motion for stay relief and so that matter was set for today and here we are.

After that, we filed the order from the second -- on the Fourth DCA. The clerk deemed that as a motion for relief from stay. Your Honor has scheduled that for an in-person hearing on August 6th and so that's where that came from. Our motion was to vacate. We didn't move for relief from stay. And depending on what Your Honor does today, we'll make that determination.

So, the adversary complaint is proceeding forward.

The Fourth DCA would like Your Honor to indicate to them what they can and cannot do. But like I said, they want a comfort order. And then lastly, their request for a determination by Your Honor to go to them is scheduled for August 6 in person and I would like Your Honor to permit that to be done by Zoom so I don't have to fly up there to have that hearing in person. That's what's scheduled for August 6. It's the Fourth DCA's motion.

THE COURT: Got it. So, the appellate issues are going to be dealt with on the 6th. Thank you for clarifying that.

So, Mr. Breslin, with respect to your request to vacate, I mean that really is part and parcel of the motion to dismiss which is that whether it's dismissed or you have relief from the stay, your clients can just bypass the bankruptcy and exercise self-help. And if you have a bankruptcy that's not dismissed -- I mean the whole point of a bankruptcy is to give the debtor an opportunity to propose a plan that pays the claims, that creditors are all treated under a plan rather than just having a single creditor, you know, be able to kind of bypass the process and, you know, get their money now.

MR. BRESLIN: I understand.

MR. LUBIN: Can I mention one point?

MR. BRESLIN: Please, please, Mr. Lubin, please don't interrupt me.

In response to that, Judge, the FVP parties and only the FVP parties have a fraud judgment, a jury verdict on fraud.

THE COURT: Right.

MR. BRESLIN: So we are in a different category than every other creditor --

THE COURT: Pause there. You're in a different category in the sense that you have a basis to say that whatever you get paid through the bankruptcy if there's anything left over, you can continue to try to collect, but that doesn't mean that fraud folks with non-dischargeable claims get to say well, we're just skipping the bankruptcy. I mean there's all kinds of non-dischargeable IRS liabilities but they don't come in and say give us stay relief because we have a non-dischargeable claim, we just want to levy on the debtor's assets that he may be trying to use to fund a plan.

So, again, I do understand the difference but I don't see how that speaks to vacating the stay as opposed to just enhancing your client's rights for collection with respect to any unpaid amounts that remain after the debtor gets his discharge.

MR. BRESLIN: Well, Judge, you certainly know more about it than I do so I wasn't looking at it that way. I've simply gotten stay relief on fraud judgments, you know, a few times. I don't practice bankruptcy law primarily. I do it quite rarely and, you know, I'm a trial attorney.

So, you know, that's obviously not the issue before Your Honor today, but I don't believe that our judgment is dischargeable but that's not an issue that's before Your Honor today. But, you know, what is is the motion to vacate and so I think Your Honor has indicated, at least you've indicated to some degree what you would like the parties to do and we, of course, will comply.

THE COURT: So, Mr. Lubin, I'll hear from you in terms of what you want to say.

MR. LUBIN: I just want to mention one thing. Yeah. First of all, in regards to relief from the stay, there's only like there's two assets. There's two entities membership interest I'm trying to protect and Your Honor is probably familiar with this is under New Jersey and Florida law, hold on, under New Jersey law you can't foreclose on a single member LLC with a judgment and there's no equity pledge. And under Florida law you could foreclose on a single member LLC but it's only if the entity was incorporated in Florida.

And even in their own order it says they're using a statute that in that statute it says if it's a foreign entity, the rules go by where the entity was incorporated. So they're trying to foreclose on my most valuable asset. Those are the only two assets I care about. There's nothing else they're going to get from me personally. They want relief to go freeze bank accounts? No problem. I'm trying to protect my assets

and other people's money in these entities that are actually worth something and they're doing it illegally.

So, I brought it up to the judge. I said their order is illegal under this statute and he goes you may be right. I uploaded the transcript. He said deal with the Fourth DCA. I'm not saying the judge did anything wrong. I think he's sick and tired of this case. There's been a lot of shenanigans in this case. He's just rubber stamping every order that FVP submits. But I just want to mention what they're doing is not even legally allowed and that's what I'm trying to protect it.

And with regards to the trustee, I would agree to that. I don't want 24 hours type of thing. I want some time to be able to get an attorney and get this thing on guardrails and get everyone that legally should be paid, paid. I'm not hiding anything. I'm not trying to screw anybody. If people are entitled to get paid, they should fully get paid whether it's a six or 12-month bankruptcy whatever it is. It's money and that's where the settlement offer is on the table. If they're legally entitled to their judgment, as they say they should, they know --

THE COURT: Mr. Lubin, I heard you mention a settlement offer a couple of times. Who are the parties to that potential settlement that you're referring to?

MR. LUBIN: There's a few --

THE COURT: Are you talking about trying to settle

with Mr. Breslin's clients?

MR. LUBIN: No. This offer is the entity's settlement offers and the money will come into the estate and they'll get paid if their judgment is valid and enforceable.

MR. KARTEN: Judge, I can fill in if you want.

MR. LUBIN: Hold on. I just want to say they're going to foreclose on an entity and steal other people's money like when they know that the entity is worth more money than the judgment? Like that's not kosher.

THE COURT: Mr. Karten, what was it that you wanted to say?

MR. KARTEN: If you want clarification, I'd be happy to make this clarification for the Court about what he's talking about. The settlement is in a New York litigation case that was brought by Spin Capital against a number of insurance policies --

MR. LUBIN: These other settlements -- yeah.

THE COURT: Please don't interrupt, Mr. Lubin.

MR. KARTEN: He then entered a deal with another company that he has a 50 percent interest in called Teton Life, a Delaware corporation and has a 50-50 partnership. Teton Life was then substituted as the plaintiff in that case.

After he agreed to that, then he on behalf of Spin Capital transferred all interest in the case and property to himself, then re-transferred it to JL Special Investments and

is now claiming that the settlement that was on the table is invalid, that only him as to the amended operating agreement and settle the case and the amended operating agreement doesn't say that. So they are trying to force us out in New York. He's opposing the settlement and so it's laying in limbo at this particular point. The point is settlement -- Spin Capital is no longer the plaintiff in that case. He assigned all the rights and the litigation to a company that he now owns 50 percent of which is Teton Life.

I'd also add that it sounds like Mr. Lubin is talking about the legality of these (indiscernible) orders, would like the Court of Appeals to make these decisions.

MR. LUBIN: What?

MR. KARTEN: Those are the issues before the Fourth District Court of appeals where the charging orders, whether there's power for the Florida judge to make such charging orders --

MR. LUBIN: By the time they make the order, I have a bunch of criminals that walked away with a couple of hundred million dollars in assets? Like and where's the money? It's all gone by then. No, that's not how it works.

MR. KARTEN: I think he's just told you that he's stolen everything --

MR. LUBIN: I'm just saying hypothetical.

MR. KARTEN: He's afraid that the money will

disappear in the New York litigation.

MR. LUBIN: I'm just saying hypothetical. I'm not calling you a criminal. I apologize.

Yeah, regarding settlement, I was saying, Your Honor, the settlement --

THE COURT: I think I got the answer to my question. That's okay, Mr. Lubin.

MR. LUBIN: That's not what I was talking about but, yeah.

THE COURT: So, my question was simply I wanted to know if there were settlement discussions with Mr. Breslin's client to try to resolve --

MR. LUBIN: I tried multiple times. No. They haven't offered -- I asked them how much money do you want. They don't even want to settle it. They just want to take Spin Capital. They don't even want their judgment amount. They want Spin Capital. They want to become rich. That's what they want to do. They want to take other people's money. I can show e-mails to the Court me asking to try to settle. They won't even talk to me about a settlement discussion. They haven't gotten on the phone. They don't want to settle. There's other issues there.

THE COURT: All right, so I've heard what I need to hear to decide what we're going to do here.

Mr. Breslin, I am in no way unsympathetic to the

situation that your clients find themselves in in terms of being thrusted into a Chapter 11 after going through contentious state court litigation. I understand that. I have to take my cases as I find them. And so I am not prepared to deny your motion because I feel like we need some more information.

So, what I am going to do is to give Mr. Lubin the opportunity to hire counsel that can take a position in this matter. I'm going to adjourn the motion to September 3rd at 2 p.m.

I expect, Mr. Lubin, for you to have retained counsel by then. Also, and by August 27th, Mr. Lubin, I need you to submit a sworn declaration regarding your qualifications to be a debtor in the District of New Jersey which means I need a sworn declaration attesting to where you resided for the 180 days --

MR. LUBIN: It's September 3rd? I won't have an attorney.

THE COURT: So, if by August 27th is what I'm saying, sir --

MR. LUBIN: Okay.

THE COURT: More than a month from now.

MR. LUBIN: Okay.

THE COURT: So, I need a sworn declaration under oath and penalty of perjury attesting to where you resided for the

180 days prior to your bankruptcy.
MR. LUBIN: And that means I don't want there to be an order for this.
THE COURT: Excuse me?
MR. LUBIN: Do I need to write this down right now, or they'll be an order in the court saying this?
THE COURT: I will -- the Court will issue an order saying this but it's important that you understand.
MR. LUBIN: Okay. I'm listening. I just --
THE COURT: Your petition says rather unambiguously that you lived in your New York penthouse until you filed for bankruptcy. If that is true, you don't qualify to be a debtor in this case.
MR. LUBIN: Okay.
THE COURT: And I will dismiss this case under Rule 1014 as an improperly filed case, okay? And that's what I was prepared to do today was to dismiss your case under Rule 1014 because you under your schedules don't qualify to be a debtor here. On the record --
MR. LUBIN: I don't know, I need to -- by August 27th I need to have --
THE COURT: -- (indiscernible) stated in your schedules was actually not true, so I'm going to need something from you, a sworn declaration that addresses --
MR. LUBIN: I have to review what it says, but yeah,

where I have been the last 180 days. And it doesn't mean it'll get dismissed. Maybe we can move to Montana or something like that.

THE COURT: After I dismiss a case, sir, for improper venue --

MR. LUBIN: Yeah.

THE COURT: -- you can feel free to try to file in another district where you qualify for venue. I could also transfer venue to another district but I would not be in a position to do that today, frankly, because I feel like I would be transferring a case that's dead on arrival. You don't have counsel, you're --

MR. LUBIN: Okay, okay, okay. That's fine. Your Honor has given me more than enough time to get an attorney, get counsel, to figure out this declaration issue, if this is the right jurisdiction, the right venue and that's yeah, that'll be more than enough time to have an attorney up to speed. And, yeah, I appreciate that, Your Honor.

THE COURT: So, yes, so for the other parties, you know, obviously, the debtor's 341 meeting is scheduled for December 31st. I don't know, you know, the Federal Rules of Civil Procedure apply to contested matters so if there's any discovery that, Mr. Breslin, that you want to take between now and September 3rd, I would ask that any kind of supplemental pleading be submitted by August 27th.

MR. BRESLIN: Is that in the adversary you're referring to?

THE COURT: No. I'm referring to the motion to vacate and for dismissal. I'm talking about Docket Entry Number 13 which is what we're on the hearing for today. I am --

MR. BRESLIN: Would we be permitted to issue discovery in the adversary case? Because we -- Mr. Lubin simply ignores requests for discovery. Would we be permitted to do that without Your Honor thinking that we're vacating our position that we're entitled to --

MR. LUBIN: That's the 25 million dollars.

MR. BRESLIN: -- the non-dischargeable --

MR. LUBIN: Giving you guys discovery.

MR. BRESLIN: Excuse me. Don't interrupt, Mr. Lubin. -- non-dischargeable because it's a fraud judgment. So, we would like to be able to use discovery and without Your Honor thinking that we're simply using the adversary for discovery.

THE COURT: So, the adversary has its own discovery timetable so all adversary proceedings need to have a pretrial conference and there needs to be a joint scheduling order submitted before any discovery can commence. There's an opportunity to plead, to answer, to file an otherwise responsive pleading. So, discovery should not go ahead in the adversary.

In terms of what -- the only discovery that would be relevant is whether or not Mr. Lubin's debt is dischargeable is not relevant to the motion I have to decide. I'll assume that Mr. Lubin's debt is non-dischargeable for purposes of the motion, but as I indicated, having a non-dischargeable debt doesn't prevent someone from filing for bankruptcy. Filing for bankruptcy with a non-dischargeable debt doesn't make it subject to dismissal.

So, I'm talking in terms of the specific predicate for dismissal, for cause whether or not the case has been filed in bad faith in addition to whatever discovery that you want to take regarding whether or not Mr. Lubin qualifies for venue in the District of New Jersey. Because, as I indicated, if Mr. Lubin does not qualify for venue, his case would be subject to dismissal under Rule 1014.

MR. BRESLIN: And Your Honor is not inclined to convert it where our trustee could explore all of these issues and --

THE COURT: Well, there's not a motion to convert before me right now and even if there were, at this early stage, I would not be inclined to convert this case. Like I said, Mr. Lubin albeit belatedly has filed schedules that at least indicate that there are assets of value that would be available to fund a plan and giving him now ample time to try to retain counsel to try to make something happen, I don't feel

like in the interim it would be appropriate for me to, you know, to convert this case to Chapter 7 or to incur the administrative expense of having a Chapter 11 Trustee come on board particularly when there's motion to do so.

MR. BRESLIN: And as far as the August 6 hearing, Judge, is that going to be rolled up into these new orders? Because that's the Fourth DCA they requested something. I certainly understand that you're not going to respond, but that's what's scheduled I believe for the Fourth, that's our motion for relief from stay and I think Your Honor has indicated how you would rule at this point.

THE COURT: Well, I mean, actually, I'm not deciding that but it sounds like there's not a very good reason not to allow those appeals to go forward but that's not scheduled for today so I think we can still go ahead on that discrete issue on August 6th and you're not required to appear in person in that, Mr. Breslin.

MR. BRESLIN: Thank you, Judge. If you could have that by Zoom, I'd appreciate it. Thank you very much.

THE COURT: So, the Court's minutes will reflect that with respect to Number 55 on the calender, the order to show cause for failure to file missing documents, that's been withdrawn.

With respect to Number 56, the motion to vacate and for dismissal and for other relief is adjourned to September

3rd at two o'clock p.m.

And the Court will enter an order, you know, regarding the, you know, ancillary issues that we discussed regarding Mr. Lubin's obligation to submit a sworn declaration regarding qualifications to be venued in the District of New Jersey as well as the deadline for any other supplemental pleadings that the other parties wish to submit in connection with the motion.

MR. BRESLIN: Thank you very much, Your Honor.

MS. WOLF: Thank you, Your Honor.

THE COURT: Anybody wish to be heard on these matters?

(No audible response)

THE COURT: Okay, that concludes the two o'clock calendar and we are adjourned.

ALL ATTORNEYS: Thank you, Judge.

* * * * *

**C E R T I F I C A T I O N**

I, MARY POLITO, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/Mary Polito

MARY POLITO

J&J COURT TRANSCRIBERS, INC. DATE: July 29, 2026