**EXHIBIT A to the Certification of Avrumi Lubin — PRELIMINARY OPPOSITION TO THE TRUSTEE MOTION AND ALTERNATIVE REQUEST FOR AN EXAMINER UNDER 11 U.S.C. § 1104(c)**

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
RECEIVED
2026 SEP 15 P 4:03

**Avrumi Lubin, Pro Se**
1460 Arboretum Parkway
Lakewood, New Jersey 08701
Telephone: 718-570-3796
Email: josh@tetonfunding.com

FILED
JEANNE A. NAUGHTON, CLERK
SEP 15 2026
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY ______ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No. 26-17342-EJO |
| **AVRUMI LUBIN aka JOSH LUBIN,** | Chapter 11 |
| Debtor. | Hearing Date: September 17, 2026 at 10:00 a.m. (adjournment requested) |
| | Hon. Eamonn J. O'Hagan |

# DEBTOR'S PRELIMINARY OPPOSITION TO THE MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE (DOCKET NO. 62), REQUEST FOR A SHORT ADJOURNMENT TO RETAIN COUNSEL, AND ALTERNATIVE REQUEST FOR THE APPOINTMENT OF AN EXAMINER UNDER 11 U.S.C. § 1104(c)

## I. PRELIMINARY STATEMENT AND RELIEF REQUESTED

The debtor and debtor in possession, Avrumi Lubin, appearing pro se, opposes the motion of FVP Opportunity Fund III, L.P., FVP Investments, LLC and FVP Servicing, LLC (the "FVP Parties") for appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a) (Docket Nos. 62, 63, 83 and 84) (the "Motion"). The debtor asks the Court (a) to adjourn the hearing for a short period so that he may retain counsel and complete the items the United States Trustee identified on August 6, 2026; (b) if the Court is not prepared to adjourn, to consider this opposition to the extent the Court permits and to deny the Motion without prejudice on the present record; and (c) if the Court does not order the appointment of a trustee, to consider the appointment of an independent examiner under 11 U.S.C. § 1104(c) with the scope, initial budget and reporting date proposed in Part VI.G — a request the debtor first made on the record on July 23, 2026, renews here, and makes with full knowledge of what an examiner's

appointment would mean for him and for the estate (Certification ¶ 8). Since the deadline, on September 14, 2026, the FVP Parties filed an application in the New York action described in Part III.H, in which they ask that court to direct its receiver to hold funds pending a determination — by the New York court and/or by this Court — of whether those funds are property of this estate. This is a preliminary opposition, submitted as an exhibit to a certification filed with a Notice of Motion seeking leave under Fed. R. Bankr. P. 9006(b)(1)(B) to file it out of time. The debtor does not treat the submission of these papers as leave already given. He will supplement this opposition by the date the Court sets and asks that the Court not treat any point omitted here as conceded.

The FVP Parties hold a judgment against the debtor that the debtor is not able to pay today and that they contend is non-dischargeable. The debtor recognizes that § 1104(a)(1) permits the Court to consider conduct before as well as after the commencement of the case, and he does not ask this Court to vacate or review the Florida orders through this opposition. He asks the Court to evaluate whether the movants have met their burden on the complete record — including the production reflected in their own exhibits, the corrections to their account of the record set out in Part III, the outstanding reporting and disclosure items he addresses in Part VI, and any demonstrated risk to the administration of this estate — and to weigh the cost and consequences of a trustee against the alternatives in Part VI. The United States Trustee, which has examined the debtor at the initial debtor interview and the meeting of creditors and has concluded that meeting, told the Court on August 6 that it "will not join in any of the creditor motions for an 11 Trustee, at this time" and was "still making an independent assessment" (Aug. 6, 2026 Hr'g Tr. 9:1–6), and identified administrative items it expected the debtor to address (Tr. 8:11–25); the debtor does not represent that office's position as anything more than that.

## II. THE STANDARD

Section 1104(a) requires the appointment of a trustee "(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause," or "(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a). "It is settled that appointment of a trustee should be the exception, rather than the rule." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989). "The party moving for appointment of a trustee . . . must prove the need for a trustee under either subsection by clear and convincing evidence." *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471, 473 (3d Cir. 1998). The burden does not shrink or shift because the debtor is an individual without an operating business; the Third Circuit has explained that the presumption in favor of leaving the debtor in possession describes the movant's burden of proof, and that the debtor's expertise and the cost of a trustee remain factors on the merits. *In re G-I Holdings, Inc.*, 385 F.3d 313, 319–21 (3d Cir. 2004).

## III. THE FVP PARTIES HAVE NOT SHOWN CAUSE UNDER § 1104(a)(1)

**A. The Florida charging-order recitals.** The Motion leads with language from the Broward County court's May 15, 2026 order (Docket No. 62-3, Ex. F) that the debtor's limited liability companies were operated under his "complete domination and control" and that "the corporate form is used to shield assets from creditors," and presents it as a finding about all "four" of the debtor's entities (Docket No. 63 at 1, 3, 9). Five points. First, the May 15 order concerns two entities, Spin Capital, LLC and Teton Funding, LLC (Ex. F ¶¶ 3, 6); the June 11, 2026 order concerning JL Special Investments, LLC (Ex. D ¶ 6) contains the same recital; the June 11, 2026 order concerning Teton Life, LLC (Ex. E) contains no such recital and instead finds that Teton Life "is a multi-member limited liability company in which Avrumi Lubin holds a membership interest" (Ex. E ¶ 4). Second, the May 15 order is on appeal to Florida's Fourth District Court of Appeal (No. 4D2026-1512), as disclosed in the debtor's schedules (Docket No. 48, Schedule A/B, item 19). Third, the recitals were made in a post-judgment charging-order proceeding on the FVP Parties' application and declaration (May 13, 2026 Hr'g Tr. 21:1–6), at which the debtor appeared without counsel (id. 5:6–8). Fourth, the verdict form the FVP Parties submitted contains mixed answers, and the debtor sets them out in full. As to both Spin Capital and Hi Bar Capital LLC, the jury answered **"Yes"** to Question 1 (domination and control such that the company's "separate identity was not sufficiently maintained"), **"Yes"** to Question 2 (such that the company "lacked an existence independent from Lubin"), **"No"** to Question 3 (whether the corporate form "[was] formed or used for a fraudulent or improper purpose"), **"Yes"** to Question 4 (whether the FVP Plaintiffs "were harmed by the fraudulent or improper formation and use of the corporate form"), and **"No"** to Question 5 (active participation in the commission of a tort). Under the form's own instruction — "[i]f you answered 'NO' to any of Questions 1-4 and 'NO' to Question 5, then Avrumi Josh Lubin is not liable" — **those answers did not impose derivative liability on the debtor through either theory** (Verdict Form (FVP Claims Only), Oct. 1, 2025, at 7–10, attached to the Certification as Exhibit B). The jury separately found the debtor liable on the direct claims — Counts I, II and IV — and the judgment rests on those findings. The debtor does not ask this Court to reconcile the jury's answers to one another, to revisit the judgment, or to disregard the later charging-order recitals. He asks only that the verdict be described accurately, and that the § 1104 inquiry be conducted on the record pertinent to this case. Fifth, the recitals were made in the FVP Parties' collection proceedings, on a record that did not concern the administration of this estate. Section 1104(a)(1) reaches conduct before and after the petition, and the debtor does not contend that the recitals are irrelevant; he asks that they be given the weight they deserve as recitals in post-judgment collection orders that are under appeal, alongside what he has actually done since June 25, 2026 (Parts III.C, IV and VI). Every interest the orders concern is scheduled, with the charging orders and appeals disclosed.

**B. The contempt order.** The Motion relies on the Florida court's February 23, 2026 order (Docket No. 62-4, Ex. Q, at PDF pp. 37–42) holding the debtor in civil contempt for failure to comply with post-judgment disclosure orders. The order states that it is "a finding of indirect

civil contempt, the purpose of which is to coerce compliance" and "not to punish" (Ex. Q ¶ 1); it also contains findings of willfulness and present ability (id. at PDF pp. 37–40), which the debtor does not ask the Court to ignore. The FVP Parties' next exhibit, the March 23, 2026 order (Ex. R, at PDF pp. 45–48), records that the debtor "has provided Plaintiff's counsel with a completed Form 1.977" and represented that he had responded to the request for production, and it required further responses, records and a privilege log. It does not find that the contempt was purged, and the debtor does not contend that it does. The debtor's position is narrower: a coercive civil contempt in collection litigation with the movant, entered while he was unrepresented and followed by the production the movant's own exhibits record (Part III.C), is relevant to the Court's assessment but is not by itself the "fraud, dishonesty, incompetence, or gross mismanagement" that § 1104(a)(1) describes.

**C. Records and disclosure.** The Motion states that the debtor "produced no records" of his business ownership, entity interests or transfers. The FVP Parties' own production index (Docket No. 62-4, Ex. O, at PDF p. 22) lists 65 bank and card statements, three federal tax returns (2021–2023) and a declaration produced in the Florida proceedings on March 9, 2026; the deficiency chart that follows it (id. at PDF pp. 23–25) is the FVP Parties' own list of what they contend was still missing. The debtor does not contend that these documents establish complete compliance or a finding that the contempt was purged; he asks the Court to assess the actual production, the specific deficiencies the FVP Parties identify, and the debtor's present status and proposed schedule for the items that remain (Part VI), rather than treat the record as containing no production. In this case, the debtor filed 56 pages of schedules and statements with narrative attachments (Docket No. 48), filed the Rule 2015.3 periodic report on the entities in which he holds a controlling interest (Docket No. 38), produced bank statements and his 2022 and 2023 tax returns to the United States Trustee at the initial debtor interview on July 10, 2026, and was examined by the FVP Parties' counsel at the meeting of creditors on July 31, 2026. As to the receivables and claims the Motion describes from the debtor's deposition (Docket No. 63 at 5–6), the debtor does not represent that each is presently reflected in his schedules; he has not completed the comparison of his schedules against his own records that would let him say so, and he says that plainly rather than guess. He will identify in the supplemental opposition where each item appears and will file amendments where an item does not appear, on the schedule proposed in Part VI.

**D. Tax returns.** The debtor's 2024 and 2025 returns remain unfiled. He has not supplied a reliable completion date and asks the Court to set deadlines and require a prompt status report. He does not contend that these outstanding tax obligations are irrelevant or excused. The debtor states the present status of the administrative items the United States Trustee identified plainly in Certification ¶ 12: **none of them is complete.** He addresses them in Part VI.

**E. Post-petition conduct.** The post-petition conduct the Motion and its supporting declarations identify is the debtor's e-mails of August 21–22, 2026 to the FVP Parties' Florida counsel (Docket Nos. 83, 84). Those e-mails should not have been sent. The debtor will keep

communications with opposing parties and counsel professional and confined to necessary case matters, including scheduling, service, required conferrals and discovery, and will not use correspondence to make personal accusations. E-mails of that kind, by an unrepresented individual debtor to an adversary's counsel, are a reason for the debtor to have counsel — which is what he is asking for time to obtain. The post-petition record also includes the administrative items the United States Trustee identified on August 6, 2026 — proof of a debtor-in-possession account and closure of prepetition accounts, clarity on income and expenses, the operating report, and possible undisclosed assets (Aug. 6 Tr. 8:11–25). The debtor does not contend that the only post-petition question is the e-mails; he addresses each of those items, with its present status, in Part VI.

**F. The amount of the claim.** The Motion describes the judgment as "wholly unpaid" (Docket No. 63 at 3). The FVP Parties' own filings acknowledge $3,209,311.15 in credits (Docket No. 52-1 ¶¶ 3–5 and Ex. A; Broward Filing No. 237809034 (Dec. 16, 2025)), and their counsel told the Court on July 23 that the amount now owed is "around five" million (July 23 Tr. 20:7–10). Claim No. 5-1 ($5,971,306.34) attaches the judgment but no itemization of interest or charges. The debtor will address the allowed amount of Claim No. 5-1 by a separate objection under Fed. R. Bankr. P. 3007 and D.N.J. LBR 3007-1 on ordinary notice. He does not ask the Court to decide it here, and he does not contend that the dispute affects the FVP Parties' standing to bring the Motion.

**G. The transfers.** The Motion says the debtor "did not stop moving assets once the Florida court flagged the entities — he accelerated" (Docket No. 63 at 10). The transfers it identifies by date are a transfer to JL Special Investments, LLC in April 2025, a transfer to Teton Life, LLC on August 13, 2025 (both disclosed, and marked disputed, on the debtor's Statement of Financial Affairs, Docket No. 48), an assignment by Spin Capital, LLC to Teton Life, LLC that the Motion itself places "[e]arlier" (id. at 4), and two $100,000 transfers to the debtor's personal account (id. at 4, 10). Each precedes the October 2025 verdict, and each precedes by many months the May 15 and June 11, 2026 orders that the Motion describes as the Florida court's "flag." The Motion attributes both $100,000 transfers to "a Spin Capital account" (Docket No. 63 at 4, 10); the FVP Parties' own bank-statement analysis identifies two different entities and two different accounts — $100,000 on December 12, 2024 from an account of Spin Capital, LLC ending 0029, and $100,000 on August 15, 2025 from an account of JL Special Investments, LLC ending 9161 (Docket No. 62-3, Ex. L, at PDF pp. 169–170). The debtor does not ask the Court to find on this record that any transfer was proper. The April 2025 and August 13, 2025 instruments are identified in the debtor's Statement of Financial Affairs. The two $100,000 payments are reflected in the FVP Parties' own submitted bank analysis and in the underlying statements. **That is not a representation that each payment was separately itemized or correctly characterized on the Statement of Financial Affairs.** The debtor is reviewing the source, purpose and treatment of those payments and what additional disclosure is required, and will make any correction the review shows is necessary. He does not ask the Court to determine

their propriety on this preliminary record, and he has proposed that an independent examiner review them (Part VI.G).

**H. The New York application, filed after the deadline.** On September 14, 2026 the FVP Parties filed an order to show cause in *Teton Life LLC, as Assignee of the Rights of Spin Capital, LLC v. Golden Foothill Insurance Services, LLC*, Index No. 650582/2022 (Sup. Ct. N.Y. County, Commercial Division), an action in which the debtor has been named as a party (Certification ¶ 13 and Exhibit C). They seek leave to intervene and an order directing the temporary receiver appointed in that action to segregate and hold, rather than disburse, funds they describe as attributable to the debtor's interest, "pending further order of this Court and/or pending a determination by the United States Bankruptcy Court for the District of New Jersey . . . as to whether the funds at issue in this action constitute property of the bankruptcy estate of Lubin" (Ex. C at 2). The debtor asks the Court to draw only three things from that application, and no more. First, the FVP Parties ask that the funds be held pending a determination — by the New York court "and/or" by this Court, in the application's own words — of whether the funds are property of this estate. The debtor does not read that as ceding the question to this Court exclusively, does not ask the Court to answer it now, and takes no position here on the answer. He draws from it only that **the composition of this estate includes at least one genuinely open question**, which is a reason for the independent review Part VI.G describes and a reason for the debtor to be represented when that question is reached. He acknowledges that an unresolved ownership question can also be argued to support independent administration; he asks the Court to weigh both readings. Second, the relief the FVP Parties ask for is preservation — that the funds be held rather than paid out. Exhibit C is the proposed order submitted with their application; the judge, hearing, response and reply dates are blank and it is unsigned. The debtor does not contend that the application establishes that any restraint was entered, that any funds are in fact being held, that the requested reimbursement was allowed or paid, or that no risk exists. He notes only that preservation, rather than payment out, is what the FVP Parties themselves asked the New York court for. Third, the application is a development after September 10 that bears on the request for a short adjournment: it concerns assets in which the estate may have an interest, it arises in an action in which the debtor is a party without counsel, and it is the kind of matter an unrepresented debtor should not be handling alone. The debtor reserves all rights with respect to that application and asserts none of them here.

## IV. APPOINTMENT IS NOT IN THE INTERESTS OF CREDITORS UNDER § 1104(a)(2)

Under § 1104(a)(2) the Court weighs, among other things, the benefit a trustee would bring against the cost, the debtor's performance and prospects, and the confidence of creditors. The debtor submits that on the present record the balance does not favor appointment, for five reasons that he asks the Court to test against the specific facts rather than as categorical rules.

First, as to the specific assets the Motion is concerned with, what the record shows is that two noticed sales were postponed at the time they were noticed. The FVP Parties noticed a

private sale of the debtor's transferable membership interests in Spin Capital, LLC and Teton Funding, LLC for June 26, 2026, and a private sale of his interest in JL Special Investments, LLC for July 24, 2026. They postponed both. Their notices state that each postponement was made "in light of the Suggestion of Bankruptcy and Notice of Automatic Stay filed by Defendant Avrumi 'Josh' Lubin on June 25, 2026," that under 11 U.S.C. § 362(a) the petition operates as a stay of "any act to obtain possession of or to exercise control over property of the bankruptcy estate," and that the sales "shall not proceed unless and until the automatic stay is terminated, modified, annulled, or otherwise lifted by order of the United States Bankruptcy Court" or is no longer applicable. Each notice also expressly reserves the FVP Parties' rights, including their right to seek relief from the stay and their remedies against non-debtors and property not subject to the stay. (Exhibit D, Broward Filing Nos. 251241950 (June 25, 2026) and 253157341 (July 23, 2026).) The debtor offers these for a single limited purpose: the FVP Parties postponed rather than completed those sales and said in writing why. **He does not contend that a postponement in June and July establishes the present status of any asset, that nothing is at risk, that no later enforcement step has occurred, or that the estate needs no independent oversight**, and he makes no contention about the FVP Parties' conduct, which has been to postpone and reserve their rights. He also does not ask the Court to treat the cost of a further short delay as no cost at all; delay burdens the administration of an estate even where there is no operating business, and that is why the request is for three weeks rather than a longer period.

Second, the estate has no operating business; its assets are the debtor's membership interests in limited liability companies and litigation claims, which the Court noted on July 23, 2026 are scheduled with a face amount "in excess of $50 million" against a judgment the FVP Parties' counsel then described as "around five" million (July 23, 2026 Hr'g Tr. 19:21–20:10), and a residential lease. The debtor recognizes that the absence of an operating business is not a safe harbor — litigation, claims review and competing ownership assertions can require independent management — but it frames the comparison: the question is whether a trustee, at the cost described below, would prosecute and resolve those claims better than the debtor with counsel, under the conditions in Part VI and, if the Court directs, with an examiner's independent report.

Third, cost is a real constraint in this estate. The debtor has been unable to fund a retainer for his own counsel, and he does not represent to the Court that the estate holds unencumbered cash available to fund a trustee; he has not completed the account reconciliation that would let him state balances with confidence. A Chapter 11 trustee's compensation under 11 U.S.C. § 326(a) and the fees of the trustee's professionals would be administrative expenses allowed under § 330 and § 503(b), subject to the Court's approval, with a corresponding effect on any recovery by creditors. On July 23, 2026 the Court observed, in giving the debtor time to retain counsel, that it did not then think it appropriate "to incur the administrative expense of having a Chapter 11 Trustee come on board" (Tr. 44:19–45:4). Those observations preceded the Trustee Motion and the August record, and the debtor cites them only for the cost point. The debtor does not tell the Court that a trustee's cost is purely additive. A trustee would assume some of the estate

administration the debtor is presently responsible for, and the debtor would still require counsel of his own for the adversary proceeding and the Florida and New York matters. Both alternatives carry professional and administrative costs, and a reliable comparison would require scope, staffing and fee information the debtor does not have. He does not suggest that cost alone defeats a motion under § 1104(a)(2), that an examiner is necessarily cheaper in every case, or that an examiner can substitute for a trustee where the Court finds cause under § 1104(a)(1) — it cannot. He asks only that, if the Court is weighing the two, it weigh the work, the independence and the expected benefit each would provide, and that any examiner's budget and scope be fixed at appointment under §§ 1104(c) and 1106(b).

Fourth, the debtor is not aware of any creditor other than the FVP Parties having joined the Motion. The United States Trustee reported that no unsecured creditor responded to its committee solicitation (Docket No. 74) and stated on August 6 that it "will not join in any of the creditor motions for an 11 Trustee, at this time" while "still making an independent assessment" (Aug. 6 Tr. 9:1–6). The debtor does not describe either statement as approval of his performance. The FVP Parties are a single judgment creditor whose interest is in collection; a trustee would owe duties to the estate, not to them, but the cost of the appointment would be borne by the estate they seek to collect from.

Fifth, the debtor's post-petition compliance has been incomplete in the respects the United States Trustee identified, and real in others: schedules (Docket No. 48), the Rule 2015.3 report (Docket No. 38), the amendment noticed to added creditors (Docket Nos. 50, 61), the initial debtor interview, the meeting of creditors, production to the United States Trustee, the court-ordered residence declaration (Docket No. 87-4), and attendance at hearings. The items that remain open are identified in Part VI with their present status and a proposed schedule.

## V. THE DEBTOR'S JULY 23 STATEMENTS

The FVP Parties will point to what the debtor said on July 23, 2026: asked whether he would stipulate to dismissal or conversion if he had not retained counsel by a date the Court imposed, he said he would agree to a trustee or an examiner, that he preferred an examiner, and that he wanted "some time to be able to get an attorney" (July 23 Tr. 27:7–19; 36:11–14). The debtor does not walk away from those words. What the Court did not do on July 23 was enter a stipulation providing for the appointment of a trustee automatically on a specified date. What it did do was give the debtor until the September 3 hearing to retain counsel (July 23 Tr. 40:7–12), and set September 3 for the residence declaration "to give him the opportunity to retain counsel" (Aug. 6 Tr. 11:20–25). The debtor thanked the Court for that time (July 23 Tr. 42:13–18) and he acknowledges that the Court has already afforded him time for this purpose. In the interval he received a proposed engagement letter from a New Jersey bankruptcy firm on August 29, 2026, but did not sign it and did not pay a retainer; on September 1, 2026 the firm advised that it would not be representing him. No appearance was ever entered. He does not describe that as counsel retained and then lost. Others declined for capacity or retainer reasons. (Certification ¶¶ 5–7.) He asks the Court to set a date now, rather than appoint a trustee on this record.

## VI. ALTERNATIVES SHORT OF A TRUSTEE

The debtor requests that the Court set prompt deadlines for the following outstanding items and require status reports. He has not established reliable completion dates and does not represent that a professional has been retained to complete these tasks. He asks for Court-set directions and dates rather than representing that an unconfirmed completion schedule is assured. He asks that these safeguards be considered before the appointment of a trustee:

(a) **Reporting and accounts.** A debtor-in-possession account opened, and the prepetition accounts addressed in accordance with applicable requirements, with the required proof to the United States Trustee, **by the date the Court sets, with a status report and disclosure of any obstacle to completion** — neither has been done, and the debtor says so plainly (Certification ¶¶ 12, 12B(a)); every outstanding monthly operating report filed **by the date the Court sets, with a status report and disclosure of any obstacle to completion**, and each subsequent report filed when due; no payment of any personal expense of the debtor from any entity account other than disclosed compensation or reimbursement reported in the operating reports; and any necessary supplement to the Rule 2015.3 report (Docket No. 38) filed by the date the Court sets. Section D of the May 15, 2026 Broward order — filed by the FVP Parties themselves as an exhibit to the Motion (Docket No. 62-3, Ex. F) — enjoins "Avrumi Lubin, the Subject LLCs, and all officers, managers, members, employees, agents, attorneys, and all persons and entities acting in concert with any of them," "pending further order of this Court," from "[o]pening new bank accounts or redirecting funds without prior written authorization from Judgment Creditors' counsel or further court order" (id. § D(b)). That provision names the debtor personally and is not limited on its face to the entities. The debtor asks for directions concerning compliance with the debtor-in-possession account requirements under the United States Trustee's Operating Guidelines and 11 U.S.C. § 345 in light of that provision. He does not contend that the Florida order excused these obligations or extended any reporting or opposition deadline, and he does not seek to vacate that order or obtain an injunction in this motion. He asks the Court for appropriate procedural directions so that the issue is resolved promptly, including, if the Court considers it appropriate, authorization to open and maintain a debtor-in-possession account for so long as he remains debtor in possession. He does not ask the Court to vacate or modify the Florida order, and he does not ask for any determination concerning the automatic stay in connection with this request.

(b) **Schedules.** Amended Schedules I and J, and any amendment to Schedule A/B required by the debtor's comparison of his schedules against his own records, filed **by the date the Court sets, with a status report and disclosure of any obstacle to completion**. The debtor has not completed that comparison and does not represent that it is nearly done (Certification ¶¶ 12, 12B(c)–(d)).

(c) **Insurance.** On July 17, 2026 the debtor sent the United States Trustee declarations for his personal premises-liability and personal umbrella policies together with the signed requests he had submitted to his agent asking that the United States Trustee be added as a notice party; that transmittal stated in terms that the declarations did not yet reflect the requested endorsements and that these personal policies did not resolve the separate question the United States Trustee had raised about Spin Capital's business or general liability coverage (Certification ¶ 12A(a)). The debtor does not represent that the requirement has been satisfied or that the submission was accepted as complete. He asks the Court to set a deadline for delivering the endorsement documents and providing the coverage information, or a written statement as to the remaining policy question, **with a status report and disclosure of any obstacle to completion**.

(d) **No transfers of estate property without an order.** No sale, transfer, encumbrance or other disposition of any membership interest or other property of the estate outside the ordinary course without an order of this Court on notice; and, to the extent of the debtor's own authority over any entity in which he holds an interest, no distribution or transfer to the debtor or for his benefit other than compensation or reimbursement disclosed and reported in the operating reports. The debtor does not represent that he alone controls every such entity, and he does not undertake on behalf of persons whose consent he does not hold.

(e) **Tax returns.** The debtor's 2024 and 2025 returns remain unfiled. He has not supplied a reliable completion date and asks the Court to set a deadline and require a prompt status report (Certification ¶ 12B(e)).

(f) **A date for counsel.** A date by which the debtor must file an application to retain counsel under 11 U.S.C. § 327, with a status report to the Court and the United States Trustee if he has not; the FVP Parties may then renew or press the Motion on notice, and the debtor will respond on the schedule the Court sets.

(g) **An examiner, in the alternative to a trustee.** See Part VI.G below. The debtor renews the request he made on July 23, 2026 (Tr. 23:11–13; 27:17–19), and he makes it understanding that an examiner's compensation and the fees of the examiner's professionals are administrative expenses of the estate, that this Court fixes the examiner's scope, duration and budget and may enlarge the examiner's duties under 11 U.S.C. § 1106(b), and that an examiner's report will address his own acts and conduct. (Certification ¶ 8.)

## VI.G. THE ALTERNATIVE REQUEST: AN EXAMINER UNDER § 1104(c)

**If the Court does not order the appointment of a trustee**, the debtor requests consideration of an independent examiner under 11 U.S.C. § 1104(c)(1), and under § 1104(c)(2) if the qualifying-debt requirements of that subsection are established on a claim-by-claim basis. The debtor does not contend that an examiner can substitute for a trustee where the Court finds

cause under § 1104(a), and he does not treat the amount asserted in any single claim as deciding the § 1104(c)(2) threshold. If further notice is required for that relief, he requests a prompt schedule rather than treating this late opposition as automatically sufficient notice. The debtor offered an examiner at the July 23, 2026 hearing ("you could appoint a court examiner today to investigate everything and I agree with it," Tr. 23:11–13; "I agree to appoint a court examiner today that can start investigating me. I have nothing to hide," Tr. 27:17–19) and renews that request now as a party in interest.

Section 1104(c) provides that "[i]f the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if — (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." 11 U.S.C. § 1104(c). The debtor requests an examiner under § 1104(c)(1) if the Court determines that the appointment is in the interests of creditors, any equity security holders and other interests of the estate, and under § 1104(c)(2) if the fixed, liquidated, unsecured, non-excluded qualifying-debt threshold is established. He does not ask the Court to assume that threshold from the face amount asserted in Claim No. 5-1 alone; whether that claim, or the claims register as a whole, satisfies every element of § 1104(c)(2) is for the Court to determine on a claim-by-claim analysis, and the debtor has a pending disagreement with the amount of Claim No. 5-1 that he will raise by separate objection. As to § 1104(c)(1), an examiner would give the Court, the United States Trustee and every creditor an independent account of the matters the Motion raises — the transfers, the entity records, the scheduled assets — at a cost and on a scope the Court controls, without displacing the debtor before the record is developed. The debtor recognizes that an examiner's compensation is an administrative expense and that the Court may expand the examiner's duties under § 1106(b). The Third Circuit has held that when § 1104(c)(2)'s condition is met and an examiner is requested by the United States Trustee or a party in interest, the appointment is mandatory, and that the court "retains broad discretion to direct the examiner's investigation," including its scope, degree, duration and cost. *In re FTX Trading Ltd.*, 91 F.4th 148 (3d Cir. 2024).

Section 1106(a)(3), made applicable to an examiner by § 1106(b), directs an investigation of "the acts, conduct, assets, liabilities, and financial condition of the debtor." The debtor proposes that the investigation be directed to each of the following, and he consents to every item of it: (i) the transfers described in the Motion, including the two $100,000 payments the FVP Parties describe, and the transfers identified in Attachment SOFA-18 to the debtor's schedules (Docket No. 48), with a comparison of the records to the filed disclosures; (ii) the books, records and financial condition of the entities in which the debtor holds an interest of 20%

or more, as reported under Fed. R. Bankr. P. 2015.3 at Docket No. 38; (iii) the existence, ownership and value of the litigation claims and other assets described in the debtor's schedules, including the claims and receiverships identified at Schedule A/B and the ownership of the claims and proceeds at issue in the New York action described in Part III.H — the very question the FVP Parties ask this Court to determine — so that the Court, the United States Trustee and creditors have an independent view of what this estate holds; (iv) the reconciliation of the claim asserted against the estate by the FVP Parties (Claim No. 5-1) — whether all payments, credits, recoveries and other consideration have been applied to the Florida judgment, and how post-judgment interest and charges are calculated — the amount of that claim being a liability of the debtor within the express terms of § 1106(a)(3) and a substantial asserted claim in this case. The debtor does not ask the examiner to assume that any error exists and makes no allegation concerning the conduct of the FVP Parties or their counsel; the FVP Parties have themselves acknowledged credits (Docket No. 52-1 ¶¶ 3–5 and Ex. A), and the debtor asks only that the figure be verified by someone independent of both sides. The debtor will present any objection to the allowed amount of that claim by a separate objection under Fed. R. Bankr. P. 3007 and D.N.J. LBR 3007-1 on ordinary notice, and he does not ask the Court to decide the allowed amount here; and (v) any other matter the Court directs; with a written report to the Court within a period the Court sets, and with the examiner's compensation subject to approval under 11 U.S.C. § 330 within a budget the Court fixes. The debtor will cooperate fully with the examiner, will produce the entity records within his possession or control, and will make himself available for examination. An examiner investigates and reports; the debtor remains in possession and continues to administer the estate subject to the conditions in Part VI. If the Court prefers that this request be presented by separate motion on notice, the debtor will file one on the schedule the Court sets.

## VII. CONCLUSION

The debtor is aware that at the August 6, 2026 hearing the Court identified venue as a threshold question it intended to reach first, observing that a dismissal for improper venue "would then moot all of the other issues" (Aug. 6, 2026 Hr'g Tr. 7:10–18). He does not ask the Court to decide venue here or to depart from the sequence the Court set; he asks only that, if the Court reaches this Motion, it have his response before it.

The debtor respectfully requests that the Court adjourn the hearing on the Motion for approximately three weeks, to a date selected by the Court, with the conditions in Part VI the Court considers appropriate, so that the debtor may retain counsel and the Motion may be decided on a complete record, and that the Court give the procedural directions requested in Part VI(a) concerning the debtor-in-possession account for so long as the debtor remains debtor in possession; or, if the Court is not prepared to adjourn, that the Court consider this opposition to the extent it permits and deny the Motion without prejudice; or, if the Court does not order the appointment of a trustee, that the Court consider the appointment of an independent examiner under 11 U.S.C. § 1104(c) with the scope, initial budget and reporting date proposed in Part

VI.G. The debtor does not consent to the appointment of a Chapter 11 trustee; he does consent to, and asks for, the appointment of an examiner.

Dated: September 15, 2026

________________________________

Avrumi Lubin, Debtor and Debtor in Possession, pro se