UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2026 SEP 23 P 4:02

FILED
JEANNE A. NAUGHTON, CLERK
SEP 23 2026
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY ________ DEPUTY

Caption in Compliance with D.N.J. LBR 9004-1(b)

Avrumi "Josh" Lubin, Pro Se
1460 Arboretum Parkway
Lakewood, New Jersey 08701
Telephone: 718-570-3796
Email: josh@tetonfunding.com
Debtor, appearing pro se

In re:

AVRUMI LUBIN a/k/a JOSH LUBIN,

Debtor.

| | |
|---|---|
| Case No.: | 26-17342 (EJO) |
| Chapter: | 11 |
| Judge: | Hon. Eamonn J. O'Hagan |
| Hearing Date: | Not scheduled |

# DEBTOR'S OBJECTION TO THE APPLICATIONS FOR ADMISSION PRO HAC VICE OF ALAN R. CRANE (DKT. 103) AND JASON S. RIGOLI (DKT. 102)

## PRELIMINARY STATEMENT

**1.** The Debtor, Avrumi "Josh" Lubin, appearing pro se, objects to the applications at Docket Nos. 102 and 103, which seek the admission pro hac vice of Jason S. Rigoli, Esq. and Alan R. Crane, Esq., both of GrayRobinson, P.A., to represent Nicole Testa Mehdipour, Chapter 7 Trustee of Excell Auto Group, Inc., in this case. Ashford–Schael LLC, which filed a notice of appearance for the Debtor on September 16, 2026 (Dkt. 98), has withdrawn its retention application (Dkt. 104) and has moved to withdraw as counsel (Dkt. 110); that motion is scheduled for hearing on September 24, 2026 (Dkt. 113). The Debtor files this objection himself, within the objection period.

**2.** The objection is narrow and it is about one firm. GrayRobinson, P.A. represented the Debtor personally. Its shareholder Scott J. Topolski signed the engagement agreement dated June 12, 2026, undertook in that agreement to "perform most of the legal work on this matter and serve as lead attorney," and on June 23, 2026 filed a Notice of Limited Appearance for the Debtor in Florida post-judgment proceedings concerning the Debtor's interests in Spin Capital, LLC and Teton Funding, LLC, together with a motion, signed by him on the Debtor's behalf, for reconsideration, vacatur and stay of the order governing those interests. GrayRobinson moved to withdraw on July 28, 2026, and the order relieving it was entered August 11, 2026. The Debtor is a former client, and RPC 1.9(a) governs.

**3.** GrayRobinson itself identified a potential conflict, in writing, before it arose. On July 11, 2026 the firm wrote to the Debtor that the arrival of Mr. Crane and Mr. Rigoli "creates potential conflict issues"; that "Rule 4-1.9 would apply to the lawyers from FurrCohen when they join GrayRobinson"; that "your consent would be required for GrayRobinson to represent another client, such as the Trustee, adverse to you in a matter 'substantially related' to the FVP Litigation"; and that "[i]t is possible that there may be some overlap of the issues in the FVP Litigation and the Adversary Proceeding, in that you are a defendant in each and they each may involve attempts to collect on judgments against you and your related entities." (Exhibits C, C-2.)

**4.** The firm asked the Debtor to sign a separate waiver directed at that conflict. On July 12, 2026 he declined in writing: "I do not consent to the requested waiver. No communication, silence, continued cooperation, or other conduct by me should be interpreted as consent on behalf of me or any entity client." (Exhibit D.) That proposed consent was never executed.

**5.** The Debtor states the waiver question completely. The June 12, 2026 engagement agreement he signed contains a limited advance waiver, by which he agreed that GrayRobinson's acceptance of that engagement would not preclude it from later representing

clients adverse to him "with respect to matters not substantially related" to it — and which does not apply where, as a result of the representation, the firm "obtained proprietary or other confidential information of a non-public nature" usable to his material disadvantage. (Exhibit A.) The Debtor contends that the adverse work at issue here falls outside that provision. Whether it does, and whether any screening exception applies, are questions he asks this Court to decide.

**6.** RPC 1.9(a) prohibits the representation absent informed consent confirmed in writing, and RPC 1.10(a) imputes that prohibition to the firm. The Debtor asks the Court to decide these questions now, before the applicants appear in his case.

**7.** The Debtor makes no accusation against any individual attorney and does not question the competence or character of either applicant. He does not ask this Court to review or disturb any order of the United States Bankruptcy Court for the Southern District of Florida.

**STANDING**

**8.** The Debtor is a party in interest under 11 U.S.C. § 1109(b). D.N.J. LBR 9010-1(b)(1) independently identifies the debtor as a party entitled to notice of an application for admission pro hac vice.

**9.** More directly, the Debtor is the former client whose interests RPC 1.9 protects. That right is personal to him. The Debtor asserts his own interests as a former client of GrayRobinson, and takes no position in this objection on the ownership of any privilege belonging to the estate or to any entity.

## RELEVANT FACTS

**10.** The facts below are set out in the Debtor's accompanying Declaration and supported by the exhibits identified in the Exhibit Index below. Several come from the applicants' own sworn filing in the Florida case, the Declaration of Alan R. Crane dated September 15, 2026 (Exhibit F).

**11. The engagement.** On June 12, 2026 GrayRobinson, P.A., by Scott J. Topolski, issued a written engagement agreement naming as clients "Teton, Life, LLC's, JL Special Investments, LLC's, Teton Funding, LLC's and Avrumi 'Josh' Lubins'" for the post-judgment proceedings in *FVP Opportunity Fund, III, LP v. Avrumi "Josh" Lubin, et al.*, Case No. CACE-22-005125 (Fla. 17th Jud. Cir., Broward County), "including any potential appellate work as to same." (Exhibit A.)

**12. Mr. Topolski's role.** In that same agreement Mr. Topolski wrote: "I will perform most of the legal work on this matter and serve as lead attorney." (Exhibit A.)

**13. The appearance.** On June 23, 2026 Mr. Topolski filed a Notice of Limited Appearance for the Debtor (Filing # 251032035), appearing "solely with respect to: (1) the May 15, 2026 Order Imposing Charging Orders, Requiring Turnover of Financial Information, Enjoining Transfers, Authorizing Foreclosure of Transferable Interests, and Establishing Procedures for Private or Judicial Sale; and (2) any related proceedings, motions, hearings, enforcement, or appellate matters concerning charging orders, foreclosure of transferable interests, private or judicial sale procedures, or distribution redirection affecting Lubin's interests in Spin Capital, LLC (a New Jersey LLC) and Teton Funding, LLC (a Delaware LLC)." He signed it as "Limited Appearance Counsel for Avrumi 'Josh' Lubin." (Exhibit B.) Mr. Crane attached this document to his declaration as its Exhibit A. (Exhibit F, ¶ 5(g).)

**14. What the firm filed under that appearance.** The same submission carried a motion, filed on the Debtor's behalf and signed by Mr. Topolski, for reconsideration, vacatur

and stay of the May 15, 2026 Order described below. The motion occupies the first eight pages of Exhibit B-2; the remaining pages are the documents filed with it, including a copy of that Order. (Exhibit B-2.) Mr. Crane attached that motion to his declaration and stated that "[t]he nature and subject matter of GR's limited representation of Lubin is set forth in the motion filed on Lubin's behalf." (Exhibit F, ¶ 5(h).)

15. **The subject matter.** The May 15, 2026 Order (Exhibit E) required the Debtor, as to Spin Capital, LLC and Teton Funding, LLC, to turn over upon receipt their "financial statements, annual statements, notices of distributions, IRS Form K-1, federal or state tax returns, capital account statements, banking information, QuickBooks records, balance sheets, profit and loss statements, loan schedules, and accounts receivable records," and within ten days to produce the entities' operating agreements, membership ledgers and certificates, organizational documents, and records reflecting ownership interests. It also enjoined transfers and established procedures for foreclosure and sale of the Debtor's transferable interests.

16. **The advance waiver in the engagement.** The June 12, 2026 engagement agreement provides that GrayRobinson's acceptance of the engagement "will preclude us from accepting future representations adverse to you which involve matters substantially related to the work we perform in the course of this engagement," while the Debtor agreed that it would not preclude the firm from representing others adverse to him "with respect to matters not substantially related" to it. It further provides that his "consent to, and waiver of, such representation shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a non-public nature, that, if known to such other client, could be used in any such other matter by such client to a material or potential material disadvantage to you." (Exhibit A.)

17. **The July 11 request and the July 12 refusal.** On July 11, 2026 GrayRobinson transmitted a separate proposed conflict waiver addressed to the Trustee representation, with

the letter quoted above. (Exhibits C, C-2.) The acknowledgment it asked the Debtor to sign would have consented "to GrayRobinson, P.A.'s representation of Nicole Testa Mehdipour, as Chapter 7 Trustee in the Adversary Proceeding and related matters, as described above" and would have waived "any claim of conflict arising from such representation now and in the future." (Exhibit C-2.) On July 12, 2026 the Debtor declined to give that consent in writing. (Exhibit D.) His reply refers to "the firm's July 1, 2026 conflict-waiver request"; the request was transmitted on July 11, 2026, and the letter's date line bears a tracked revision from July 10 to July 11. (Exhibits C, C-2.) Later the same morning he wrote that his reply addressed "the waiver as drafted" and that "[t]here may be a narrower, limited waiver I could sign, with appropriate screening and carve-outs." (Exhibit G, attachment G-4.) No narrower waiver was agreed or executed.

**18. The move and the withdrawal.** Mr. Crane's declaration states that he, Mr. Rigoli and other attorneys of Furr and Cohen, P.A. "started with GR on August 3, 2026"; that "[p]rior to August 3, 2026, the former attorneys at Furr and Cohen, P.A. tried the adversary proceeding against Lubin, Spin Capital LLC, and others"; that GrayRobinson moved to withdraw on July 28, 2026; and that the order granting withdrawal was entered August 11, 2026. (Exhibit F, ¶¶ 5(j), 5(l).) Mr. Topolski did not change firms. He was and remains a GrayRobinson shareholder.

**19. What else the July 11 letter says.** The Debtor sets out the letter's other statements so that the Court has them. The letter defines the "Adversary Proceeding" as *Mehdipour v. Hi Bar Capital, LLC, et al.*, Adv. Pro. No. 23-01132-EPK (Bankr. S.D. Fla.). It describes the representation as "relatively brief and limited." It states that its author had "no involvement with the Adversary Proceeding" and had "not gained any confidential information in the course of my brief representation of you that, to the best of my knowledge, would be material to any issue in the Adversary Proceeding." It states that the Debtor and his entities "are no longer clients of the Firm," and that its author "would not be involved in any such case."

(Exhibit C-2.) The Debtor disputed at the time that the representation had ended; his July 12 reply states: "I do not agree that any of those representations has ended." (Exhibit D.) As the preceding paragraph shows, the applicants joined the firm on August 3, 2026, before the order permitting withdrawal was entered on August 11, 2026. The Debtor notes that chronology for completeness. He proceeds in this objection as a former client under RPC 1.9 and does not ask the Court to decide any question under RPC 1.7.

**20. The present adversity.** Trustee Mehdipour, through the applicants' firm, is prosecuting *Mehdipour v. Hi Bar Capital, LLC, et al.*, Adv. Pro. No. 23-01132-EPK (Bankr. S.D. Fla.), in which both the Debtor and Spin Capital, LLC are defendants. The Trustee has appeared in this case through New Jersey local counsel (Dkt. 89) and now seeks to bring GrayRobinson attorneys in with her.

**21. The adverse work the applicants describe.** At the September 17, 2026 hearing in the Florida case, Mr. Crane described GrayRobinson's prior work for the Debtor as concerning "a charging order, and requiring of turnover of financial information and enjoining transfers of assets and matters related to a judicial sale, assets owned by either Mr. Lubin or his entities." Two pages later he stated that there is no conflict "even if we are employed and filed on behalf of the Trustee a 727 or 523 proceeding." (Exhibit H, Tr. 5:19–6:2, 7:15–20.)

**22. That proceeding has now been filed in this case.** On September 21, 2026 the Trustee, through the same New Jersey local counsel who filed these applications, commenced an adversary proceeding against the Debtor in this Court: *Complaint to Determine Dischargeability and Objecting to Discharge*, seeking relief under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) and objecting to the Debtor's discharge. (Dkt. 109; Exhibit I.) The complaint pleads four counts: non-dischargeability under 11 U.S.C. § 523(a)(6) (Count 1) and § 523(a)(2)(A) (Count 2), and objections to discharge under 11 U.S.C. § 727(a)(4) (Count 3) and § 727(a)(3) (Count 4). Its introduction also refers to § 727(a)(6)(A), for which no separate count is

pleaded. The Debtor disputes the allegations and describes them here only to identify the issues that proceeding puts in contest, not to concede their truth or sufficiency.

**23.** The Debtor notes what the record does not yet establish. The docket entry for the complaint reflects Adversary Proceeding No. 26-01435. The summons filed with the complaint (Dkt. 109-1), however, bears no adversary proceeding number, no date of issuance, no date and time for the pretrial conference, and no signature of a deputy clerk. The Debtor therefore does not represent that a summons has been issued or that any response period has begun, and states no deadline arising from that proceeding.

**24. Written notice to the applicants before they applied here.** On the evening of September 16, 2026 the Debtor wrote to GrayRobinson, copying Mr. Crane, Mr. Rigoli, Heidi A. Feinman of the Office of the United States Trustee for the Southern District of Florida, and Rachel Wolf of the Office of the United States Trustee for this District. He attached five documents, including the firm's July 11 e-mail transmitting the waiver request, its July 11 waiver letter, and his July 12 refusal, and stated: "im demanding you notify the court in regards to the communications attached and conflict waiver (I refused to sign and consents your firm was representing me on a related case). I am also demanding you remove yourself from representing the Excell Auto Trustee or I will be seeking a motion to disqualify you and Jason." (Exhibit G.) The applications at Dkt. 102 and 103 were filed two days later, on September 18, 2026.

## ARGUMENT

**A. An attorney admitted pro hac vice in this Court is bound by the New Jersey Rules of Professional Conduct, and the Debtor accepts the burden the objection carries.**

**25.** D.N.J. LBR 9010-1(b)(6) provides that "[a]n attorney admitted pro hac vice is within the disciplinary jurisdiction of the District Court and is bound by the Rules of Professional Conduct." D.N.J. L.Civ.R. 103.1(a) adopts the Rules of Professional Conduct as revised by the Supreme Court of New Jersey. Admission is committed to the Court's discretion. D.N.J. L.Civ.R. 101.1(c)(1).

**26.** The Debtor states the standard as he understands it and does not overstate it. Applications for admission pro hac vice are granted liberally and, in this District, "almost as a matter of course." *Kohlmayer v. Nat'l R.R. Passenger Corp.*, 124 F. Supp. 2d 877, 880–82 (D.N.J. 2000). The Debtor bears the burden of establishing the conflict he asserts, and disqualification is a drastic remedy. He asks the Court to hold him to that burden and to find it met on documents, most of which are the firm's own.

**27.** The Debtor notes one point about the governing threshold because the applicants may invoke a contrary standard. *Kohlmayer* considered the Eleventh Circuit's view that pro hac vice admission should not be denied "absent a showing of unethical conduct rising to a level that would justify disbarment," and stated: "This Court disagrees with that standard." *Id.* at 882 n.3. *Kohlmayer* arose from questions of civility and professional conduct rather than a former-client conflict, and the Debtor cites it only for the discretionary framework this District applies.

**B. GrayRobinson is disqualified as to the Debtor under RPC 1.9(a).**

**28.** RPC 1.9(a) provides: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing."

**29. Former client.** Established by the firm's signed engagement agreement, its filed appearance, and its own declaration. (Exhibits A, B, F.)

**30. The governing test.** In *City of Atlantic City v. Trupos*, 201 N.J. 447 (2010), the New Jersey Supreme Court held that matters are "substantially related" if "(1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation." *Id.* at 451–52, 466. The inquiry is fact-sensitive, and it is "the congruity of facts, and not merely similar legal theories," that governs. *Id.* at 466.

**31. The comparison, matter to matter.** GrayRobinson was retained, and Mr. Topolski appeared and moved, to contest an order that (i) required the Debtor to turn over the financial records of Spin Capital, LLC and Teton Funding, LLC, including their tax returns, capital account statements, banking information, balance sheets and loan schedules; (ii) required him to produce those entities' organizational documents, membership ledgers and records reflecting ownership interests; (iii) enjoined transfers; and (iv) established procedures for foreclosure and sale of his transferable interests in those entities. (Exhibits B, B-2, E.)

**32. The representation also included actual work, not only the scope of a challenged order.** Mr. Topolski appeared for the Debtor personally at the Debtor's June 15, 2026 deposition in aid of execution, stating his appearance as "Scott Topolski from GrayRobinson here on behalf of Mr. Lubin." (Exhibit K, June 15 Dep. 5:4–5.) The

examination addressed the Debtor's membership in and control of Spin Capital; whether he paid personal expenses from Spin; an alleged November 1, 2021 transfer of $100,000 from a Spin account to his personal account; and whether amounts he advanced to Spin were loans or investments and whether he expected repayment. (Id. 49:18–52:24.) Mr. Topolski participated through objections during that examination. (Id. 50:8, 51:11, 52:24.) He expressly distinguished his representation of the Debtor from any representation of Spin Capital: "I'm not representing Spin Capital." (Id. 60:23–24.) The reporter's read-and-sign letter for that transcript is addressed to Mr. Topolski as the Debtor's counsel. (Id. at 142.)

**33.** The Debtor identifies these passages for what they show and states their limits. They show the subjects on which his lawyer was present and acting for him under the engagement: his ownership of Spin, movements of money between Spin and himself, and the character of his advances to Spin. Those are the subjects the complaint's disclosure and records allegations now place in contest — his disclosure of assets and income (Dkt. 109 ¶ 73), the scheduling of his interests (*id.* ¶ 76), transfers of his interest in Spin (*id.* ¶ 77), and recorded information from which his financial condition might be ascertained (*id.* ¶ 79). The Debtor does not contend that the $100,000 transfer discussed at the deposition is a transaction alleged in the complaint; paragraph 77 identifies none, and a transfer of cash is not a transfer of an ownership interest. He does not contend that the transcript proves that any confidential advice was received or misused. He does not ask this Court to decide whether the transfer was proper or whether the objections were well taken. He offers the deposition as evidence of what the representation actually involved, which is the comparison *Trupos* requires.

**34.** The adversary complaint the Trustee filed in this case on September 21, 2026 puts the same subject matter in issue. It alleges that the Debtor "failed to properly disclose his assets, debts, or income in his petition, schedules, and statement of financial affairs"; that he "failed to properly schedule various transfers of his interest in companies such as Spin"; and, under 11 U.S.C. § 727(a)(3), that he "has failed to keep or is concealing recorded information

from which Debtor's financial condition or business transactions might be ascertained." (Dkt. 109 ¶¶ 73, 77, 79; Exhibit I.)

**35.** The Debtor submits that the overlap is specific rather than general, and he states its limits. The prior representation concerned compelled production of recorded financial information about Spin Capital and Teton Funding, records of his ownership interests in them, and enforcement against those interests by injunction, foreclosure and sale. The complaint places his ownership of Spin and alleged transfers of that interest in issue, together with recorded information from which his financial condition might be ascertained. The Debtor does not overstate the correspondence: the complaint does not name Teton Funding; paragraph 77 identifies no particular transfer date, recipient or transaction; and paragraph 79 pleads missing records upon information and belief. He disputes those allegations. He identifies them to show the subject matter now placed in contest, not to admit them.

**36. The second Trupos branch.** The Debtor contends that facts relevant to the prior representation — his ownership of Spin Capital, the records of that ownership, and the disposition of that interest — are relevant and material to a proceeding that places his ownership of Spin and alleged transfers of it in issue. Branch (2) does not require that any information be confidential. To the extent the Court concludes that a closer connection between a particular transaction on each side must be shown, the Debtor asks in the alternative that the applicants be directed to provide focused sworn clarification of the scope of the prior representation before admission, rather than that the objection be overruled on an undeveloped record.

**37. The Debtor does not rest on generalized familiarity.** He does not contend that GrayRobinson's knowledge of his finances in the abstract disqualifies it. He identifies the specific order, the entities and interests it addressed, the categories of records it compelled, and the counts now pending against him.

**38. The Debtor also anticipates the answer that his assets are disclosed in this case.** The protection RPC 1.9 affords is not confined to facts that remain secret. It extends to the lawyer's knowledge of the client's position, including the explanations and strategy developed in resisting the order that governed those interests. A schedule discloses what a debtor owns. It does not disclose what he told his lawyers, or what those lawyers concluded. The Debtor notes that the adequacy of his schedules is itself a contested allegation in the pending complaint.

**39. The firm's own assessment.** The applicants may rely on the July 11 letter's statements that the representation was "relatively brief and limited" and that its author had not gained confidential information "that, to the best of my knowledge, would be material to any issue in the Adversary Proceeding." (Exhibit C-2.) The Debtor offers three responses. First, the letter addressed the Florida adversary proceeding, as the letter defines that term; it was written more than two months before the complaint in this case was filed, and it does not address the disclosure and records allegations that complaint now makes. Second, the second branch of *Trupos* does not turn on confidential information; it asks whether facts relevant to the prior representation are relevant and material to the later one, and the brevity of a representation does not answer that question. Third, the statement is qualified by its own terms, and it is the firm's own assessment of a question that RPC 1.9(a) commits to the former client's informed consent and, absent consent, to the Court.

**40. Materially adverse.** The Trustee seeks recovery from the Debtor and from Spin Capital. Her interests and his are directly opposed.

**41. Informed consent confirmed in writing.** The Debtor did not give the consent the firm sought on July 11, 2026, and none was executed. The engagement agreement he signed on June 12, 2026 contains a limited advance waiver, but by its terms it reaches only matters "not substantially related" to that engagement and does not apply where the firm obtained

non-public confidential information usable to his material disadvantage. (Exhibit A.) The Debtor contends the present adverse work falls outside it. Whether the advance waiver reaches this representation, whether the matters are substantially related, and which screening provisions apply are questions the Debtor asks the Court to determine rather than assume.

**42. The burden on consent is not the Debtor's.** In this Circuit, "the burden of showing consent is on" the firm seeking to continue the adverse representation. *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984). Here the record is not merely silent. It contains a written refusal.

**43. Allocation of the remaining burdens.** Under *Trupos*, the Debtor bears the initial burden of production that GrayRobinson formerly represented him and that the present matter is materially adverse; the burden of going forward then shifts to the firm to show the matters are not substantially related; and "the burden of persuasion on all elements under RPC 1.9(a) remains with the moving party." 201 N.J. at 462–63. The Debtor accepts that allocation.

**C. The disqualification is imputed to the applicants under RPC 1.10(a), and the Debtor submits that no screening exception is available.**

**44.** RPC 1.10(a) provides that when lawyers are associated in a firm, none may knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9, unless the prohibition "is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." A former-client conflict under RPC 1.9 is not a personal-interest conflict. On its face, RPC 1.10(a) imputes Mr. Topolski's disqualification to every lawyer associated with GrayRobinson, including the applicants.

**45. Primary responsibility.** RPC 1.10(c)(1) permits screening only where "the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility." RPC 1.0(h) defines "primary responsibility" as "actual participation in the management and direction of the matter at the policy-making level or responsibility at the operational level as manifested by the continuous day-to-day responsibility for litigation or transaction decisions." The Debtor notes that the concluding sentence of RPC 1.9(b), which also addresses screening where a lawyer had sole or primary responsibility, is framed in terms of responsibility at a previous firm, and Mr. Topolski did not change firms. The Debtor therefore rests this point on RPC 1.10(c)(1) and offers the balance of this Point as conditional: it applies if the Court concludes that the lateral-lawyer provisions of RPC 1.10(c) are engaged at all.

**46.** On this record Mr. Topolski undertook in the engagement agreement to "perform most of the legal work on this matter and serve as lead attorney"; he signed that agreement; he signed and filed the Notice of Limited Appearance as limited appearance counsel for the Debtor; he signed and filed the motion that Mr. Crane's declaration identifies as setting forth the nature and subject matter of the representation; he appeared for the Debtor at the June 15, 2026 deposition and made objections on his behalf; and Mr. Crane's declaration identifies him as the one lawyer at the firm permitted access to the Debtor's materials. (Exhibits A, B, B-2, K; Exhibit F, ¶¶ 5(h), 5(n).) The Debtor submits that these facts support a finding of primary responsibility; he does not contend that the engagement clause alone conclusively establishes it, and he asks that the question be determined on the record the Court requires. Where the personally disqualified lawyer had primary responsibility, "[s]creening and notice alone would not be sufficient" to avoid imputation. *In re Gabapentin Patent Litig.*, 407 F. Supp. 2d 607, 611 (D.N.J. 2005).

**47. A further textual point, offered as argument and not as settled law.** RPC 1.10(c) is framed to apply "[w]hen a lawyer becomes associated with a firm," and to a matter

in which "that lawyer" is disqualified under RPC 1.9. The lawyers who became associated with GrayRobinson are Mr. Crane and Mr. Rigoli, and neither ever represented the Debtor. The personally disqualified lawyer is Mr. Topolski, who did not join the firm but was already there. The Debtor submits that the screening provision addresses the conflict a lateral lawyer carries in, and that it is not directed to a conflict the firm already holds. The Debtor states candidly that he has not located a New Jersey decision holding squarely that RPC 1.10(c) is unavailable for that reason alone, and he offers the point as a reading of the rule's text rather than as established authority.

**48. The screening conditions are not shown to be met.** If the Court reaches RPC 1.10(c), three requirements are unestablished on this record. RPC 1.10(c)(2) requires a timely screen and that the disqualified lawyer be apportioned no part of the fee. RPC 1.10(c)(3) requires that "written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule." RPC 1.10(f) requires a firm entering a screening arrangement to "establish appropriate written procedures," and RPC 1.0(l) defines a lawyer as "[s]creened" only through the timely adoption and enforcement of a written procedure under RPC 1.10(f).

**49. What the record contains.** The Debtor states this fully. GrayRobinson's July 11, 2026 letter told him that when the incoming lawyers arrived an "ethical wall" would be established in the firm's document management system prohibiting "every person in the firm (including me and the FurrCohen lawyers)" from accessing information concerning the representation, and that anyone who had worked on his matter "will be strictly prohibited from discussing that representation" with anyone working on an adverse matter. (Exhibit C-2.)

**50.** Mr. Crane's declaration describes two restrictions: that "GR has implemented an ethical wall, precluding Jason S. Rigoli, me, or any attorney other than Scott Topolski, Esq., from accessing any information related to Mr. Topolski's representation of Mr. Lubin," and

that GR "has implemented an ethical wall relating to the Excell Bankruptcy case, preventing access by anyone other than Jason S. Rigoli, Jonathan T. Crane, Yesenia Fernandez-Vivas, and me" — a restriction that excludes Mr. Topolski from the Excell file. (Exhibit F, ¶ 5(n).) At the September 17 hearing Mr. Crane also stated that "[w]e're not talking to the attorney or paralegal that represented Mr. Lubin." (Exhibit H, Tr. 6:22–7:4.) The declaration separately discloses that there is no agreement as to the sharing of compensation other than the firm's shareholder agreement. (Exhibit F, ¶ 10.)

**51. The Debtor does not assert that no screen exists.** He asks instead for focused information the record does not supply: the date on which each restriction was implemented; whether a written procedure of the kind contemplated by RPC 1.10(f) and RPC 1.0(l) exists and what it provides; whether the screened lawyer acknowledged the obligation; whether Mr. Topolski is apportioned any part of the fee from the adverse representation; and what notice, if any, was given to the Debtor under RPC 1.10(c)(3). The Debtor notes that the wall described in the July 11 letter would have excluded Mr. Topolski from his own former file, while the wall described in the declaration excludes everyone other than Mr. Topolski from it. He raises that difference as a matter on which the Court may wish to have sworn information, and not as an assertion of non-compliance.

**52.** RPC 1.10(d) provides that a disqualification prescribed by the rule "may be waived by the affected client under the conditions stated in RPC 1.7." The Debtor did not give the consent sought on July 11, 2026.

**D. The duty to a former client is one of loyalty as well as confidentiality, and it survives the end of the representation.**

**53.** The Third Circuit has held that "[t]he duty of loyalty does not always detach when the representation ends," and that the former-client rule "is not merely a matter of revealing or using the client's confidences and secrets, but of a duty of continuing loyalty to the client." *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984). RPC 1.9(a) and RPC 1.9(c) state separate prohibitions, and RPC 1.9 is strictly construed. *Dental Health Assocs. S. Jersey, P.A. v. RRI Gibbsboro, LLC*, 471 N.J. Super. 184, 193 (App. Div. 2022). The Debtor notes that *Dental Health* reversed an order of disqualification and remanded for a fact-sensitive analysis under *Trupos*; he cites it for the principles it states.

**54.** That the representation has ended is therefore not an answer to RPC 1.9(a). It is the circumstance in which the rule operates.

**E. The applicants' own sworn filing frames the question for this Court.**

**55.** On September 15, 2026 Mr. Crane filed in the Florida case a declaration under 28 U.S.C. § 1746 in support of the Trustee's employment application. (Exhibit F.)

**56.** The Debtor states plainly what that declaration does, because he does not wish to overstate it. It discloses Mr. Topolski's appearance for the Debtor and attaches it; it attaches the motion filed on his behalf; it discloses the withdrawal and the August 11 order; and it states that the applicants tried the adversary proceeding against the Debtor and Spin Capital. (Exhibit F, ¶¶ 5(f)–5(l).) **The Debtor does not contend that the representation was concealed.**

**57.** The declaration does not mention the July 11 waiver request, the Debtor's July 12 refusal, or that the separately requested July 11 consent was not executed. The Debtor notes the omission because consent is among the questions on which RPC 1.9(a) turns and because the firm's own letter had told him his consent would be required. He does not ask this Court to

find that the omission was made in bad faith and does not suggest it.

**58.** The declaration states that "the issues raised in the adversary proceeding against Lubin and Spin Capital, LLC are completely different from the post-judgment collection issues on which GR represented Lubin and Lubin's affiliates in the FVP Litigation." (Exhibit F, ¶ 5(m).) The firm's own July 11 letter had said the two matters "may involve attempts to collect on judgments against you and your related entities" and that there "may be some overlap of the issues." (Exhibit C-2.) The Debtor does not say which characterization the firm believes, and he does not contend that the July 11 letter conceded a disqualifying conflict; on its face it identified a potential one and asked for consent. He says relatedness is contested on the face of the firm's own documents, and that it is a question for the Court.

**F. The Debtor had no realistic opportunity to present a documented written objection in the Florida proceeding, and he has objected here at the first opportunity.**

**59.** The Debtor raises the timing of the Florida proceeding for one purpose. He does not contend that the Florida court erred in setting that hearing, and he does not ask this Court to disturb its order. He raises it because the applicants may characterize his participation there as a full opportunity to litigate the questions now before this Court.

**60.** The application was filed on Tuesday, September 15, 2026, captioned "Expedited Hearing Requested," stating that "the applicants are requesting a hearing within 7 days of the filing of this application," and giving as its exigency that the Trustee "is required to obtain stay relief as soon as possible in the Avrumi 'Josh' Lubin bankruptcy." (*In re Excell Auto Group, Inc.*, No. 22-12790-EPK, Dkt. 1184.) It was heard on Thursday, September 17, 2026 at 1:30 p.m. Under the local rules of the United States Bankruptcy Court for the Southern District of Florida, the ordinary deadline for a written objection fell two business days before the hearing — that is, on Tuesday, September 15, the day the application was filed.

**61.** The Debtor received the application by e-mail from the applicants' paralegal on the morning of Wednesday, September 16, 2026; the message bears a send time of 9:11 a.m. Eastern and attaches Docket Nos. 1184 and 1185. (Exhibit L.) That was approximately twenty-eight hours before the hearing. Registration for remote participation closed at 3:00 p.m. that afternoon.

**62.** The Debtor is self-represented in the Southern District of Florida and has no electronic filing account in that court. He was physically in New York. He appeared at the hearing by video and could not tender documents to the court in person.

**63.** The Debtor states two facts against himself. He spoke at the hearing and was heard. The transcript reflects no request by him for a continuance.

**64.** What the Debtor did, he did the same day. On the evening of September 16, 2026 he wrote to the applicants and to both United States Trustee offices, attaching five documents, including the waiver request, the waiver letter and his refusal, and asking that the conflict be disclosed to the court. (Exhibit G.) At 7:54 a.m. the next morning Ms. Feinman replied that the hearing was that day, encouraged him "to attend and raise your objections," and cautioned that the court might not be "so forgiving" if he did not appear and later filed a motion. At 8:02 a.m. he answered: "I registered yesterday for zoom and I only got notice of it yesterday and the hearing got scheduled the next day. I'm not in Florida so wasn't able to get papers filed. I intend on appearing at both hearings today." (*Id.*) He appeared that afternoon and told the court, "I just got notice of this yesterday." (Exhibit H, Tr. 6:17–18.)

**65.** As to the waiver correspondence, the Debtor states the record as he finds it. Counsel for Spin Capital, LLC mentioned the correspondence at the hearing and asked whether the court would like a copy. The reviewed transcript does not show the correspondence being marked or admitted, and the Debtor has not located it on the reviewed Florida docket. There was no express ruling excluding it. The correspondence is before this Court as Exhibits C, C-2

and D. The Debtor does not suggest that presenting additional documents here, by itself, determines what effect the Florida ruling has.

**66.** In this Court there has been no delay. The applications were filed September 18, 2026; the objection period runs to September 25, 2026; this objection is filed within it. The Debtor raised this conflict in writing with the applicants on September 16, 2026, two days before they applied here.

**G. The Debtor discloses the Florida ruling and states why he believes the questions here are different.**

**67.** The Debtor discloses the following rather than leave it to be raised. He objected orally in the Southern District of Florida to the Trustee's application at Dkt. 1184. The court overruled the objection from the bench on September 17, 2026, and on September 21, 2026 entered a written order approving the employment and providing that "[t]he objection raised by Avrumi 'Josh' Lubin is OVERRULED for the reasons set forth on the record." (Dkt. 1188; Exhibit J.) The Debtor attaches the relevant portion of the transcript as Exhibit H.

**68. This objection is not an appeal.** The Debtor does not ask this Court to review, reconsider, stay or disturb the Florida order, and he understands that this objection has no effect on it or on any deadline in that case.

**69. What the Florida court decided.** The court addressed the Trustee's employment of counsel for her own estate. It stated the standard it was applying as "whether the firm represents an interest adverse to the debtor" under 11 U.S.C. § 327(e), and stated that "[u]nder the Florida Bar rules it seems to me that they've done everything that they need to do so that there is not a conflict." (Exhibit H, Tr. 12:16–22.) The debtor in that case is Excell Auto Group, Inc.

**70. What this Court is asked to decide.** Whether two attorneys may be admitted to appear in this Debtor's own bankruptcy case, under D.N.J. LBR 9010-1 and the New Jersey Rules of Professional Conduct, consistent with duties owed to him as a former client. The reference party is different and the governing rules are different. In particular, New Jersey's RPC 1.10(c) conditions the availability of screening on requirements, including RPC 1.10(c)(1), that the Debtor has not identified in the standard the Florida court stated it was applying. He does not contend that the Florida court considered no analogous issue.

**71. The Debtor addresses the contrary considerations.** He acknowledges that he appeared and was heard in Florida, that the court considered the prior representation, that counsel for another party mentioned the requested and unaccepted waiver, and that the court addressed the asserted wall and the disclosure of his assets in this case. He does not suggest the Florida court failed to consider the conflict. He submits that a ruling on a trustee's employment of her own counsel under the Bankruptcy Code, applying the Florida Rules, does not decide whether these applicants may appear adverse to their former client in his own case under New Jersey's rules, and that the question of what effect that ruling has is for this Court.

**72. One further exchange, offered as record and not as a ruling.** When the Debtor stated at the hearing that he was reserving his rights to seek disqualification, the court responded, "Whatever that means, that's fine. We're moving on." (Exhibit H, Tr. 15:21–16:2.) The Debtor does not characterize that exchange as a ruling preserving or reserving anything, and does not rely on it as determining the effect of the Florida order.

**RELIEF REQUESTED**

**73.** The Debtor asks the Court to resolve the questions under RPC 1.9 and RPC 1.10 raised here now, on this record, before the applicants appear. He does not rely on a promise of a later motion. If the Court concludes that these questions should instead be presented by a separate motion to disqualify, the Debtor respectfully requests that the Court set a prompt schedule for that motion and address how the applicants should participate in the interim.

**74.** The Debtor respectfully requests that the Court enter an order:

(a) denying the applications at Dkt. 102 and 103; or, in the alternative,

(b) deferring a ruling and directing the applicants to submit, under oath, (i) the date on which the screen described at Exhibit F, ¶ 5(n) was implemented; (ii) the written procedure contemplated by RPC 1.10(f) and RPC 1.0(l), if one exists; (iii) any acknowledgment of the screening obligation by the screened lawyer; (iv) a statement of how fees are apportioned with respect to the screened lawyer; and (v) any written notice given to the Debtor under RPC 1.10(c)(3); or, in the further alternative,

(c) admitting the applicants subject to protective conditions the Debtor proposes rather than asserts as rule requirements, including the submissions described in subparagraph (b), certifications of continued compliance at intervals the Court finds appropriate, and a limitation on the applicants' participation, in proceedings in this Court, in any matter concerning the May 15, 2026 Order or the Debtor's transferable interests in Spin Capital, LLC and Teton Funding, LLC as addressed in that Order;

(d) in any order of admission, identifying what the order does and does not decide, and in particular whether it resolves the questions raised in this objection;

(e) directing that any renewed application be served on the Debtor directly at the address on his petition, with a new objection period; and

(f) granting such other relief as the Court deems just.

**75. Proposed forms of order.** The Debtor submits two proposed forms of order. The first provides the relief described in subparagraph (b): it defers a ruling and directs the sworn submissions described there, together with a statement of the scope of the prior representation and of the work the applicants propose to perform. The second is a conditional alternative, submitted only for use if the Court determines to admit the applicants without deciding the questions raised in this objection. It identifies the questions under RPC 1.9 and RPC 1.10 that the admission would not decide, sets a schedule for a separate motion to disqualify, and addresses the applicants' participation in the interim. The Debtor's primary request remains that the Court decide those questions now.

**76. The Debtor seeks no monetary sanctions, damages, or disciplinary relief against any attorney.**

## RESERVATION OF RIGHTS

77. The Debtor reserves the right to move for disqualification should the applicants be admitted or should GrayRobinson otherwise appear in this case, and reserves all other rights. He does not suggest that this reservation, or any language in an order of admission, would foreclose any argument available to the applicants.

## CONCLUSION

**78.** GrayRobinson itself identified a potential conflict before it arose, wrote that the Debtor's consent would, in its view, be required, asked him to waive it, and was told no in writing. The firm now asks this Court to admit two of its attorneys to appear in the Debtor's own bankruptcy case. For the reasons stated, the Debtor respectfully asks the Court to deny the applications or, in the alternative, to resolve these questions before the applicants are admitted.

Dated: September 23, 2026

Respectfully submitted,

Avrumi "Josh" Lubin
Debtor, Pro Se
1460 Arboretum Parkway
Lakewood, New Jersey 08701
718-570-3796
josh@tetonfunding.com

**EXHIBIT INDEX**

**Exhibit A** — Engagement Agreement between GrayRobinson, P.A. and Teton Life, LLC, JL Special Investments, LLC, Teton Funding, LLC and Avrumi "Josh" Lubin, dated June 12, 2026 (5 pages), as signed by the Debtor and returned to GrayRobinson, P.A. by e-mail on June 12, 2026

**Exhibit B** — Notice of Limited Appearance for Avrumi Lubin, filed June 23, 2026 (Filing # 251032035), Case No. CACE-22-005125 (Fla. 17th Jud. Cir.) (docket copy)

**Exhibit B-2** — Motion for Reconsideration, Vacatur, and Stay of Order Imposing Charging Orders, Authorizing Foreclosure of Transferable Interests, and Establishing Sale Procedures; or, in the Alternative, for Relief Under Rule 1.540, filed June 23, 2026 (Filing # 251032035) and signed by Scott J. Topolski (docket copy, 19 pages: the motion at pages 1–8; the documents filed with it at pages 9–19, consisting of the Debtor's May 16, 2026 notice of appeal and the May 15, 2026 Order)

**Exhibit C** — E-mail from Scott J. Topolski to the Debtor, July 11, 2026, 8:28 p.m. Eastern, transmitting the proposed conflict waiver letter. Reproduction of the message header and complete message text; the signature block, confidentiality footer and earlier messages in the thread are omitted.

**Exhibit C-2** — Letter from GrayRobinson, P.A. (Scott J. Topolski) to the Debtor and his affiliated entities, "Re: Request for Conflict Waiver," dated July 11, 2026 (3 pages), received as a Word file attached to Exhibit C. Reproduced as a PDF rendering of that file as received, which displays the tracked revisions the file contains, including a revision of the date line from July 10 to July 11 (displayed as "July 110, 2026"). The acknowledgment is unsigned. It is not presented as a clean or executed instrument.

**Exhibit D** — E-mail from the Debtor to Scott J. Topolski, July 12, 2026, 4:14 a.m. Eastern, declining to consent. Reproduction of the message header and complete message text; earlier messages in the thread are omitted.

**Exhibit E** — Order Imposing Charging Orders, Requiring Turnover of Financial Information, Enjoining Transfers, Authorizing Foreclosure of Transferable Interests, and Establishing Procedures for Private or Judicial Sale, entered May 15, 2026 (Filing # 248282220), Case No. CACE-22-005125 (docket copy)

**Exhibit F** — Declaration of Alan R. Crane on Behalf of GrayRobinson, P.A., executed September 15, 2026, with its exhibits (*In re Excell Auto Group, Inc.*, No. 22-12790-EPK, Dkt. 1184-1) (docket copy)

**Exhibit G** — E-mail from the Debtor, sent the evening of September 16, 2026, to GrayRobinson, P.A., copied to Alan R. Crane, Jason S. Rigoli, and the Offices of the United States Trustee for the Southern District of Florida and the District of New Jersey. Exhibit G consists of (i) a reproduction of that e-mail as sent, prepared from the Debtor's Outlook record; (ii) the five attachments to that e-mail as sent (G-1 through G-5); and (iii) a printout from the Debtor's e-mail account of the September 16–17, 2026 thread that includes it, with the replies of September 17, 2026.

**Exhibit H** — Excerpt of the certified transcript of hearing, September 17, 2026 (*In re Excell Auto Group, Inc.*, No. 22-12790-EPK), pages 1 through 16, comprising the employment application segment, with the reporter's certification (page 31)

**Exhibit I** — Complaint to Determine Dischargeability and Objecting to Discharge, filed September 21, 2026 (Dkt. 109), with the summons filed with it (Dkt. 109-1)

**Exhibit J** — Order Approving Trustee's Expedited Application for Approval of Employment and Substitution of Counsel Effective as of August 3, 2026, entered September 21, 2026 (*In re Excell Auto Group, Inc.*, No. 22-12790-EPK, Dkt. 1188)

**Exhibit K** — Excerpt of the transcript of the deposition of Avrumi "Josh" Lubin taken June 15, 2026 in Case No. CACE-22-005125 (Fla. 17th Jud. Cir.): cover page, appearances (pp. 2–3), pp. 5, 49–53 and 60, the reporter's certificate (p. 141) and the read-and-sign letter (p. 142). Page 4, which contains personal identifying information, is omitted. This is an excerpt assembled by the Debtor from the reporter's transcript; it is not separately certified as an excerpt.

**Exhibit L** — E-mail from Yesenia Fernandez Vivas, Paralegal, GrayRobinson, P.A., to the Debtor, September 16, 2026, 9:11 a.m. Eastern, copied to Jason S. Rigoli and Alan R. Crane, serving Docket Nos. 1184 and 1185 in *In re Excell Auto Group, Inc.*, No. 22-12790-EPK (printout from the Debtor's e-mail account; the attached documents are not reproduced)