# EXHIBIT H

Excerpt of the certified transcript of hearing, September 17, 2026, *In re Excell Auto Group, Inc.*, No. 22-12790-EPK (Bankr. S.D. Fla.).

Pages 1 through 16 (the employment application segment) and the reporter's certification (page 31).

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

IN RE:

EXCELL AUTO GROUP, Case No. 22-12790-EPK
Chapter 7

Debtor.
_______________________________/

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for EXCELL Auto Group, Inc.,

Plaintiff,

vs. Adv. No.3-1132-EPK

HI BAR CAPITAL, LLC, et al.,

Defendants.
_______________________________/

ECF # 1184 (main case)
September 17, 2026

The above-entitled cause came on for hearing before the HONORABLE ERIC P. KIMBALL, Judge in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, Palm Beach County, Florida, on Thursday, September 17, 2026, commencing at or about 1:35 p.m., and the following proceedings were had:

Transcribed from a digital recording by:
Helayne Wills, Court Reporter

APPEARANCES:

OFFICE OF THE UNITED STATES TRUSTEE, by
HEIDI FEINMAN, ESQ., (via Zoom)
on behalf of the U.S. Trustee

GRAY ROBINSON, P.A., by
ALAN R. CRANE, ESQ.,
JASON S. RIGOLI, ESQ.,
on behalf of the Chapter 7 Trustee,
Nicole Testa Mehdipour

STEARNS WEAVER MILLER WEISSLER ALHADEFF &
SITTERSON, P.A., by
PATRICIA A. REDMOND, ESQ.,
on behalf of Yitzchok Weiss

LETO LAW FIRM, by
CHARLES P. GOURLIS, JR., ESQ.,
on behalf of Defendant Hi Bar Capital, LLC,
Yisroel Herbst and Mordechai Herbst

SANDLER LAW, P.A., by
THEODORE SANDLER, ESQ.,
on behalf of Franklin Capital Funding

ALSO PRESENT:
ECRO: Electronic Court Reporting Operator
JOSH LUBIN

ECRO: All rise. This Court is back in session. The Honorable Eric P. Kimball presiding.

THE COURT: Good afternoon. Thank you.

Ms. Leonard, you can call the case.

ECRO: Okay. The first case on the 1:30 docket is EXCELL Auto Group, Inc., Case Number 22-12790.

Mr. Rigoli.

MR. RIGOLI: Good afternoon, Your Honor. Jason Rigoli, proposed special counsel to the Trustee, Nicole Testa Mehdipour.

ECRO: Mr. Crane.

MR. CRANE: Good afternoon, Your Honor. Alan Crane, proposed special counsel for the Chapter 7 Trustee, Nicole Testa Mehdipour.

ECRO: Ms. Feinman.

MS. FEINMAN: Good afternoon, Your Honor. Heidi Feinman for the U.S. Trustee. I'm only appearing in the main case. Thank you.

ECRO: Mr. Gourlis.

MR. GOURLIS: Good afternoon, Your Honor. May it please the Court. Charlie Gourlis here on behalf of Hi Bar Capital LLC, Yisroel Herbst and Mordi Herbst.

ECRO: Mr. Lubin.

MR. LUBIN: Josh Lubin on behalf of myself pro se.

ECRO: Mr. Sandler.

MR. SANDLER: Good afternoon. Theodore Sandler on behalf of Franklin Capital Funding.

ECRO: And in the courtroom.

MR. CASEY: Stanley Casey on behalf of Spin Capital, LLC.

THE COURT: Thank you. So, we have -- the primary matter which was set for today was the application to employ. So I'd like to hear from Mr. Crane or Mr. Rigoli on that.

And I thought it might be wise to just simply set a status conference to give everybody the option to tell me what's going on, if anything, that I might need to know about. And also, there's a few issues I'd like to address in connection with re-briefing my extremely unusual order that I recently entered.

So, Mr. Crane or Mr. Rigoli, would you like to start with the engagement motion first?

MR. CRANE: This is Alan Crane. I will begin with that.

This is the expedited application to employ substitute special counsel as of August 3rd

of 2026, at ECF 1184. Your Honor, as you know, and I've explained this other times, the attorneys at Furr and Cohen recently all went to -- except for Marc Barmat -- went to GrayRobinson, and became employed at GrayRobinson. So we're seeking the same employment under the same terms as we were engaged under -- as being employed with GrayRobinson.

I have filed a declaration. My understanding is that the objection is from Mr. Lubin. I've received no objections from any creditor in the case. I don't believe that Ms. Feinman from the U.S. Trustee's office is objecting.

So under 11 U.S.C. 327(c), I don't believe that that section is applicable. Under 11 U.S.C. 327(e), which is what we're being employed by, I think that we are -- meet the qualifications for employment as special counsel.

I can preempt some of Mr. Lubin's arguments. Prior to our getting to GrayRobinson, GrayRobinson was involved for a limited purpose, involved in the filing of a motion for reconsideration in state court having to do with a charging order, and requiring of turnover of financial information and enjoining transfers of

assets and matters related to a judicial sale, assets owned by either Mr. Lubin or his entities.

The motion to withdraw was filed, I think, before we came on, and was granted shortly after we came on.

THE COURT: I don't understand what you just said. What motion to withdraw?

MR. CRANE: In the state court proceeding.

THE COURT: So your present firm is no longer representing anyone in that action?

MR. CRANE: That is correct.

THE COURT: And when was that engagement terminated, approximately?

MR. CRANE: In August. It's attached to my declaration.

THE COURT: Okay. That's fine. Next.

MR. LUBIN: I just got notice of this yesterday.

THE COURT: No, no. Mr. Lubin, it's not your turn yet. I promise I'll get to you.

Mr. Crane.

MR. CRANE: You know, we have -- to take precautions, any matter regarding Mr. Lubin has been walled off to only the attorney and the paralegal that was working there. EXCELL matters have been

walled off so that only me, Mr. Rigoli, one paralegal and the other Mr. Crane, have access to the EXCELL matters. We're not talking to the attorney or paralegal that represented Mr. Lubin.

The matters in which GrayRobinson represented Mr. Lubin were limited, and would have been required to be disclosed in Mr. Lubin's bankruptcy anyway, which has to do with his -- you know, the financials.

MR. LUBIN: It is disclosed in the bankruptcy.

THE COURT: Mr. Lubin, don't interrupt him. I promise I will let you talk.

Mr. Crane.

MR. CRANE: We believe that there's no conflict under the Florida Bar, ethics, conflicts, dealing with former clients under 4-1.9. This is not the same or related matter, even if we are employed and filed on behalf of the Trustee a 727 or 523 proceeding.

It is matters in which information which we had received long before Mr. Lubin retained GrayRobinson, and/or matters and information that a reasonable attorney would obtain during the course of Mr. Lubin's personal bankruptcy, and not

something other than that.

We believe that we meet the qualifications for employment as special counsel. There's no conflict of interest. We've taken whatever matters -- and I'm happy to answer any questions.

THE COURT: All right. Mr. Lubin.

MR. LUBIN: Yes. I retained GrayRobinson in July to represent me personally and some of my corporations, to vacate some orders that violates Florida and New Jersey law.

They come on the case. They filed a motion -- two motions to vacate, and at a point in time they were appellate counsel, a few people. And then I can't get through to anybody for a few weeks.

Then (unintelligible) reaches out to me. I think they know I have difficulty reading. They tried to convince me to sign a conflict waiver that has very, very -- it says that we're going to be representing Mr. Crane and Mr. Rigoli.

THE COURT: Hold on. Going to be representing Mr. Crane and Mr. Rigoli?

MR. LUBIN: They're going to be joining our firm, and there may be some issues that overlap it.

It's a related proceeding, so SEP and

EXCELL Auto, and they tried to get me to sign a paper that says they're going to be suing me for judgment collection work on behalf of EXCELL Auto's estate. I read that and this is not okay.

THE COURT: So you fired them?

MR. LUBIN: No, I didn't fire them. I had no communication with them. I kept on saying -- and I had to file bankruptcy.

THE COURT: And thereafter --

MR. LUBIN: Because they wanted --

THE COURT: Hold on.

And thereafter, GrayRobinson withdrew from the matter?

MR. LUBIN: Yeah. I filed bankruptcy.

There's a sale order that was illegal that they filed a motion to vacate, but they wouldn't set it for hearing. Otherwise, I would have -- all my assets would have been sold. So I had to file bankruptcy. (Unintelligible).

THE COURT: And they're no longer representing you?

MR. LUBIN: No.

THE COURT: And so can you -- I take it you have an objection to this engagement. Can you describe to me why?

MR. LUBIN: I have $12 million in a case in New York, and (unintelligible) illegally getting aggressive, illegally filed order to show cause to try to intervene.

The funds, all of a sudden there's a lot of information that I had to file bankruptcy. All of a sudden everything got jammed up, even things that were in other corporation names, not in my personal name. I'm going to turn it around through bankruptcy.

THE COURT: Okay. Thank you.

Ms. Feinman, would you like to comment on the engagement, and if you can, on the arguments that we're just hearing?

MS. FEINMAN: Your Honor, Heidi Feinman for the U.S. Trustee.

I did have a chance to review the application, and had a conversation with Mr. Crane. One of the questions that I asked, which was not disclosed in the affidavit, was, were there any funds that were outstanding? In other words, was GrayRobinson a creditor of Mr. Lubin?

Mr. Crane indicated to me that money was paid, and whatever was outstanding post-payment was written off. So as it stands today, they are not a

creditor in Mr. Lubin's individual case.

I don't have an issue with approving the employment as special counsel. I will note just for the record my understanding is that today in Mr. Lubin's Chapter 11 case, the Bankruptcy Court entered an order directing the appointment of a Chapter 11 Trustee. I just wanted you to be aware of that.

THE COURT: Okay.

MS. FEINMAN: That's it, Your Honor.

THE COURT: Very good. Thank you.

Would anybody else like to be heard? This is on the engagement motion.

MR. CASEY: Your Honor, Stanley Casey on behalf of Spin Capital.

THE COURT: Sure. Go ahead, Mr. Casey.

MR. CASEY: I just wanted to -- if you are interested, Mr. Lubin --

THE COURT: Would you mind going to the podium, for two reasons. First, you don't need to bend over. You should be comfortable. And second, it's a lot easier for everyone else to see you.

Thank you, Mr. Casey.

MR. CASEY: Sure. Just briefly, Mr. Lubin did share with me the communications between

GrayRobinson and himself concerning the waiver. I don't know if Your Honor would like a copy of the request for conflict of waiver.

THE COURT: Well, tell me why it's useful to me under this circumstance, where Mr. Lubin is not represented by GrayRobinson, the matter in which he was represented, apparently very briefly this summer, had to do with seeking relief in another court that would definitely be pulled into his bankruptcy.

There is a representation, which I will take at face value, that there's been an effort to wall off the lawyers who have been working on this case for several years at this point, so that there is no sharing of confidential information within their firm. Under the Florida Bar rules it seems to me that they've done everything that they need to do so that there is not a conflict.

Then the only other request -- excuse me -- the only other standard I would have is whether they -- this is under 327(e) -- whether the firm represents an interest adverse to the debtor. And that is why Ms. Feinman asked her question. We have an answer to that, which is that their claim is waived.

So the conflict waiver which was requested, but not agreed to, and the engagement has been terminated, why would it be useful to me?

MR. CASEY: Well, just that GrayRobinson says that there could be an issue in the future, to the extent prior counsel is defending collection of a judgment, and now, to the extent the Trustee is able to get a judgment --

THE COURT: It's a different judgment, correct?

MR. CASEY: Well, they are aware where his assets are, they know the ins and outs of --

THE COURT: He's in a Chapter 11 case. Everybody is aware where his assets are. If they're not, then his discharge will be denied.

MR. CASEY: Sure.

THE COURT: You know, there's no secret about his assets anymore. So I don't think that's going to be the --

MR. LUBIN: Let me speak, Your Honor.

THE COURT: Not yet, Mr. Lubin.

Are you representing Mr. Lubin?

MR. CASEY: No, sir.

THE COURT: Okay. I'll come back to you, Mr. Lubin.

MR. CASEY: And lastly, just that GrayRobinson says in the waiver request that they would be required -- the GrayRobinson -- consent would be required for GrayRobinson to represent another client, such as the Trustee.

THE COURT: Well, simultaneous representation of parties who are adverse, yes?

MR. CASEY: Yes, Judge.

THE COURT: There would definitely be -- Mr. Lubin, do not interrupt again.

You need to get a waiver if you are simultaneously representing clients who are adverse to each other in other matters. That's why they've asked for that waiver.

There is no ongoing representation. So the only possible issue here is confidential material. They've walled off, and if the answer is the confidential material is the location of Mr. Lubin's assets, if he has not disclosed the location of all his assets in his pending bankruptcy case filed voluntarily, he has a big problem, much bigger than this.

Mr. Lubin, yes.

MR. LUBIN: Your Honor, they specifically mentioned overlapping claims with SEP. If you look,

it appears that the Trustee is in cahoots with SEP, which is the person coming after me.

Based on what family says, they said that I would need to sign this for them to -- for these attorneys to represent in the future. They said this is an overlapping proceeding, overlapping issues involving SEP and EXCELL Auto.

THE COURT: Which no longer exists, since they're not representing you anymore. Did I miss anything? They're not representing you anymore?

MR. LUBIN: There's some conflicts.

THE COURT: Thank you, Mr. Lubin.

Mr. Crane, have I missed anything?

MR. CRANE: No, Your Honor.

THE COURT: Okay. The application is approved. The objection is overruled for the reasons I've stated during the hearing.

Let's go back to status conference.

MR. LUBIN: Judge --

THE COURT: Yes, Mr. Lubin.

MR. LUBIN: I'm reserving my rights for disqualification.

THE COURT: Whatever that means.

MR. LUBIN: I'm reserving my rights to disqualify Mr. Crane in the adversary proceeding.

THE COURT: Whatever that means, that's fine. We're moving on.

I entered an extremely unusual order striking all the existing briefs in the adversary, and directing that replacement briefs be filed. I've made a couple of statements, maybe one very important statement in that order, about what I saw as the proof in this case, and the Trustee meeting a burden on a very important issue.

But my concern is that in reviewing the briefs as they existed, I had an extremely hard time making sense of the legal arguments. There were many, many holes in all the briefs about the relevant legal arguments. I encourage you to pay very close attention in each count that remains outstanding.

And I have -- in fact, let me let you know, the first thing I did when I got the brief is try to figure out which counts remain outstanding, and 90 minutes later I did not know the answer to that question. There were inconsistent statements in the plaintiff's brief. And so I couldn't figure out which counts or components of counts remained outstanding.

Why would someone say, "Claims arising

CERTIFICATION

STATE OF FLORIDA:
COUNTY OF DADE:

I, HELAYNE F. WILLS, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken by electronic recording at the date and place as stated in the caption hereto on Page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken from said electronic recording.

WITNESS my hand this 21st day of September, 2026.

HELAYNE F. WILLS - Court Reporter