# EXHIBIT K

Excerpt of the transcript of the deposition of Avrumi "Josh" Lubin, taken June 15, 2026, in *FVP Opportunity Fund III, L.P., et al. v. Avrumi Lubin, et al.*, Case No. CACE-22-005125 (Fla. 17th Jud. Cir., Broward County), reported by Christine L. Hanner, Prestige Reporting Service, Inc.

**Pages included:** cover (1); appearances (2–3); 5; 49–53; 60; certificate of reporter (141); read-and-sign letter (142).

**Page 4 is omitted** because it contains personal identifying information.

This excerpt was assembled by the Debtor from the reporter's transcript. The original transcript is unaltered. The reporter's certificate at page 141 certifies pages 1 through 139 of the original transcript; it does not separately certify this excerpt.

*In re Avrumi Lubin*, Case No. 26-17342 (EJO) (Bankr. D.N.J.)

Debtor's Objection to Dkt. 102 and 103

Avrumi (Josh) Lubin


IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT, IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-2022-005125

FVP OPPORTUNITY FUND III, L.P.,
et al.,

Plaintiffs,

vs.

AVRUMI LUBIN, et al.,

Defendants.
_______________________________/

Monday, June 15, 2026
10:05 a.m. - 12:57 p.m. (ET)

**VIA VIDEOCONFERENCE**

* * *

VIDEO DEPOSITION

OF

AVRUMI "JOSH" LUBIN

APPEARANCES (via videoconference):

ON BEHALF OF THE PLAINTIFF/JUDGMENT CREDITORS

LAW OFFICE OF ALAN I. KARTEN, PLLC
By: ALAN I. KARTEN, ESQUIRE
321 Anderson Pond Road
Aiken, SC 29803
(305)490-2767
alankartenlaw@gmail.com

ON BEHALF OF THE DEFENDANT, AVRUMI "JOSH" LUBIN

GARYROBINSON, P.A.
By: SCOTT J. TOPOLSKI, ESQUIRE
2255 Glades Road, Suite 301-E
Boca Raton, FL 33431
(561)405-4255
scott.topolski@gray-robinson.com

ALSO PRESENT:

Shanna Decker, Videographer

# I N D E X


| WITNESS | PAGE |
| --- | --- |
| AVRUMI "JOSH" LUBIN | |
| Direct Examination by Mr. Karten: | 5 |
| Certificate of Oath | 140 |
| Certificate of Reporter | 141 |
| Read & Sign Notification | 142 |
| Errata Sheets | 143 |


----------

# E X H I B I T S


| FOR IDENTIFICATION | PAGE |
| --- | --- |
| NONE | |

for the record.

MR. KARTEN: Alan Karten on behalf of the Plaintiff/Judgment Creditors FVP.

MR. TOPOLSKI: Scott Topolski from GrayRobinson here on behalf of Mr. Lubin.

Whereupon,

AVRUMI "JOSH" LUBIN,

a witness of lawful age, being called as a witness by the Plaintiff/Judgment Creditor, having been first duly sworn, testified under oath as follows:

THE WITNESS: Yes.

DIRECT EXAMINATION

BY MR. KARTEN:

Q. Good morning, Mr. Lubin.

A. Good morning.

Q. Mr. Lubin, if I may ask, have you ever been deposed before?

A. Yes.

Q. Do you recall how many times?

A. No.

Q. I -- I know you were deposed one time before in this particular case, correct?

A. By Mr. Breslin, I think so, yeah.

Q. All right. So I'm going to ask a series of questions and hopefully you'll provide me with those

Q. What about it? One million, one hundred --
A. These are questions for Spin, not for me.
Q. You are Spin.
MR. TOPOLSKI: Object to form.
BY MR. KARTEN:
Q. Mr. Lubin, the Court's already found that you're the alter ego of Spin. You are Spin --
A. Yeah? The jury already found that I'm not an alter ego of Spin by your own counsel. So why don't you go look at your own due diligence before you start slipping in language into an order? The Court did not rule that.
Q. I have an order --
A. You slipped in some language into --
Q. -- finding that you are Spin.
A. Yeah. You have an order that you slipped in language that the Judge did not order on.
Q. Okay. So how many members are there of Spin?
A. One member.
Q. And who would that be?
A. Me.
Q. Who controls Spin?
A. Me.
Q. Do you pay any personal expenses out of Spin?
A. I used to. Spin doesn't really have any money

anymore, but...

Q. But you used to spend all of your personal expenses directly out of Spin, did you not?

A. No, not personal expenses. I didn't say that.

Q. You want me to go down all the personal expenses that you spent from Spin, because it's in my affidavit.

MR. TOPOLSKI: Objection. Argumentative.

THE WITNESS: Yeah, that's -- what are you, the IRS? I may -- like, what are you talking about? They may have been business meetings. What the hell are you talking about?

BY MR. KARTEN:

Q. November 1, 2021, $100,000 was transferred from the Spin Capital expense account into your personal TD checking account; is that correct?

A. I don't know. It's possible.

Q. Out of the TD account then you spent 117,000, including that money to pay American Express, Chase, and Citi credit card bills.

A. Spin owes me money. This is not -- you're not the IRS, first of all. Spin owes me money till today and -- and -- yeah.

Q. What does Spin owe you money for?

A. I put a lot of money into Spin.

Q. How much did you put in?
A. I have no idea.
Q. Millions?
A. Probably.
Q. Okay. So you individually put money into Spin?
A. Correct.
Q. Was that a loan or a capital improvement?
A. I don't know. I have to talk to an accountant or a lawyer.
MR. TOPOLSKI: Object to the form.
BY MR. KARTEN:
Q. Do you expect to get paid back that money?
A. I'm sure in some form, some way, yeah.
Q. What form?
A. I don't know. This is above my pay grade.
Q. No, it's not above your pay grade. Do you expect to get cash back from Spin?
A. Yeah. I don't know if it will be categorized as an ROI, as -- as an investment, as short-term capital gains, long-term capital gains.
Next question, please.
Q. Okay. So the bottom line, though, whichever way it's categorized by the IRS as a long-term capital gain or a short-term capital gain, for you, it is --

A. Or maybe something else, I don't know.
Q. What are we going to -- it was either a loan by you to Spin or not a loan and --
A. Don't tell me either/or. You're not the IRS, you're not my accountant, and you're not my lawyer.
Next question, please.
Q. That is correct. Did you have an expectation of being repaid for that money by Spin?
A. In some form or another, I'm sure I expected Spin to pay me money. I don't -- yeah.
Q. Okay. What forms are there that you expected as a possibility of getting repaid? What forms?
A. You're an adverse attorney to me.
Q. That's correct.
A. Correct. And I'm not going to take your advice on that, on -- on what form. I -- yeah.
Q. I'm not advising you. I'm asking you.
A. I don't know.
Next.
Q. Would it be in cash?
A. I don't know.
Q. Would it be in plants? Would it be in cars? What form did you expect to be paid back?
MR. TOPOLSKI: Objection. Asked and answered.
MR. KARTEN: Well, he hasn't really answered

it.

THE WITNESS: I did answer the question.

MR. TOPOLSKI: He said he didn't know.

THE WITNESS: Yeah.

BY MR. KARTEN:

Q. But clearly -- I'll repeat it -- you had an expectation of that money coming back to you in some form?

A. I already answered that.

Q. Is that a yes? Let's make the record perfectly clear, Mr. Lubin.

A. I expected to make money from Spin, not to lose money. Does that answer your question?

Q. Sort of.

Who is S-H-M-U-E-L Lubin? Mr. Lubin?

A. What?

Q. Who is Shmuel Lubin, S-H-M-U --

A. That's my father.

Q. Okay. And you loaned him $25,000 at one point?

A. I loaned my father 25,000?

Q. Did you have a transfer out of the TD account to your father for $25,000?

A. Maybe a -- a donation for a charity.

Q. Donation for what? For what?

Q. So you're saying you're unfamiliar with what this lawsuit was about?
A. I -- I don't know what you're talking about. Define what -- what -- I just answered what your question is.
Q. What was Spin Capital suing Golden Foothill Insurance services for?
A. Life insurance policies.
Q. And how much was involved in that lawsuit?
A. These are questions for Spin Capital with a Spin Capital attorney.
Q. You are Spin Capital.
A. Asked and answered.
Q. No, you can answer it. Are we talking --
A. Okay. We'll take it up with the Judge.
Q. -- $50 million? A hundred million dollars? $10 million?
A. Mr. Karten, I'm going to need a Spin Capital attorney to answer these questions, which I intend to have very shortly.
MR. KARTEN: Scott, do you want to go under oath?
MR. TOPOLSKI: I'm not representing Spin Capital.
MR. KARTEN: I'm -- I was joking. I

CERTIFICATE OF REPORTER

STATE OF FLORIDA )
SS.
COUNTY OF BROWARD)

I, CHRISTINE L. HANNER, Certified Court Reporter, do hereby certify that I was authorized to and did stenographically report the deposition of AVRUMI "JOSH" LUBIN; that a review of the transcript was requested; and that the foregoing transcript, pages 1 through 139 inclusive, is a true and correct record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative or employee of any of the parties, nor relative or employee of such attorney or counsel, or financially interested in the foregoing action.

This certification does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the reporter.

DATED this 28th day of July 2026.

Christine L. Hanner
CHRISTINE L. HANNER,
Court Reporter

July 28, 2026

TO: Avrumi "Josh" Lubin
Scott J. Topolski, Esquire

RE: FVP OPPORTUNITY FUND III, L.P., et al. v. AVRUMI LUBIN, et al.

At the conclusion of your deposition given in the above-styled cause you indicated you wished to read and sign the transcript.

This letter is to advise you that your deposition is ready, and we ask that you call our office at (954)764-7297 at your earliest convenience to make arrangements for reading and signing.

If you are a party in this action and your attorney has ordered a copy of this transcript, you may wish to read their copy and forward to us a copy of your signed correction sheet.

It is necessary that you do this as soon as possible, or no later than 30 days from the date of this letter.

If you wish to waive reading and signing of the transcript, please sign below and return this letter to our office.

Thank you for your prompt attention.

I wish to waive reading and signing:

________________________________ Date_____________.
AVRUMI "JOSH" LUBIN

Very truly yours,
Prestige Reporting Service, Inc.
PO Box 267967
Weston, Florida 33326
production@prestigereportingservice.com

Christine L. Hanner
BY: Christine L. Hanner