**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

AVRUMI LUBIN
Debtor, Pro Se
605 West 42nd Street
New York, New York 10036
(718) 570-3796
josh@tetonfunding.com

Case No. 26-17342 (EJO)
Chapter 11
Judge: Eamonn J. O'Hagan, U.S.B.J.
Hearing: Thursday, December 3, 2026 at 10:00 a.m.

In re AVRUMI LUBIN a/k/a Josh Lubin, Debtor.

# CERTIFICATION OF AVRUMI LUBIN IN SUPPORT OF MOTION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY TO PERMIT THE DEBTOR, INDIVIDUALLY, TO SEEK CORRECTION OR CLARIFICATION OF ONE CLAUSE OF THE MAY 15, 2026 FLORIDA ORDER AND AN UPDATED ACCOUNTING OF THE JUDGMENT, AND FOR WAIVER OF THE 14-DAY STAY UNDER FED. R. BANKR. P. 4001(A)(4)

I, Avrumi Lubin, of full age, certify as follows:

1. I am the debtor in this Chapter 11 case. I appear pro se, for myself only. I do not appear or speak for Spin Capital, LLC ("Spin"), Teton Funding, LLC ("Teton Funding") or any other company. I make this certification on personal knowledge and from the court records identified below.

2. I filed this case on June 25, 2026. Benjamin A. Stanziale, Jr. is the Chapter 11 trustee (the "Trustee"). The Court's October 23, 2026 order in Adversary Proceeding No. 26-01494 (the "October 23 Order") provides, as to the defendant companies other than Teton Life, LLC, that "[a]ny litigation or enforcement of judgments against the Subject Entities is STAYED"; that I am "ENJOINED from taking actions in the name of the Subject Entities"; and that "the Trustee has the sole authority to act in the stead of the Debtor as to any management or litigation decisions regarding the Subject Entities" (Adv. ECF No. 21 at 5, ¶¶ 1–2). I have appealed that order and moved to alter or amend it (Adv. ECF Nos. 24, 25, 26), and I dispute its scope. I recognize that it remains in effect. Today I am also filing, in the adversary proceeding, a motion to clarify, or to the extent necessary modify, that order for the limited personal steps described below. Nothing in this motion concedes any disputed question of ownership, assignment, authority, management rights or alter ego.

**A. The May 15, 2026 Florida order**

3. I am a defendant in *FVP Opportunity Fund III, LP v. Zankl*, No. CACE-22-005125 (Fla. 17th Jud. Cir. Ct., Broward County) (the "Florida action"), in which a final judgment has been entered against me. On May 5, 2026, the judgment creditors, FVP Opportunity Fund III, L.P. and its affiliates ("FVP"), applied for charging orders and foreclosure under section 605.0503, Florida Statutes (Filing No. 247506694) (the "Application"). The Application alleged that "[t]he Subject LLCs are, in substance, alter egos of the Judgment Debtor," and that certain entities "were formed or utilized for the purpose of concealing assets and frustrating judgment enforcement" (Application ¶¶ 8, 10). It asked for "an immediate foreclosure sale of the corporations and the corporate assets therein" (*id.* at 3).

4. The Florida court heard the Application on May 13, 2026. Excerpts of the transcript (the cover page, pages 21 through 26 and the reporter's certificate) are attached as **Exhibit A**. The court granted foreclosure of my interests in two companies, Spin and Teton Funding (the "Subject LLCs"). It stated: "The foreclosure of the two where there's evidence -- . . . -- the declaration established that he is a sole member of the LLC." (May 13 Tr. 21:2–6.) FVP's counsel then said: "And I uploaded a proposed order, not for signature, because I wanted all the procedural safeguards that Mr. Lubin is entitled to on the foreclosure, including Notice of Publication, public sale, et cetera, et cetera." (*Id.* 21:7–12.) The court also said: "Unless it's established that it's not your money, but they've established this is your money." (*Id.* 22:7–9.) When I asked whether the creditors would control the companies, the court said: "You control the entity but any money you make from that entity because you're the sole 100 percent owner --" and "They can sell your interest in it so you don't own it anymore" (*id.* 25:6–8, 25:12–13). I asked, "They don't control it, they just have a lien against it?" and the court answered, "Correct, and then they're going to foreclose --" (*id.* 26:7–10). The words "alter ego," "domination" and "shield" do not appear in the transcript of that hearing.

5. At 11:05 a.m. on May 13, 2026, after the hearing, I filed a written objection to FVP's proposed order (Filing No. 248072766). I objected that the proposed order "states that the LLCs are operated under Mr. Lubin's complete domination and control and that the corporate form is used to shield assets from creditors," and that "[t]hose findings were not properly adjudicated at the May 13, 2026 hearing and should not be included in any order absent proper notice, an evidentiary hearing, and competent evidence" (Objection ¶ 5).

6. On May 15, 2026, the court entered an order imposing charging orders on my interests in the Subject LLCs, authorizing foreclosure of those interests and setting sale procedures (Filing No. 248282220) (the "May 15 Florida Order"). The order recites that the court reviewed "Defendant Lubin's Emergency Objection." A copy of the order is in this Court's record (Adv. ECF No. 43-10). Finding 6 states: "The Subject LLCs are operated under the complete domination and control of the Judgment Debtor; the corporate form is used to shield assets from creditors; and foreclosure of the

transferable interests is therefore appropriate pursuant to section 605.0503(4), Florida Statutes." (May 15 Florida Order at 2, ¶ 6.) Section E states that foreclosure is appropriate "because distributions under a charging order alone will not satisfy the judgment within a reasonable time and because the Judgment Debtor exercises complete dominion and control over the Subject LLCs" (*id.* at 3, § E).

7. At the trial that led to the judgment, the jury answered questions about whether Spin's corporate veil should be pierced. It answered "YES" to Question 1 ("Did Avrumi Josh Lubin dominate and control Spin Capital such that Spin Capital's separate identity was not sufficiently maintained?") and to Question 2 (". . . such that Spin Capital lacked an existence independent from Lubin?"). It answered "NO" to Question 3: "Was the corporate form of Spin Capital formed or used for a fraudulent or improper purpose?" The form instructed: "If you answered 'YES' to all Questions 1-4, then the corporate veil should be pierced and Avrumi Josh Lubin is liable for the obligations of Spin Capital." It answered "YES" to Question 4, which asked whether the FVP plaintiffs were harmed by "the fraudulent or improper formation and use of the corporate form of Spin Capital." (FVP verdict form filed October 6, 2025, at 7.) An excerpt of the form (pages 7 and 8), as I obtained it from the Broward County Clerk's public-access website, is attached as **Exhibit B**.

8. On June 16, 2026, at a hearing in the Florida action at which Stanley Q. Casey appeared for Spin, Mr. Casey said that what Spin won at trial was that it "wasn't an alter ego of Mr. Lubin. The jury found no to that question," and that the May 15 Florida Order "does seem to find that Spin is an alter ego." The court responded that the order states that I own interests in single-member companies, "so he's the sole owner. So, they're not proceeding as an alter ego. But okay. Now, they are, though. They're -- on the supplemental proceedings, they were kind of going under a different avenue." It later said: "instead of saying that it's an alter ego, he -- they're saying now, even if it's a separate company, he owns an interest in that company, and they -- so, they want to foreclose on Mr. Lubin's interest in that company to satisfy the judgment." It told Mr. Casey: "If you have any challenges to that, Mr. Casey, file a pleading." (June 16, 2026 Tr. 8:7–14, 10:24–11:6, 11:15–20, 12:11–13; Adv. ECF No. 43-11 at 6–10.) I have not been served with any such filing.

**B. The accounting of the judgment balance**

9. At the May 13 hearing, I said that I believed FVP had collected more than it acknowledged. The court asked FVP's counsel: "Can you provide an updated accounting of what the remaining balance that Mr. Lubin owes on his, I think it's 8 plus million dollar judgment?" Counsel answered: "It's $4 million plus, but I'll have Mr. Breslin do that." (May 13 Tr. 23:15–20.) The court said: "He's going to provide you an updated -- you will get credit for any money they collect, not just from you, but from Mr. Getter, from -- . . . -- from anybody gets applied to your judgment as well," and "Any money they collect they have to give you credit for and they're going to provide you an updated accounting; all right." It added: "Take a look at the updated accounting, and then if you want to set it down for a hearing go ahead and set it down for a hearing." (*Id.* 24:1–7, 24:16–25:1.) On the evening of May 14, 2026, FVP's counsel Jerrell A. Breslin emailed me that he had "provided the confidential accounting to Alan," FVP's other counsel, and that the amount due, "after all payments received are set off," was "$4,513,427.80." As of signing, I have not received an itemized accounting showing the payments, recoveries and credits.

**C. Later proceedings in Florida, and the Florida appeal**

10. On May 15, 2026, I filed two motions pro se. The first asked the court to compel the updated itemized accounting it had directed (Filing No. 248254194). The second sought rehearing, clarification, modification and a stay of the May 15 Florida Order (Filing No. 248289419); among other things, it argued that the order "contains alter-ego/dominion findings and entity-level relief that require rehearing or modification." At the June 2, 2026 hearing on the second motion, the court stated: "I will hear the arguments on the foreclosures on a different day, but as far as staying the case, I'm not going to stay it. So, the Motion to Stay is denied." (June 2, 2026 Tr. 13:3–6.) The written order entered that day states that the motion "is DENIED" "for the reasons stated on the record" (Filing No. 249489836). On June 4, 2026, I moved pro se to vacate in part provisions of the May 15 Florida Order that I contend exceed the May 13 oral record, asking in the alternative for an indicative ruling or that the motion be held in abeyance pending appellate leave (Filing No. 249665833) (the "June 4 motion"). On June 23, 2026, counsel appearing for me on a limited basis moved for reconsideration, vacatur and a stay of the order's foreclosure and sale provisions or, alternatively, for relief under Florida Rule of Civil Procedure 1.540 (Filing No. 251032035) (the "June 23 motion"). On August 11, 2026, the Florida court allowed that counsel to withdraw (Filing No. 254584135). I have not received notice of a ruling on the motion to compel, the June 4 motion or the June 23 motion.

11. On May 16, 2026, I appealed the May 15 Florida Order individually (*Lubin v. FVP Opportunity Fund III, L.P.*, No. 4D2026-1512 (Fla. 4th DCA)) (the "Florida appeal"). My initial brief, filed June 8, 2026, quoted Finding 6, including the clause quoted in paragraph 6 (Initial Br. 4), and in its argument challenged the foreclosure relief, its scope, and its entry before the updated accounting was provided (*id.* at 9–16). Briefing was completed on June 11, 2026. On June 26, 2026, the day after I filed this case, the Fourth District entered an order that, among other things, denied FVP's

motion to dismiss the appeal in part for lack of appellate standing as to provisions concerning Spin and Teton Funding; in denying FVP's motion to strike portions of my reply brief, stated that "arguments not presented in the initial brief are waived and will not be considered on appeal," without identifying any particular argument; and directed me to show cause why that court should not impose sanctions, "including, but not limited to, prohibiting appellant from self-representation in this Court." On July 1, 2026, after a suggestion of bankruptcy was filed, it directed the parties to ask this Court whether the appeal is stayed. On August 21, 2026, this Court ordered that "[t]he automatic stay of creditors was imposed upon the filing of the Debtor's bankruptcy case as to the Debtor's appeals pending before the District Court of Appeal of the State of Florida" (ECF No. 80 ¶ 1). I have filed status reports in the Florida appeal, most recently on October 31, 2026. I have not received notice of a ruling on the order to show cause. FVP's motion for relief from the automatic stay as to the Florida appeals (ECF No. 33) is scheduled to be heard on December 3, 2026 at 10:00 a.m.

**D. How the finding is being used against me**

12. In the adversary proceeding, the Trustee's counsel has argued that collateral estoppel should apply to "the finding that Spin is under his domination and control made in the Florida Charging Order," stating that the Florida judge authorized foreclosure of my interest in Spin "upon the finding that Spin was his alter ego" (Adv. ECF No. 19 at 3, ¶ 6). In its findings on October 22, 2026, the Court stated that "the Court in Florida has already found that Spin Capital and Teton Funding were under the complete dominion and control of the debtor who used the corporate forum to shield assets from creditors," citing the Trustee's certification and the May 15 Florida Order (Oct. 22, 2026 Tr. 63:19–25). FVP and Franklin Capital Funding, LLC have each filed an adversary proceeding against me in this Court (Adv. Pro. Nos. 26-01315 and 26-01339), in which I have filed answers.

13. On November 11, 2026, I asked that the Trustee authorize Mr. Casey or other appropriate Florida counsel to pursue correction, clarification or vacatur of the May 15 Florida Order on behalf of the affected companies, after first seeking any stay relief or other authorization that is required (Ex. C, item 3). A copy of that email, with the message to which it replied, is attached as **Exhibit C**. As of signing, I have not received the Trustee's decision on that request. This motion does not replace that request. It concerns only my own interests.

**E. What I ask to do, and the limits of the request**

14. I ask permission, for myself only, to ask the Fourth District for leave or a limited relinquishment of jurisdiction, and then to ask the Florida circuit court (a) to correct or clarify the clause of Finding 6 stating that "the corporate form is used to shield assets from creditors," and the related language of Section E, including whether the May 15 Florida Order adjudicated alter ego, veil piercing, or the formation or use of the corporate form for a fraudulent or improper purpose; and (b) for the updated accounting and credit described at the May 13 hearing. In exercising that limited permission, I would act only for myself. I would not act for Spin, Teton Funding or any other company; pursue the June 23 motion or any other request to vacate, stay or modify the charging, foreclosure, sale or other enforcement provisions of the May 15 Florida Order; seek relief concerning the ownership, control, management, assets or claims of any company; prosecute any claim belonging to the estate; or settle, release or compromise any right of the estate or of any company. I understand that this motion does not decide whether any of those requests may be made later by anyone with proper authority. I will not use property of the estate for these steps, and I understand that in this case property of the estate may include my own post-petition earnings. If Florida counsel is retained for these steps, I will not pay counsel with property of the estate; counsel would be paid only with funds that are not property of the estate, such as funds provided by a third party, or as this Court permits. I will send the Trustee's counsel and the Office of the United States Trustee a copy of each proposed Florida filing at least five business days before I file it, and a copy of each filed paper and each ruling within one business day. If a deadline set by a court order or court rule, or an urgent need to preserve a right, makes five business days' notice impracticable, I will give as much advance notice as practicable and, in all events, send a copy no later than the time I file it, with a short explanation.

15. I understand that the Florida courts will decide whether and how these requests may be heard, whether they are timely or repeat earlier requests, and whether to grant them, and that they may deny them. I also understand that a Florida ruling could affect issues in this Court, and that its effect would be decided under applicable law. I am filing now so that this motion can be heard with FVP's motion on December 3, 2026, on regular notice. I do not ask for an earlier hearing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct (28 U.S.C. § 1746). Executed on November 12, 2026.

Dated: November 12, 2026

Avrumi Lubin, Debtor, pro se
605 West 42nd Street, New York, New York 10036
(718) 570-3796 | josh@tetonfunding.com

# EXHIBIT A

**EXCERPT — Transcript of hearing held May 13, 2026, FVP Opportunity Fund III, LP v. Zankl, No. CACE-22-005125 (Fla. 17th Jud. Cir. Ct., Broward County): cover page, pages 21–26, and reporter's certificate**

In re Avrumi Lubin, Case No. 26-17342 (EJO) — Certification of Avrumi Lubin dated November 12, 2026, in support of the Debtor's Motion for Limited Relief from the Automatic Stay

IN THE CIRCUIT COURT
OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NUMBER: CACE-2022-005125
JUDGE: DAVID A. HAIMES

FVP OPPORTUNITY FUND III, LP,

Plaintiffs,

v.

AVRUMI LUBIN, et al.,

Defendants.

______________________________/

Location of Court:
Broward County Courthouse
201 S.E. Sixth Street
Courtroom WW17150
Fort Lauderdale, Florida 33301
Wednesday, May 13, 2026
9:40 a.m. - 10:07 a.m.

The above entitled case came on for Hearing before the Honorable David A. Haimes, one of the Judges of the above-styled Court, via Zoom proceedings, pursuant to Notice.

MR. KARTEN: And you are granting --
THE COURT: The foreclosure of the two where there's evidence --
MR. KARTEN: Right.
THE COURT: -- the declaration established that he is a sole member of the LLC.
MR. KARTEN: And I uploaded a proposed order, not for signature, because I wanted all the procedural safeguards that Mr. Lubin is entitled to on the foreclosure, including Notice of Publication, public sale, et cetera, et cetera.
MR. LUBIN: So there's a lien against the member interest at the moment? Explain it to me.
THE COURT: Your membership interest, your sole membership interest, okay, because you are the sole owner.
MR. LUBIN: And basically they can end up doing -- selling the corporation?
MR. KARTEN: Selling your interest.
THE COURT: They can just sell your interest in the corporation. The corporation will still exist. They're just allowed to collect whatever --
MR. LUBIN: Any money that comes,

distributions and stuff like that. That part I understand.

THE COURT: Whatever they've been able to establish that this is really your money, and they have a judgment against you, and so --

MR. LUBIN: Spin Capital?

THE COURT: Unless it's established that it's not your money, but they've established this is your money. And so, look --

MR. LUBIN: That part I'm not concerned about.

THE COURT: You either need to work something out and pay off that judgment or they're going to keep collecting. I've told you that.

MR. LUBIN: I want to mention something, Your Honor. Alan claims that they're owed $4 million out of the $8.8 million, which I have evidence that there's $15 million in cars prior to, plus there's 2 point something million I know that they got from a bankruptcy. He's telling me to put up a $2 million bond. I want to have the opportunity to put them under oath and ask them how much money they collected because I believe they collected more than the judgment amount.

I'm still the senior creditor. I'm priority in front of FVP, that's just the way it is, and I should be entitled to not take their word for it on an email. Can Your Honor grant me authority to ask them under oath and a signed affidavit?

THE COURT: Have you recovered $15 million?

MR. KARTEN: Absolutely not. I think he wants Mr. Breslin to provide in another situation in this case what the amount was --

MR. LUBIN: That's all I'm asking.

THE COURT: Hang on. Hang on. let me just do this. I've got to finish up and go to my next hearing.

MR. LUBIN: There's other creditors too --

THE COURT: Let me just cut to the chase. Can you provide an updated accounting of what the remaining balance that Mr. Lubin owes on his, I think it's 8 plus million dollar judgment?

MR. KARTEN: It's $4 million plus, but I'll have Mr. Breslin do that.

MR. LUBIN: Your Honor --

THE COURT: Hold on. He'll provide you an updated. Take a look at it and then I can always readdress that as well.

MR. LUBIN: Under oath?

THE COURT: He's going to provide you an updated -- you will get credit for any money they collect, not just from you, but from Mr. Getter, from --

MR. LUBIN: I'm saying --

THE COURT: -- from anybody gets applied to your judgment as well.

MR. LUBIN: What about if they collected money from vehicles, $15 million and they decided to split it up with a few corporations, but I'm the senior creditor, they can't legally do that.

THE COURT: I have no idea what you're talking about.

MR. LUBIN: It's a hypothetical. Let's say money --

THE COURT: Any money they collect you get credit. This is the last thing I'm going to say, Mr. Lubin. Any money they collect they have to give you credit for and they're going to provide you an updated accounting; all right.

MR. LUBIN: And I'm taking their word for it? I can't ask them under oath?

THE COURT: Not right now. Take a look at the updated accounting, and then if you want to set it down for a hearing go ahead and set it

down for a hearing. Let them provide you with an updated accounting first, okay.

MR. KARTEN: Gary, I'm ordering.

MR. LUBIN: Do they control the entity and start pursuing --

THE COURT: You control the entity but any money you make from that entity because you're the sole 100 percent owner --

MR. LUBIN: I have no problem with that. No problem. I thought that they can start controlling --

THE COURT: They can sell your interest in it so you don't own it anymore and --

MR. LUBIN: How does that work?

THE COURT: Because you own that, 100 percent.

MR. LUBIN: How quickly can they sell the interest?

THE COURT: Any value, they can take that value and apply it to the judgment that you owe them; that's just the law. All right. You'll get all that money back if you win your appeal. All right. So good luck with your appeal.

MR. LUBIN: I'll get all the interest back or what? Do I need to put Spin Capital into

bankruptcy? Can they sell my intellectuals that may be worth money, hypothetically?

THE COURT: I can't advise you on that, but obviously if you file for bankruptcy or they file for bankruptcy there will be a stay and we'll address it accordingly.

MR. LUBIN: They don't control it, they just have a lien against it?

THE COURT: Correct, and then they're going to foreclose --

MR. KARTEN: And I can foreclosure on that lien.

MR. LUBIN: How quick can they foreclose on the lien?

MR. KARTEN: Gary, I'm ordering.

THE COURT REPORTER: Yes, sir.

MR. KARTEN: Thanks.

MR. LUBIN: Alan, send me a copy please.

THE COURT REPORTER: You can buy a copy, sir.

THE COURT: It will be cheaper because Mr. Karten is paying for the main. The copy should be cheaper.

THE COURT REPORTER: Correct.

MR. LUBIN: Oh, I didn't know that.

CERTIFICATE

STATE OF FLORIDA )
)
COUNTY OF BROWARD )

I, Gary R. Schwartz, Shorthand Reporter and Notary Public in and for the State of Florida at large,

DO HEREBY CERTIFY that the foregoing hearing was taken before me at the time and place therein designated; and the foregoing Pages 1 through 27, inclusive, are a true and correct record of the proceedings.

I FURTHER CERTIFY that I am not a relative or employee of any of the parties, nor relative or employee of such attorney or counsel, or financially interested in the foregoing action.

WITNESS MY HAND AND SEAL this 14th day of May, 2026, in the City of Fort Lauderdale, County of Broward, State of Florida.

Gary Schwartz

Gary R. Schwartz
Notary Public State of Florida
Commission Number HH503363
Commission Expires: 06/29/2028

# EXHIBIT B

**EXCERPT — Verdict form (FVP plaintiffs) filed October 6, 2025, FVP Opportunity Fund III, LP v. Zankl, No. CACE-22-005125:**
**pages 7–8 (as obtained from the Broward County Clerk's public-access website)**

In re Avrumi Lubin, Case No. 26-17342 (EJO) — Certification of Avrumi Lubin dated November 12, 2026, in support of the Debtor's Motion for Limited Relief from the Automatic Stay

## LUBIN – PIERCING THE CORPORATE VEIL OF SPIN CAPITAL LLC / OR ACTIVE PARTICIPATION

**QUESTION 1:** Did Avrumi Josh Lubin dominate and control Spin Capital such that Spin Capital's separate identity was not sufficiently maintained?

☒ YES ☐ NO

**QUESTION 2:** Did Avrumi Josh Lubin dominate and control Spin Capital such that Spin Capital lacked an existence independent from Lubin?

☒ YES ☐ NO

**QUESTION 3:** Was the corporate form of Spin Capital formed or used for a fraudulent or improper purpose?

☐ YES ☒ NO

**QUESTION 4:** Were the FVP Plaintiffs harmed by the fraudulent or improper formation and use of the corporate form of Spin Capital?

☒ YES ☐ NO

**QUESTION 5:** Did Avrumi Josh Lubin actively participate in the commission of a tort (civil wrong) through personal involvement in the wrongful act that led to FVP Plaintiffs' injuries or damages and knowledge of the wrongful act with acquiescence (by permitting the act when he should have prevented it)?

☐ YES ☑ NO

*If you answered "YES" to all Questions 1-4, then the corporate veil should be pierced and Avrumi Josh Lubin is liable for the obligations of Spin Capital. If you answered "YES" to Question 5, then Avrumi Josh Lubin is*

*liable under the active participation theory. If you answered "NO" to any of Questions 1-4 and "NO" to Question 5, then Avrumi Josh Lubin is not liable.*

# EXHIBIT C

**Email of Avrumi Lubin dated November 11, 2026, 4:21 p.m.,**
**with the November 11, 2026, 3:44 p.m. message to which it replied**

In re Avrumi Lubin, Case No. 26-17342 (EJO) — Certification of Avrumi Lubin dated November 12, 2026, in support of the Debtor's Motion for Limited Relief from the Automatic Stay

**From:** Josh Lubin <josh@tetonfunding.com>
**Sent:** Wednesday, November 11, 2026 4:21 PM
**To:** Patricia A. Staiano <pstaiano@hlgslaw.com>
**Cc:** ben <ben@stanzialelaw.com>; Rachel.Wolf@usdoj.gov; Kirsten.K.Ardelean@usdoj.gov; Heidi.A.Feinman@usdoj.gov
**Subject:** Re: Michigan appeal
**Importance:** High

---

Patricia and Ben,

Thank you for contacting Mr. Beams. I am copying Rachel Wolf concerning the outstanding preservation issues.

My request is for prompt protective action in the courts—not simply confirmation that counsel have spoken. Please arrange for authorized counsel to take the following steps:

1. **Michigan:** Properly present the operative bankruptcy orders and seek clear court direction concerning their effect on the appeal and the December 10 briefing deadline. Please secure appropriate deadline protection while that issue is addressed, including an alternative extension request where appropriate. My immediate request is to preserve the appeal, not to require prosecution of its merits now.

2. **SDNY:** Follow up on the pending stay request at ECF 204 through a properly docketed application expressly requesting recognition and implementation of the October 23 stay as to Spin and a hold on adjudication of ECF 155 while the stay issue is resolved. Your October 26 letter, ECF 218, transmitted the injunction but did not expressly request those rulings. I acknowledge the earlier stay-support letters; my concern is completing the protective follow-through.

3. **Broward:** Authorize Stanley Casey or other appropriate Florida counsel to pursue correction, clarification or vacatur of the May 15, 2026 order and related provisions I have identified as inconsistent with the hearing record, on behalf of the affected Subject Entities, including through the pending motions where applicable. If counsel can proceed under the existing orders without additional stay relief, please authorize that action promptly. If relief from the automatic stay, modification of the NJ injunction, or other authorization is required, please promptly seek that relief in the proper court and then pursue the corrective relief in Broward. Addressing those procedural requirements is part of the protection I am requesting from the Trustee; the issue should not remain unresolved merely because another application may be necessary.

I receive electronic notices in SDNY and Broward and have not received notice resolving these issues. Please provide the filed papers and resulting orders, identify responsible counsel, and confirm the filing dates or definite dates for completing these steps.

Please act promptly and provide written confirmation by noon Eastern on November 13. Any decision not to take a requested step should be identified expressly, with its nonprivileged basis and the alternative protection proposed.

The underlying Beams communication can be addressed separately. Please do not circulate assertedly privileged advice on this copied chain. My request for public filings, deadlines and protective action does not depend on receiving that communication.

I write individually as the debtor. Nothing in this request waives privilege or concedes any disputed ownership, assignment, alter-ego or authority issue. All rights and objections are reserved.

Josh Lubin

---

**From:** "Patricia A. Staiano" <PStaiano@hlgslaw.com>
**Date:** Wednesday, November 11, 2026 at 3:44 PM
**To:** Josh Lubin <josh@tetonfunding.com>
**Cc:** ben <ben@stanzialelaw.com>
**Subject:** Michigan appeal

I have spoken with and sent an email to Mr. Beams regarding the Michigan appeal. Before I supply a copy of that email to you, I must secure your agreement not to share it with anyone else (unless you retain counsel or counsel for Spin), as it is an attorney-client privileged communication. Please advise.

Patricia A. Staiano, Esq.
Hellring Lindeman Goldstein & Siegal LLP
103 Eisenhower Parkway
Roseland, NJ 07068
T: +1.973.621.9020
D: +1.973.621.9330
F: +1.973.621.7406
pstaiano@hlgslaw.com

This email and its attachments may contain confidential and/or legally privileged information from the law firm of Hellring Lindeman Goldstein & Siegal LLP. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email and attachments is strictly prohibited and those contents should be returned to this firm immediately. Although this email and its attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, no responsibility is accepted by Hellring Lindeman Goldstein & Siegal LLP for any loss or damage arising in any way from its use. This communication, including attachments and enclosures, is not intended to provide any tax advice, is not a substitute for a formal tax opinion, and is not sufficient to avoid tax-related penalties.