**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

AVRUMI LUBIN
Debtor, Pro Se
605 West 42nd Street
New York, New York 10036
(718) 570-3796
josh@tetonfunding.com

Case No. 26-17342 (EJO)
Chapter 11
Judge: Eamonn J. O'Hagan, U.S.B.J.
Hearing: Thursday, December 3, 2026 at 10:00 a.m.

In re AVRUMI LUBIN a/k/a Josh Lubin, Debtor.

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER DIRECTING THE CHAPTER 11 TRUSTEE TO FILE WRITTEN STATUS REPORTS AND TO TAKE OR EXPLAIN PROTECTIVE STEPS CONCERNING PENDING DEADLINES, INSURANCE POLICIES AND A FLORIDA ORDER

## PRELIMINARY STATEMENT

The Debtor asks for a narrow order in two parts. First, four time-limited protective steps, each of which the Trustee may take or decline with an explanation and an application to this Court for instructions: (1) within two business days after entry, a filing in Spin's Michigan appeal that presents this Court's orders and asks that court to determine their effect on the December 10, 2026 briefing deadline, with an alternative request for an extension or other protective relief; (2) within two business days, a letter-motion in the S.D.N.Y. action asking that court to decide the pending request to extend the stay to Spin and, if still needed, to defer the pending summary-judgment motion as to Spin meanwhile; (3) within five business days, permission for Teton Life's New York counsel to present the limited preservation application that counsel proposed in August for the twenty-four life insurance policies listed at pages 2 and 3 of NYSCEF Doc. No. 1476 (the "Additional Policies") — a request to modify the New York court's stay as needed and a motion to extend or clarify the receiver's authority to those policies — and to follow it through; and (4) as to the May 15, 2026 order of the Broward County court that authorizes foreclosure of the Debtor's interests in Spin and Teton Funding (the "May 15 Florida Order"), a short statement within two business days and, within five, either the first procedurally available step toward a ruling on a request for relief from that order or an application to this Court for instructions, with the Court to consider independent counsel if the Trustee declines or identifies a conflict. Second, short written reports, without privileged material: an initial statement on the Additional Policies and the policies the New York receiver maintains within two business days; a report of the Subject Entities' deadlines, hearings and pending motions through January 31, 2027 within three; a policy-by-policy report within seven; and prompt notice of any earlier deadline or lapse risk the Trustee learns of. All of it would be reviewed at the December 17, 2026 status conference.

The protective steps respond to gaps in the record, not to any finding of fault. In Michigan, Spin's brief is due December 10, a motion does not stay that deadline, and the Debtor has not been served with any filing in that appeal since October 19 (Cert. ¶¶ 3–4). In the S.D.N.Y. action, the positions the court requested on extending the stay to Spin were filed by October 9, no ruling has been noticed, and the summary-judgment motion against Spin remains pending; the Trustee's October 26 letter enclosed this Court's order but did not ask that court to rule (Cert. ¶ 13). As to the Additional Policies, the question is not whether anyone has ever asked the New York court for relief — Teton Life asked in January to vacate the stay as to the other defendants, and the Debtor has applied in his own name — but whether the Additional Policies have been protected (Cert. ¶¶ 10–11). So far as the record shows, no order has extended or confirmed the receiver's authority as to them (Cert. ¶ 8). Teton Life's own counsel told the New York court in August that the Additional Policies "remain exposed to lapses, surrender, assignment, or change of beneficiary" until the receiver's authority over them is clear, and asked for a pre-motion conference and leave to move (Cert. ¶ 7). No motion by Teton Life or the receiver has been noticed, and the Trustee has asked the New York court not to consider the Debtor's application (Cert. ¶¶ 8, 11). In Florida, the May 15 Florida Order remains in force; the appeal from it is fully briefed but stayed; a later motion addressed to it has not been decided; the Trustee's counsel has asked this Court to give one of its findings collateral-estoppel effect; and the Debtor has not received the Trustee's decision on his November 11 request to pursue correction, clarification or vacatur of that order (Cert. ¶¶ 19–22). A letter, a proposed order to show cause that has not been signed, a general assurance and a later report are not the same as protection. The Debtor does not ask this Court to decide whether he may be heard in another court, or to direct any other court in any way. He asks that each decision be made, and either carried out or explained to this Court, by a date.

The motion does not ask the Court to find that the Trustee has failed to act. He has taken steps: his counsel supported a stay request in the S.D.N.Y. action and filed this Court's order there; filings have been made for Spin in the Texas involuntary cases at his request or with his authorization; he has filed an adversary complaint concerning Texas property; his counsel has consulted the attorney who tried the Florida case and sent this Court's October 23 Order to the Florida court; he has applied to retain accountants; and his counsel has spoken with Spin's Michigan counsel and with the New York receiver (Cert. ¶¶ 5, 9, 11–15, 22). Apart from the four protective steps, each of which the Trustee may take or explain, the motion does not ask the Court to direct any litigation decision, to modify the orders entered in Adversary Proceeding No. 26-01494, or to decide who owns any entity, claim or policy. Capitalized terms have the meanings given in the accompanying Certification of Avrumi Lubin ("Cert.").

**BACKGROUND**

The October 23 Order, which the Debtor has appealed, stays litigation against the Subject Entities other than Teton Life and states that the Trustee "has the sole authority to act in the stead of the Debtor as to any management or litigation decisions regarding the Subject Entities"; as to Teton Life, it continues the restraints of the October 15 order to show cause, which include a like stay and a like statement of authority (Cert. ¶ 2). It recites the Court's finding that "the Trustee must decide which entities and actions are valuable to the estate and how to most effectively protect those assets" (*id.*). On November 10, 2026, the Court granted a preliminary injunction as to Teton Life (*id.*).

Several dates are close. Spin's brief is due in the Michigan Court of Appeals on December 10, 2026 (Cert. ¶ 3 & Ex. A). A bond hearing in the Texas involuntary cases, in which Spin is a petitioning creditor, is set for December 23, 2026, and a two-day hearing on a motion to dismiss for January 25 and 26, 2027 (Cert. ¶ 14). A motion for summary judgment against Spin is pending in the S.D.N.Y. action, with no ruling yet on the request to extend the stay to Spin (Cert. ¶ 13). In Florida, the appeal from the May 15 Florida Order is fully briefed but stayed, and the motion for relief from the automatic stay as to the Florida appeals (ECF No. 33) is set for the same hearing as this motion (Cert. ¶ 20). In the New York action, a request is pending that the court sign a proposed order that would declare terms from a November 2025 settlement conference binding on Teton Life, direct the receiver to pay out the funds in his accounts, and make Teton Life responsible for funding premiums on certain policies (Cert. ¶ 12).

So far as the record shows, the Additional Policies are not yet within the receiver's authority. Teton Life's counsel told the New York court in August that the receivership order's investigation provisions "do not by their terms place those policies within his custody or within the injunctions" of that order, and that the policies "remain exposed to lapses, surrender, assignment, or change of beneficiary" until the receiver's authority over them is clear; according to that letter, the receiver does not object to expanding the receivership, subject to issues about his compensation (Cert. ¶ 7). According to the same letter, the receiver already uses the proceeds of a matured policy to pay receivership premiums and costs, and he held more than $9.3 million on July 31, 2026 (*id.*). The receiver's list of the Zurich policies he maintains includes none of the Additional Policies (Cert. ¶ 9). The New York action remains stayed except for the receiver's work (Cert. ¶ 10). The Tennessee order permits the identified nondebtor proceedings subject to its terms, expressly preserves the stay protecting property of Mr. Leer's estate, and leaves the New York court's own orders, and the conduct of its proceedings, to that court (Cert. ¶ 10 & Ex. C ¶¶ 2–5). The Debtor's own application to the New York court, made in his own name, is pending; the Trustee has asked that court not to consider it (Cert. ¶ 11).

The Debtor asked the Trustee in writing on November 10 and 11 for information on these subjects, with the United States Trustee copied, and asked for answers by November 13 (Cert. ¶¶ 16–17 &

Ex. B). Those response times have not passed. The Debtor files now only so that the motion can be heard on December 3, before the Michigan deadline, and will narrow or withdraw it to the extent the information is provided or the step is taken (Cert. ¶ 18).

## ARGUMENT

### I. THE CODE REQUIRES A CHAPTER 11 TRUSTEE TO FURNISH INFORMATION TO A PARTY IN INTEREST, AND THE COURT MAY ORDER IT

#### *A. The information duty*

A Chapter 11 trustee must perform the duties listed in 11 U.S.C. § 1106(a)(1), which include the duty in § 704(a)(7): "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest." The duty has two conditions: the information must concern the estate or its administration, and a party in interest must request it. *In re NWFX, Inc.*, 267 B.R. 118, 209 (Bankr. W.D. Ark. 2001). "If these conditions are met, the trustee has a fiduciary duty to provide that information. The language in this code section makes a request for information difficult for a trustee to avoid absent a court order to the contrary." *Id.* Section 704(a)(7) also expressly permits the Court to order otherwise. The requested relief therefore remains subject to the Court's discretion, and any current, responsive information the Trustee has already supplied should be credited. Here, no written account of the matters described in this motion has been provided (Cert. ¶¶ 6, 9, 12).

#### *B. The Debtor is a party in interest*

"A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Third Circuit has explained that "that section has been construed to create a broad right of participation in Chapter 11 cases." *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (en banc) (internal quotation marks and citation omitted).

#### *C. The information concerns the estate and its administration*

The Debtor's membership interests in the Subject Entities are property of his estate, 11 U.S.C. § 541(a)(1), and the October 23 Order recites that the Debtor owns 100% of four of the Subject Entities and 50% of Teton Life (Adv. ECF No. 21 at 2 n.1). The value of those interests depends on the entities' pending cases and assets. The orders entered in the adversary proceeding, which the Debtor disputes, also state that management and litigation decisions regarding the Subject Entities rest with the Trustee (Cert. ¶ 2). While those orders stand, the deadlines in the Subject Entities' cases and the status of the policies are matters concerning the estate and its administration. The October 23 Order itself contemplates that the Trustee will "decide which entities and actions are valuable to the estate and how to most effectively protect those assets" (*id.*). The reporting provisions do not ask the Court to second-guess those decisions. They ask that the decisions be

reported. A trustee is "bound to be vigilant and attentive in advancing [the estate's] interests." *In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996) (quoting *In re Baird*, 112 F. 960, 960 (E.D. Pa. 1902)). Keeping track of court deadlines is part of that ordinary work, and reporting on it imposes little burden.

***D. The investigation duty and the Court's case-management authority***

A Chapter 11 trustee must also, "except to the extent that the court orders otherwise, investigate" the debtor's affairs and any other matter relevant to the case, 11 U.S.C. § 1106(a)(3), and "as soon as practicable—(A) file a statement of any investigation conducted under paragraph (3) of this subsection," § 1106(a)(4). The reports requested here are narrower and sooner than that statement: a list of deadlines, a statement on one appeal, and the status of specific policies.

The Court, "on its own motion or on the request of a party in interest," "shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case," and, "unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, may issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d). A Chapter 11 status conference is set for December 17, 2026 at 2:00 p.m., the same afternoon as the hearing on continuation of the preliminary injunction and the pretrial hearing in Adversary Proceeding No. 26-01494 (Adv. ECF No. 21 at 6, ¶¶ 6–7). The requested order implements §§ 704(a)(7) and 1106(a) and the Court's express authority under § 105(d). It is consistent with the Code and the Rules, and it does not override any provision of either. *Cf. Law v. Siegel*, 571 U.S. 415, 421 (2014) (stating that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code" (quoting 2 Collier on Bankruptcy ¶ 105.01[2])). This motion is a contested matter under Fed. R. Bankr. P. 9014.

Written reporting about these entities is already part of this case. In a Chapter 11 case, "the trustee or debtor in possession must file periodic financial reports" about entities in which the estate holds a substantial or controlling interest. Fed. R. Bankr. P. 2015.3(a). The Debtor filed a report on Official Form 426 (ECF No. 38), and "[l]ater reports must be filed at least every 6 months." Fed. R. Bankr. P. 2015.3(b). The Debtor does not suggest any reporting default; the point is only that the requested reports fit the existing structure of the case. A report does not decide who owns any entity's assets.

## II. THE DATES MAKE PROMPT PROTECTIVE STEPS AND WRITTEN REPORTS NECESSARY NOW

### *A. Michigan*

The Michigan Court of Appeals extended Spin's brief deadline to December 10, 2026 (Cert. Ex. A). Under that court's rules, "[a]ny party failing to timely file a brief under this rule forfeits the right to oral argument," Mich. Ct. R. 7.212(A)(4), and "[t]he filing of a motion does not stay the time for filing a brief," Mich. Ct. R. 7.212(A)(5). The Debtor does not ask this Court to decide on this motion whether, or how, the stay provisions of its orders apply to Spin's appeal, and does not ask that the appeal be prosecuted. The Debtor disputes those orders and has appealed them (Cert. ¶ 2), but while they stand, the stay they impose on litigation against the Subject Entities should be presented where it matters. *Cf. Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982) (holding that § 362 "should be read to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee"). The point is practical: the deadline remains on the Michigan court's docket, no filing after October 19 has been served (Cert. ¶ 4), and because a motion does not stay the time for filing a brief, any protective request must be made early enough for that court to act before December 10. The proposed order therefore asks that, within two business days after entry, the Trustee either cause Spin's authorized counsel to present this Court's orders to the Michigan court and ask it to determine their effect on the deadline, with an alternative request for an extension, abeyance or other protective relief, or explain why not and ask this Court for instructions on an expedited basis before December 10 (proposed order ¶ 2). The paragraph does not require the appeal to be prosecuted on the merits. The Trustee may choose to file the brief, but the order does not require it.

### *B. The policies*

The Trustee's counsel reported on October 29 that the receiver had advised that "the policies are not at risk" and said she would obtain written confirmation; the receiver's November 2 email listed five Zurich policies he maintains, none of which is an Additional Policy (Cert. ¶ 9). A policy-by-policy report, with premium, grace-period and reinstatement dates and the person responsible, will show whether any policy needs attention. The Debtor does not have those dates for the Additional Policies and does not know whether any falls before the hearing (Cert. ¶ 18). That lack of information is not evidence that no such date exists. It is the reason for the two-business-day statement and the prompt-notice provision: who is responsible for the Additional Policies, whether any such date falls before December 31, 2026, and what stands in the way of an application to protect them should be known at once, not only after a seven-business-day report. The New York court itself has recognized, as to the policies the receiver maintains, that interruptions in his work "could have irreparably harmful consequences for the receivership estate's assets, including risk of lapses in premium payments" (NYSCEF Doc. No. 1471 at 6). So far as the record shows, no order has extended or confirmed his authority as to the Additional Policies (Cert. ¶ 8). And if the proposed order pending in the New York action were signed, the receiver's funds would be paid out

and Teton Life would become responsible for premiums on certain Zurich policies, so the timing of premium payments would matter even more (Cert. ¶ 12). Insured names and full policy numbers need not, and under the proposed order would not, appear on the public docket.

### *C. The S.D.N.Y. and Texas matters*

A motion for summary judgment against Spin is pending in the S.D.N.Y. action (ECF No. 155). The Trustee's counsel supported the request to extend the stay to Spin, as did Spin's counsel (ECF Nos. 210, 211, 214), and on October 26 the Trustee's counsel filed this Court's October 23 Order there; the cover letter enclosed the order but did not ask that court to rule on the stay request or to defer the summary-judgment motion, and no ruling has been noticed (Cert. ¶ 13). The assigned judge's individual practices provide that "[l]etters seeking relief should be filed on ECF as letter-motions." Individual Practices in Civil Cases of Judge Arun Subramanian ¶ 3(A) (rev. May 11, 2026). The proposed order therefore describes a short letter-motion, or other permitted filing, asking for a decision on the stay request and, if still needed, interim deferral of the summary-judgment motion as to Spin (proposed order ¶ 3). In Texas, motions to require the petitioning creditors, including Spin, to post a bond will be heard on December 23, 2026, and a motion to dismiss on January 25 and 26, 2027 (Cert. ¶ 14; *see* 11 U.S.C. § 303(e), (i)). The Debtor does not suggest these matters are unattended. A list of what is due, who is handling it and what is planned lets the Court see that at a glance.

### *D. A written report serves everyone*

The Trustee's counsel gave an oral status report on November 10 (Cert. ¶ 16). A short written report gives the Court and every party the same information, avoids disputes about what was said, and should reduce the need for correspondence between the Debtor and the Trustee's counsel.

## III. EACH PROTECTIVE STEP ASKS FOR A DECISION BY A DATE, NOT ONLY A LATER REPORT

### *A. The additional-policy request needs a concrete next step*

New York law provides that, "[u]pon motion of the receiver or a party, powers granted to a temporary receiver may be extended or limited." N.Y. C.P.L.R. 6401(b). Teton Life's counsel invoked that provision in August, explained that the receivership order does not by its terms place the Additional Policies within the receiver's custody or its injunctions, and asked for a pre-motion conference, leave to move and, "[t]o the extent the case remains stayed," a limited modification of the stay to permit the motion (Cert. ¶ 7). The New York action remains stayed except for the receiver's work (Cert. ¶ 10). The Tennessee order permits the identified nondebtor proceedings subject to its terms, expressly preserves the stay protecting property of Mr. Leer's estate, and leaves the New York court's own orders, and the conduct of its proceedings, to that court (Cert. ¶ 10 & Ex. C ¶¶ 2–5). The Debtor does not suggest that the New York court lacks power to manage its own stay or its receiver. The point is practical: so far as the record shows, that court has not extended or

confirmed the receiver's authority as to the Additional Policies in the more than ten weeks since Teton Life's letter, and the statute contemplates that such relief will be sought by motion. Preservation should be presented to that court through a proper application, and followed through to a decision, not left to the hope that it will be addressed without one.

***B. On the Trustee's own position, the decisions are his to make***

No motion by Teton Life or the receiver to bring the Additional Policies under the receiver's authority has been noticed; Teton Life's January motion concerned the stay, not those policies (Cert. ¶¶ 8, 10). According to Teton Life's counsel, the receiver does not object to expanding the receivership, subject to unresolved compensation issues (Cert. ¶ 7). The Debtor applied in his own name as a third-party defendant; the Trustee asked the New York court not to consider that application, and that court has not acted on it (Cert. ¶ 11). The orders entered in the adversary proceeding, which the Debtor disputes and has appealed, state that the Trustee has sole authority over management and litigation decisions regarding the Subject Entities other than Teton Life and continue like restraints as to Teton Life, and the Trustee relied on this Court's orders in asking the New York court not to consider the Debtor's application (Cert. ¶¶ 2, 11). The Debtor does not ask the Court to resolve those disputes on this motion. But on the Trustee's own position, whether Teton Life's New York counsel may ask that court to protect the Additional Policies is a decision for him. It is also the kind of decision the October 23 Order describes: "the Trustee must decide which entities and actions are valuable to the estate and how to most effectively protect those assets" (Cert. ¶ 2). He told the New York court on November 3 that he was "determining a path forward," and, as the Debtor understood the November 10 hearing, his counsel said she would work with the Debtor on preserving the additional policies and would seek any stay relief needed (Cert. ¶¶ 11, 16). The same is true of the Michigan and S.D.N.Y. steps: on the Trustee's position, Spin's litigation decisions are his, and his counsel has already supported the stay request in the S.D.N.Y. action and has communicated with Spin's Michigan counsel (Cert. ¶¶ 5, 13). The requested provisions ask only that each decision be made, and carried out or explained, by a date.

***C. The Florida order needs a stated decision, with a route to independent counsel if the Trustee declines or has a conflict***

The May 15 Florida Order authorizes foreclosure of the Debtor's interests in Spin and Teton Funding, which are now property of the estate, and contains a finding the Debtor disputes (Cert. ¶ 19). His motion for rehearing and clarification was denied in writing on June 2, although at the hearing the Florida court said that it would "hear the arguments on the foreclosures on a different day"; his appeal is fully briefed but, as this Court has ordered, stayed; and a later motion addressed to the order's foreclosure and sale provisions has not been decided, and the counsel who filed it has withdrawn (Cert. ¶ 20). The finding now matters here. The Trustee's counsel describes it as a finding "that Spin was his alter ego" and argues that it should receive collateral-estoppel effect (Adv. ECF No. 19 at 3, ¶ 6). Asked about the same language on June 16, the Florida court described the judgment creditors' position as "instead of saying that it's an alter ego, . . . they're saying now,

even if it's a separate company, he owns an interest in that company," and told Spin's counsel, "[i]f you have any challenges to that, . . . file a pleading" (Cert. ¶ 21).

The Debtor does not ask this Court to decide whether the finding is correct, to vacate or modify the May 15 Florida Order, to decide its effect here, or to direct any Florida court. Those questions belong to the Florida courts and, as to effect, to the adversary proceeding. He asks for a decision by a date. Relief from the order may require permissions in sequence — relief from or a determination concerning the automatic stay, leave or relinquishment of jurisdiction by the appellate court while the appeal is pending, a change to this Court's restraints as to Spin and Teton Funding, or approval of counsel's employment — and some forms of relief may be time-limited. The proposed order therefore asks the Trustee first to identify those requirements, his position, who he contends may seek relief and the responsible counsel (proposed order ¶ 6), and then either to take, or cause authorized counsel free of conflict on the matter to take, the first available step and follow it through, or to explain why not and ask this Court for instructions (*id.* ¶ 7). The motion for relief from the automatic stay as to the Florida appeals (ECF No. 33), set for the same hearing, may resolve one of those permissions; the proposed order accounts for whatever the Court decides on it. The Trustee's counsel wrote on October 26 that the Trustee would "investigate and advise" the Debtor of his position (Cert. ¶ 22). A short statement on the docket is the natural next step.

Because the Trustee's counsel relies on the finding in this Court while, on the Trustee's position, litigation decisions for Spin and Teton Funding rest with him (Cert. ¶ 2), the proposed order also provides that if the Trustee declines, or identifies a conflict, the Court will consider on notice whether Stanley Q. Casey — who, the Trustee's counsel reports, tried the Florida case, and who has appeared there for Spin (Cert. ¶¶ 15, 21) — or other independent counsel should be authorized to seek relief for a limited purpose, and on what terms as to scope, funding, conflicts and disclosure (proposed order ¶ 7). Any employment by the estate would require an application under 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014, and any change to the restraints in the adversary proceeding would be sought there. The Debtor does not suggest that relying on an order in force is improper, does not represent that Mr. Casey is available, and does not ask that the provision operate on its own: it authorizes no one to act, and it does not authorize the Debtor to act for any Subject Entity. The Debtor reserves his right to seek relief from the May 15 Florida Order in his individual capacity, subject to any permission required.

***D. Protective steps, with an alternative and a route back to the Court, respect the Trustee's judgment***

The Debtor recognizes that the Trustee has "wide latitude and deference" in exercising his business judgment, as this Court found (Adv. ECF No. 21 at 3, ¶ B); that a bankruptcy court ordinarily leaves to that judgment whether and how to litigate; and that another court controls the litigation before it. One court has declined to direct a chapter 7 trustee to litigate on the merits an action pending in another court: "The Court accordingly does not believe it has the authority under the Bankruptcy

Code to direct the trustee to litigate the Texas Action on the merits." *In re Dep't 13, Inc.*, No. 23-10691, Adv. No. 23-50591, 2024 WL 958080, at *6 (Bankr. D. Del. Mar. 5, 2024). The court described its own role as limited to reviewing those decisions of the trustee that require court approval. *Id.* The Third Circuit has likewise said that, "under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification." *In re Martin*, 91 F.3d at 395 (discussing court approval of a trustee's settlement).

The requested provision is consistent with those principles. It does not ask the Trustee to litigate anything. It asks him to allow Teton Life's existing New York counsel to present one temporary application, limited to preserving collateral pending further proceedings, that the same counsel proposed in August and described as time-sensitive (Cert. ¶ 7). It does not direct the Trustee to prosecute or defend the merits of any claim, to take a position on ownership, or to advance estate funds. According to Teton Life's counsel, the receiver already holds more than $9.3 million from a matured policy and uses those funds to pay receivership premiums and costs (Cert. ¶ 7); if the New York court extends his authority to the Additional Policies, that court can decide how their premiums are paid. And the provision leaves the decision with the Trustee: he may give the authority and allow it to be followed through; rely on an equivalent application by the receiver that he supports; or decline, stating the nonprivileged reason and any alternative protection and, if he contends the step should not be taken, asking this Court for instructions. Deference presupposes a business justification; the provision asks only that the justification be stated when the Trustee decides not to act. The application for instructions follows an established practice: "The practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment." *Mosser v. Darrow*, 341 U.S. 267, 274 (1951). That element keeps the question within the Court's supervision of its own fiduciary, instead of leaving the Additional Policies without anyone positioned to ask for their protection. *See* 11 U.S.C. § 105(a), (d). The provision does not direct the New York court or limit its control of its own proceedings, and the Court may enter the reporting provisions with or without it.

The Michigan, S.D.N.Y. and Florida steps are similar in kind. Each is procedural: it asks that another court be asked to decide how this Court's orders bear on a pending deadline or motion, or to allow time while it decides, or that any permission required before relief can be sought be requested. None asks the Trustee to brief or argue the merits, and the Florida appeal is already fully briefed. The Debtor acknowledges that the line between preserving procedural options and directing litigation is drawn here by argument, not by settled authority, and that a court could view any direction to file in another court as a litigation decision committed to the Trustee. For that reason each step carries the same alternative: the Trustee may decline, state why and ask this Court for instructions — on an expedited basis before December 10 for the Michigan deadline. A bare statement that nothing will be filed would not satisfy the order. And, as with the policy step, the Court may enter the reporting provisions without these steps.

***E. The protective steps may be heard in this contested matter, and the rest of the order stands without them***

The protective steps are stated in the notice of motion, the certification, this memorandum and the proposed order, and they are served on the same notice as the rest of the motion. The Debtor seeks administrative supervision of the Trustee and statutory reporting in this contested matter under Fed. R. Bankr. P. 9014, not an adjudication of ownership or a modification of the restraints entered in Adversary Proceeding No. 26-01494. Not every order directed to a trustee is "equitable relief" that requires an adversary proceeding under Fed. R. Bankr. P. 7001(g) (formerly Rule 7001(7)). *See In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 123–24 (3d Cir. 1999) (holding that a request to fix cure amounts and reserves was properly made by motion, explaining that the relief sought "was not classic equitable relief, such as specific performance," and declining to read Rule 7001(7) to reach "every filing" that might arguably be considered equitable); *id.* at 123 (citing *In re Vance*, 120 B.R. 181, 191–92 (Bankr. N.D. Okla. 1990), as "holding that debtor's request to compel the trustee to conclude the creditor's meeting was not equitable relief"). The Debtor recognizes that the Trustee may argue that paragraphs 2, 3, 5 and 7 of the proposed order seek equitable relief. If the Court concludes that any of them requires adversary procedure or further notice, the Debtor asks the Court to enter the severable reporting provisions and to give prompt directions for presenting the disputed relief through the proper procedure, including its relationship to his pending motion in the adversary proceeding (Adv. ECF No. 25), which asks that counsel of record for a Subject Entity be permitted to take a step required to preserve collateral or the status quo, on advance written notice to the Trustee's counsel and absent a written objection. The Debtor does not ask the Court to expand the relief in the adversary proceeding without the notice that procedure requires, and he has no objection to the matters being heard together.

## IV. THE PROPOSED ORDER IS NARROW, HAS WORKABLE DATES, AND PROTECTS PRIVILEGE

***A. Dates***

The proposed order sets short periods that run from entry. Within two business days (December 7, if the order is entered December 3): the Michigan and S.D.N.Y. steps, or the statements and applications for instructions, an initial statement on the Additional Policies, and a statement on the May 15 Florida Order. Within three business days (December 8): a deadline report, which must also state the status of the Michigan, S.D.N.Y. and Florida steps and flag any known premium, grace-period, lapse or reinstatement date through January 31, 2027. Within five business days (December 10): the policy step and the Florida step, or the statements and applications for instructions. Within seven business days (December 14): a policy report. An application for instructions about the Michigan deadline must be presented for expedited consideration before December 10. If the order is entered later than December 3, the same periods apply, and a statement that falls due after December 10 reports what was done.

Two provisions keep those dates meaningful. First, each step must be followed through. A preliminary or pending request starts a step but does not finish it; no duplicate request is required where the same relief is already pending; and each report must state the status of each step (proposed order ¶¶ 2(a), 3(a), 5(a), 7(a)). For the policy step, if counsel has not presented the application or a required preliminary request within five business days after the authority is given, the Trustee must say so (*id.* ¶ 5(a)). Second, until the reports are reviewed, the Trustee must notify the Debtor and the United States Trustee of a court deadline, or a premium, grace-period, lapse or reinstatement date, that falls before the next report or review date and could result in a default, forfeiture or lapse — as soon as reasonably practicable, before the threatened default, forfeiture or lapse if reasonably possible, and no later than two business days after learning of it — and must promptly seek on an expedited basis any instructions he contends he needs, rather than await the conference (*id.* ¶ 10). Two business days is the outer limit, not permission to wait past a known deadline. Filing this motion does not itself stay any deadline or change anyone's authority, which is why the periods are short.

Information not yet known may be identified as such, with the person responsible and the date it was requested, and supplied by supplement one business day before the status conference (*id.* ¶ 11). A filing or step that predates the order counts only to the extent it supplies current information or the required step has been taken and remains pending or in effect. The October 19 filing in the Michigan appeal, ECF No. 218 in the S.D.N.Y. action and Teton Life's August 31 letter do not by themselves satisfy the corresponding steps, and the October 27 transmission of this Court's October 23 Order to the Florida court does not by itself satisfy the Florida step (*id.* ¶ 14).

***B. Scope***

Except for the four protective steps — each of which may be declined with a statement and an application for instructions — the proposed order does not direct the Trustee to commence, prosecute, fund, settle or refrain from any action. None of those steps requires the Trustee to prosecute or defend the merits of any appeal or motion, and none guarantees any relief from another court. The Florida provisions do not ask the Court to decide whether the May 15 Florida Order or any finding in it is correct, to vacate or modify it, to determine its effect in this Court, or to direct any Florida court, and the independent-counsel provision authorizes no one to act unless the Court later so orders. The prompt-notice provision calls for notice and, where the Trustee contends it is needed, an application for instructions; it does not require any advance of estate funds or any act contrary to another court's order. The order does not modify any order entered in Adversary Proceeding No. 26-01494; decide who owns or controls any Subject Entity, claim, asset or policy, whether any policy or its proceeds is property of any estate, or whether any settlement is binding or enforceable; decide whether any stay applies in another court; direct any other court; or authorize the Debtor to act for any Subject Entity. If the Trustee decides not to take another protective step identified in a report, or cannot take it without further authorization or relief, the report says so and gives a nonprivileged reason, so that any party in interest can seek relief in time.

### *C. Privilege*

The order requires no privileged communication. The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The reports call for facts: what has been filed and in which court, on what date and under what docket number; the current deadline; who is responsible; and whether a protective application is planned. A claim of privilege over an underlying communication, such as the email to Spin's Michigan counsel described in the Certification (Cert. ¶ 5), does not excuse providing that separable information. If information is withheld as privileged, the report says so in general terms, so that the Court can set a process if one is needed without disclosing protected content.

### *D. Relationship to the Debtor's motions in the adversary proceeding*

The Debtor's motion at Adv. ECF No. 25 asks the Court to alter or amend the October 23 Order to add interim protections, including advance notice before dispositions of Subject Entity claims or assets, deadline-saving and preservation steps by counsel of record on notice absent objection, and written answers to preservation requests. His motion at Adv. ECF No. 27 seeks a sworn statement on other subjects, and his supplemental motion filed November 5, 2026 seeks other modifications. This motion is different: it asks for written reports and four protective decisions, filed in the main case and reviewed at the status conference. The Debtor has no objection to the matters being heard together. If the Court grants overlapping relief in the adversary proceeding, the Debtor will conform or withdraw any duplicative part of this motion.

## CONCLUSION

The Debtor respectfully asks the Court to enter the proposed order. If the Court declines to include any of the protective steps in paragraphs 2, 3, 5 and 7, or concludes that any of them must be presented through a different procedure, the Debtor asks that the remainder of the proposed order be entered and that the Court give prompt directions for presenting that step.

*Note on preparation.* I used generative artificial-intelligence tools to help prepare this memorandum, including to check its citations and quotations against the original sources. I have read this memorandum before signing it.

Dated: November 12, 2026

Avrumi Lubin, Debtor, pro se
605 West 42nd Street, New York, New York 10036
(718) 570-3796 | josh@tetonfunding.com