Alexander Wentworth-Ping
Counsel

schlamstone.com
awping@schlamstone.com

November 13, 2026

Schlam Stone & Dolan LLP
26 Broadway, New York, NY 10004
Main: 212 344-5400 Mobile: 516 528-9944
Direct: 212 612-1226 Fax: 212 612-1226

**BY NYSCEF**

The Honorable Nancy M. Bannon
Supreme Court of the State of New York
60 Centre Street, Room 232
New York, New York 10007

Re: *Teton Life LLC v. Golden Foothill Ins. Servs., LLC*, Index No. 650582/2022

Dear Justice Bannon:

We represent plaintiff Teton Life LLC ("Teton"). As you are aware, Avrumi Lubin, who holds a stake in Teton, filed a voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the District of New Jersey, Case No. 26-17342 (EJO), on June 25, 2026. On or about September 17, 2026, the Bankruptcy Court granted a motion to appoint a Chapter 11 Trustee for Mr. Lubin as the debtor, and Benjamin A. Stanziale was appointed as Mr. Lubin's Chapter 11 Trustee ("Trustee") soon thereafter.

On October 15, 2026, the Trustee filed an Order to Show Cause and Verified Complaint seeking to extend Mr. Lubin's bankruptcy proceeding to include certain additional entities in which Mr. Lubin has an ownership interest, including Teton. That same day, the Bankruptcy Court entered an Order to Show Cause with Temporary Relief providing preliminary relief that enjoined Mr. Lubin from taking certain actions in the name of those entities, including Teton, and stayed any litigation or enforcement of judgments against them. That order was reconfirmed on October 23, 2026. Those two orders were previously disclosed to this Court by the Trustee's counsel in a letter dated November 3, 2026, which we have attached for the record as Exhibit A.

We write to provide a brief update that the Bankruptcy Court entered another order on November 12, 2026, further extending the preliminary injunction and interim relief as to Teton. We have enclosed a copy of that order as Exhibit B. A further hearing on the preliminary injunctive relief will be held on December 17, 2026. We will update the Court after that hearing and remain available to discuss with the Court as needed.

Respectfully submitted,

/s/ Alexander Wentworth-Ping
Alexander Wentworth-Ping

cc: All counsel of record (by NYSCEF)

# EXHIBIT B

## SELECTED NOVEMBER 17, 2026 CORRESPONDENCE

### Message 1 — Lubin request

*Complete newly authored text of the two selected messages, including signatures. Earlier quoted correspondence is omitted. Formatting and line wrapping are normalized. The subject line is unchanged; the exchange addresses multiple matters.*

**Date:** November 17, 2026, 1:46 PM Eastern

**Subject:** Re: Newly discovered Chase refund — preserve separately pending determination

**From:** Josh Lubin <josh@tetonfunding.com>

**To:** Patricia A. Staiano <pstaiano@hlgslaw.com>

**Cc:** timothy.neumann25@gmail.com; mack@wilson-pllc.com; eric.lockridge@keanmiller.com; ben@stanzialelaw.com; mmoloshok@hlgslaw.com; Rachel.Wolf@usdoj.gov; Kirsten.K.Ardelean@usdoj.gov; Heidi.A.Feinman@usdoj.gov

Patricia,

Please stop the personal commentary and address the specific legal and factual issues.

My position is that the Leer trustee has no entitlement to Teton Life's policies or proceeds. I obtained stay relief in the Leer case. If you contend that an existing order nevertheless gives the Leer trustee rights affecting Teton Life's recovery, identify the order and the precise provisions you rely upon.

If the Leer trustee asserts a competing claim, identify its legal basis, the specific assets claimed, and any supporting agreement or filed pleading. Any requested relief must be pursued through the appropriate court procedure, with notice and an opportunity to oppose it. An intention to make an application does not establish entitlement to the assets.

Your email says the Leer trustee wants to make the same application I have requested. Identify that application and explain whether you propose to support it, oppose it, or pursue relief independently. Also identify the other objecting parties and their stated grounds.

The receiver's possession of funds does not answer whether every policy requiring protection is covered by his authority and actually being maintained. Please provide a policy-specific status identifying premium payments, upcoming deadlines, and any additional authority or funding required. Saying that this fight is "for another day" does not address those questions.

Settlement discussions do not answer the preservation requests. Please provide concrete actions, responsible counsel, and dates.

Separately, please continue the Chase inquiry and preserve the refund separately pending determination of its status, as requested. My personal bankruptcy estate, Spin Capital, and Teton Life must remain separately identified.

Mr. Wilson and Mr. Lockridge were already recipients on this chain. Please keep the U.S. Trustee copied and respond to the substance.

Josh

**EXHIBIT B**

**SELECTED NOVEMBER 17, 2026 CORRESPONDENCE**

## Message 2 — Staiano reply

**Date:** November 17, 2026, 2:00 PM Eastern
**Subject:** RE: Newly discovered Chase refund — preserve separately pending determination
**From:** Patricia A. Staiano <PStaiano@hlgslaw.com>
**To:** Josh Lubin <josh@tetonfunding.com>
**Cc:** timothy.neumann25@gmail.com; mack@wilson-pllc.com; eric.lockridge@keanmiller.com; ben@stanzialelaw.com; mmoloshok@hlgslaw.com; Rachel.Wolf@usdoj.gov; Kirsten.K.Ardelean@usdoj.gov; Heidi.A.Feinman@usdoj.gov

Mr. Lubin,

You are getting answers and then you ignore them; that is not personal commentary, it is a fact. You are asking me to explain the assertions by the Leer trustee; they are his. Justice Bannon is not acting on anything in the case now – all counsel and the receiver have expressed their frustration. The letter you had Mr. Wentworth-Ping send to the court on August 21, 2026 remains extant. I remind you, this is the same Judge who entered an order against you personally regarding your vexatious litigation (again, not personal – just a fact). Did you ever instruct counsel to transfer the contested assets to Teton Life? If so, what was the Courts reaction? Considering the competing interests of Cap Factor, the intervening claimants (represented by Mr. Levine) and Leer, why do you think we can obtain the relief you request? What makes you think Justice Bannon will react positively? What doubts do you have regarding Mr. Stevens' ability to maintain the policies and the premiums? All counsel have now pressured him to go after John Hancock for the money it paid to Leer in violation of the court's order. The money was supposed to be paid to him. He should seek its recovery.

Patricia A. Staiano, Esq.
Hellring Lindeman Goldstein & Siegal LLP
103 Eisenhower Parkway
Roseland, NJ 07068
T: +1.973.621.9020
D: +1.973.621.9330
F: +1.973.621.7406
pstaiano@hlgslaw.com

*Email text reproduced; earlier quoted messages omitted.*

# EXHIBIT C

## PART 1 - RESPONSE EXTENSION AND CARRIER REFERENCE

November 16, 2026. Substantive text of three messages reproduced in chronological order. Repeated signatures, confidentiality boilerplate and quoted-thread formatting are omitted. Times are Eastern.

Subject: Stanziale v. Lubin et als., Adv. Pro. No. 26-01494(EJO)
Cc: Benjamin Stanziale; Bruce S. Etterman; Matthew E. Moloshok.

**2:18 p.m. - Patricia A. Staiano to Josh Lubin**

Mr. Lubin,

Do you consent to an extension of time for the Trustee and this firm to answer or otherwise respond to your counterclaim filed in the above-referenced adversary proceeding?

**2:27 p.m. - Josh Lubin to Patricia A. Staiano**

Yes

**2:28 p.m. - Patricia A. Staiano to Josh Lubin**

Thank you. I will have a better sense of timing after consultation with our carrier. I will keep you posted.

# EXHIBIT C

## PART 2 - JET CONFLICT QUESTION AND REQUEST FOR UPDATE

Selected procedural passages from November 16, 2026 messages. Other passages, signatures, privilege-consent terms, attachments and older quoted messages are omitted. These excerpts do not describe the full scope or effect of any privilege consent. Times are Eastern.

**2:30 p.m. - Mack Wilson to Josh Lubin, Patricia Staiano and Eric Lockridge**

Subject: Re: Spin Capital Je Oil Privileged

Attached is our April 2, 2025, engagement letter with Spin for the Smith adversary and Jet appeal. Mr. Lockridge of Kean Miller LLP is copied and agrees with sending it. Mr. Lubin signed the engagement letter individually because he said at the time he was taking an assignment of Spin's claims, but we are not aware of any assignment of the claims. We do not represent Mr. Lubin individually in any matter.

Please let us know a good time to discuss the conflict question Mr. Lubin raised in his e-mail today and to get the Trustee's direction on the appeal. We are available on Wednesday or later this week.

**4:33 p.m. - Josh Lubin to Mack Wilson, Patricia Staiano and Eric Lockridge; cc: Stanziale, Moloshok, Wolf, Ardelean and Feinman**

Subject: Re: Spin Capital Je Oil Privileged

I have no objection to counsel conferring with the Trustee and his counsel about Spin's appeal. Following that discussion, please provide a written update identifying the Trustee's position on the conflict concern, the next appellate deadline, and counsel responsible for protecting it.

I write individually. This consent concerns privilege only and does not release any claim or concede any disputed issue.

# EXHIBIT D

## JET RULING AND ENGAGEMENT TERMS

**Part 1. Selected pages of the shareholder-case ruling.** *Spin Capital, LLC v. Lorne Moseley, et al.*, Adv. No. 24-07004-SMR, related to *In re Jet Oilfield Services, LLC*, No. 22-70126-SMR (Bankr. W.D. Tex.), ECF No. 76. The order is dated September 30, 2026 and was filed October 1, 2026.

Reproduced: original ECF-stamped pages **1, 2, 4, 8 and 9 of 10**. Other pages are omitted. The excerpts identify the case, the confirmation-objection history, the parties' positions, the preclusion ruling and dismissal, and the rejection of defendants' bad-faith and fee assertions. The ruling does not adjudicate malpractice.

**Part 2. April 2, 2025 engagement letter.** The following **pages 1-4** contain the representation scope, recovery and fee terms, conflict provisions, other terms and acceptance page. The separate electronic-signature audit page (page 5) is omitted. The copy was supplied with Wilson's November 16 correspondence.

The client definition and acceptance language should be read together. Reproducing the agreement does not determine claim ownership, the legal effect of a signature, the current fee balance, enforceability of any provision, or present authority to act for a company.

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 30, 2026**

**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 22-70126-SMR** |
| | § | |
| **JET OILFIELD SERVICES, LLC,** | § | |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

| | | |
|---|---|---|
| **SPIN CAPITAL, LLC,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **ADV. PROC. NO. 24-07004-SMR** |
| | § | |
| **LORNE MOSELEY, ET AL.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**(Relates to ECF No. 53)**

On October 12, 2022 (the "Petition Date"), Debtor Jet Oilfield Services, LLC ("Debtor" or "Jet") filed a voluntary chapter 11 petition in Case No. 22-70126 (the "Main Case").

On February 8, 2023, Plaintiff Spin Capital, LLC ("Spin") filed Claim Number 61-1 for $4,334,419.00 in the Main Case (the "Spin Claim"). The alleged basis for the Spin Claim was a "Revenue Purchase Agreement."

The Debtor filed its original proposed Chapter 11 plan on February 9, 2023 at ECF No. 145. Several objections were filed to the original proposed Chapter 11 plan, but no objection was filed by Spin. The Debtor filed its amended Chapter 11 that was eventually confirmed on August 28, 2023 at ECF No. 304 along with a redline of such amended plan at ECF 305 and a proposed confirmation order at ECF No. 306. Spin filed a Motion to Extend Deadline to object to confirmation at ECF No. 243 that was granted by the Court at ECF No. 253, but no objection to confirmation was filed by Spin.

The docket in the Main Case reflects that Spin objected to the Debtor's disclosure statement at ECF No. 198, that Spin was served with pleadings, and that Spin appeared for numerous hearings in the Main Case.

On August 31, 2023, the Court entered its Order Confirming Debtor's Amended Plan of Reorganization dated August 28, 2023 (the "Confirmation Order") at ECF No. 308 in the Main Case, thereby confirming the Debtor's Chapter 11 plan of reorganization (the "Confirmed Plan").

On April 1, 2024, Spin filed its Corrected Complaint in the United States District Court of the Western District of Texas as Civil Action Number 7:24-cv-00044.

On June 10, 2024, the United States District Court of the Western District of Texas referred the matter to this Court, and it is now pending as Adversary Proceeding No. 24-07004. All of the District Court pleadings were received by this Court on or about June 27, 2024.

the Alleged Transfer, such that Spin is not entitled to any value in a judgment, and (4) Owen received reasonably equivalent value for the transfer of his equity interests.

The Motion to Dismiss also states, as a condition and prerequisite for Defendants to continue operating Jet, the Confirmed Plan contained a temporary injunction restricting creditors from asserting claims against Jet and Defendants during the plan period. *See* Section 2.13 of the Confirmed Plan.

The Motion to Dismiss states that the Confirmed Plan provided Spin would receive distributions from Jet for seven years until paid in full if Spin's claim was allowed. The Motion to Dismiss argues that Spin did not object to confirmation of the Plan because Spin was satisfied with the Confirmed Plan's treatment of Spin's claim.

The Motion to Dismiss also discusses another adversary proceeding, Adv. Proc. No. 23-07003 (the "Goat Adversary") wherein Spin, along with Goat Advance, LLC and Reserve Capital Management, LLC filed suit seeking declaratory judgment as to whether Spin had valid liens on Jet's property.

On January 19, 2024, this Court issued a Final Judgment in the Goat Adversary ("Final Goat Adversary Judgment") at ECF No. 45. The Final Goat Adversary Judgment found that Owen did not have actual or apparent authority to execute an agreement on behalf of Jet and bind Jet under such agreement. The Final Judgment further provided that the agreement was not enforceable against Jet, and this Court granted Jet's objection to the Spin Claim.

On June 13, 2025, Spin filed an Opposition to the Motion to Dismiss (the "Objection") at ECF No. 63.

On June 23, 2025, Defendants filed a Reply in Support of Their Motion to Dismiss (the "Reply") at ECF No. 64.

Spin actively participated in the Main Case and the Goat Adversary and received notice of the disclosure statement, the proposed plan, and the confirmation hearing in the Main Case. The Confirmed Plan clearly provides that Owen agreed to surrender his interest in Jet. Spin is bound by the Confirmed Plan, as at the time of plan confirmation in the Main Case, Spin was a creditor with a disputed claim. Under the Bankruptcy Code, plan confirmation binds the following parties:

> the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

Even if Spin was not a creditor, some cases suggest that parties in interest may be bound by a confirmed plan if they are involved in the proceeding and had an opportunity to object to the plan. *See Southmark*, 742 F.2d at 869 (parties in interest are bound by prior reorganization orders) (citation omitted); *Espinosa*, 559 U.S. at 275 (a confirmation order is enforceable and binding when the party had notice of an error and had the opportunity to object or appeal but failed to do so).

Spin filed a proof of claim in the Main Case, participated in the plan confirmation process in the Main Case, did not object to confirmation of the Plan, and litigated the Goat Adversary to trial. The Confirmed Plan also contemplates payment of Spin's proof of claim that was filed in the Main Case to the extent it was allowed. Furthermore, given the procedural matters in the Main Case, including Spin's motion to extend time to object to the plan, but ultimate failure to object, Spin is bound by the Confirmed Plan. ECF No. 243, 253, and 308 in the Main Case.

The Court agrees with the Defendants arguments that the Confirmed Plan is *res judicata* as a matter of law to Spin's constructive fraudulent transfer under Texas law. The transfer that Spin now complains of was specifically provided for in the Confirmed Plan and Spin had every opportunity to object or even appeal, and failed to do so. Spin may not remain silent during the bankruptcy case and confirmation process, not object to confirmation of the plan, not appeal the Confirmation Order, and then file a lawsuit six months after confirmation and assert that the exact transfer provided for under the Confirmed Plan is a constructive fraudulent transfer under Texas law as pled in the First Amended Complaint.

Based on the foregoing, the Motion to Dismiss is **GRANTED**, and no further leave to amend shall be permitted given the futility of any such amendment to the First Amended Complaint as a matter of law.

The Court further finds that Defendants are not entitled to attorneys' fees despite the granting of the Motion to Dismiss, and attorneys' fees shall not be awarded at this time. The Court does not consider Spins First Amended Complaint to be filed in bad faith or as a vexatious litigant. Spin made reasonable arguments, but this Court disagrees with their arguments for the reasons set forth herein.

Based on the foregoing,

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss at ECF No. 53 is **GRANTED in part**.

**IT IS FURTHER ORDERED** that the constructive fraudulent transfer claim under Texas law asserted in Plaintiff's First Amended Complaint is dismissed with prejudice as a matter of law.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs and expenses.

**IT IS FURTHER ORDERED** that all relief not granted specifically herein is **DENIED.**

WILSON PLLC

BROOCKS "MACK" WILSON
708 MAIN STREET, 10TH FLOOR
HOUSTON, TEXAS 77002

PHONE: 713-320-8690
MACK@WILSON-PLLC.COM

APRIL 2, 2025

Avrumi "Josh" Lubin, Manager
Spin Capital LLC
1460 Arboretum Parkway
Lakewood, New Jersey 08701
josh@spincapital.com

Avrumi "Josh" Lubin, Manager
JL Special Investments LLC
- and -
Avrumi "Josh" Lubin
aylubin@gmail.com

J. Eric Lockridge
Kean Miller LLP
400 Convention Street, Suite 700
Baton Rouge, Louisiana 70802
eric.lockridge@keanmiller.com

*Via E-Mail*

Re: *Spin Capital LLC v. Thomas Smith, et al.* (Bankr. W.D. Tex. Adv. Proc. 24-07004-smr); *Spin Capital LLC v. Jet Oilfield Services LLC* (Bankr. W.D. Tex. Adv. Proc. 23-07003-smr)

Josh and Eric,

This letter confirms that Wilson PLLC (the "Firm") has agreed to represent Spin Capital LLC (the "Client" or "You") as lead counsel with respect to the matter described in this letter. This letter sets forth the basic terms that will control the attorney client relationship.

Scope of Representation. The Firm will represent the Client in adversary proceeding 24-7004 pending in the United States Bankruptcy Court for the Western District of Texas, styled *Spin Capital LLC v. Thomas Smith, et al.* (the "Case"), in any appeals from the Case and collection of any judgment in the Case, and in the related adversary proceeding 23-7003 in the United States Bankruptcy Court for the Western District of Texas styled *Spin Capital LLC v. Jet Oilfield Services, LLC*, which is currently on appeal before the United States District Court for the Western District of Texas in cause number 7:24-cv-00039 (the "Appeal"). The Case and the Appeal are collectively referred to herein as the "Matter". The Firm does not represent any other affiliates of the Client, nor its respective shareholders, directors, officers, partners, members, or employees. The scope of the representation is limited to the matters described in this paragraph and may be expanded only if the Firm and the Client separately agree in writing to do so. Kean Miller will withdraw from the Appeal but remain as co-counsel of record in the Case to assist the Firm and the Client on an as-needed basis; the Firm will be the Client's lead counsel in the Case.

Fees/Recovery. The Firm will be paid on a contingency basis described below and will account for the time it works on the Matter at a rate of $450 / hour and will keep track of any out-of-pocket expenses it incurs on the Matter. The Firm and Client have agreed that the Firm will be entitled to payment of the fees billed and reimbursement of its expenses only if damages are recovered in the Matter, and that the Client will not owe the Firm any obligations independent of recovery in the Case *unless* the Client terminates the Firm's representation as provided in the "Termination" section of this letter.

The Firm, Kean Miller LLP ("Kean Miller," and collectively with the Firm, the "Lawyers"), and the Client (collectively with the Lawyers, the "Parties") agree that any recovery in the Matter will be paid into Kean Miller's Texas Interest

On Lawyers' Trust Account. The Parties further agree that any recovery shall be applied: 1) first to the out-of-pocket expenses of the Lawyers for the Case; and 2) then to any amounts the Client may owe to Kean Miller for its representations in the bankruptcy cases of RWDY, Inc., and Jet Oilfield Services, LLC. The Parties agree and understand that the Client's outstanding debts to Kean Miller may be reduced by payments from Client and/or offset of funds recovered in other litigation before the Matter is resolved. To the extent there are funds remaining for distribution after paying the Lawyers' out-of-pocket expenses (the "Net Recovery") and outstanding invoices from Kean Miller , the Lawyers' Fee will be 40% of the Net Recovery. The Client will receive the rest of the Net Recovery.

The Parties agree that Kean Miller and the Firm shall distribute the Lawyers' Fee *pro rata* amongst them based on the amounts billed; *provided, however*, that the Firm's recovery shall never be more than 20% of the Net Recovery.

Lien on Recovery. The Client understands and agrees that the Lawyers shall have a lien on any sum recovered by way of settlement or judgment in the Case to the extent of the sums provided for in this agreement as attorney's fees and any other fees, charges, and expenses incurred as authorized by this agreement. You further agree that the Lawyers shall have all general, possessory, or retaining liens, and all special or charging liens that are available under the law.

Compromise or Settlement of Claim. The Firm will not compromise or settle the Case without the Client's approval as to the specific compromise or settlement. The Firm will notify the Client whenever an offer of compromise or settlement is received by the Firm and will inform the Client of the amount of any offer and the Firm's recommendations as to its adequacy and appropriateness. Likewise, the Client agrees to make no compromise or settlement of the Case without first informing the Firm about the amount and terms of the compromise or settlement so that the Firm may have an opportunity to review the offer and advise the Client concerning its appropriateness. However, in all cases, the Firm will abide by the Client's decision concerning whether to settle the Case.

Termination. The Client may terminate the Firm's representation of the Client in the Matter at any time, for any reason.

The Firm may withdraw from representing the Client in this Matter, and the Client and the Firm agree to execute any necessary documents to permit such withdrawal, for any reason consistent with applicable ethical rules, including unanticipated conflicts of interest, the Client's failure to cooperate with the Firm during the course of representation, and/or the Client's failure to disclose material facts.

Notwithstanding anything to the contrary in this letter, if the Client terminates the Firm's representation, the Client agrees to pay any undisputed legal fees and out-of-pocket expenses incurred in the Matter, including any fees or costs the Lawyers incur in connection with transitioning this matter to successor counsel, if any. If the Lawyers withdraw from representing the Client, the Lawyers shall be entitled to payment in accordance with the "Fees/Recovery" section of this letter.

Termination will be effected upon the other party's receiving written notice of termination.

Conflicts. Currently, we do not know of any potential or actual conflicts of interest that exist between the Firm and the Client. We may, however, be asked to represent one or more of clients in matters in the future that may be

adverse to the Client's interests and could create a potential or actual conflict of interest in connection with the representation.

The Firm is asking you to consent, in advance, to the Firm's representation of "Other Clients" in matters that may arise in the future. By signing this agreement, the Client agrees:

- That the Firm may represent Other Clients whose interests may differ from or be against your interests on legal, business, public policy, and regulatory issues, among others, including agreements, transactions, adversarial proceedings, and litigation ("Other Matters");

- That the Firm may represent Other Clients whose direct or indirect interests may differ from or be against the Client's interest in Other Matters;

- That the Firm has disclosed the risk of potential and/or actual conflicts of interest that could arise in connection with the Firm's future representation of Other Clients in Other Matters, and the Client agrees to waive any such potential and/or actual conflicts in connection with Other Matters;

- That the Client will not directly or indirectly seek to disqualify the Firm, or support such disqualification, or seek civil sanctions against the Firm or any attorney in the Firm as a result of the potential and/or actual conflicts of interest which the Client has waived in connection with the Firm's possible future representation of the interests of Other Clients and possible future relationships with other parties in Other Matters;

- That the Client will not directly or indirectly assert any claim, including but not limited to a breach of fiduciary duty claim, against the Firm or any attorney in the Firm, arising from the Firm's seeking and obtaining this consent and waiver; and

- That the Client is fully informed of the legal implications and consequences of the terms of this letter, and the Client understands that it has the right to seek independent legal advice regarding this letter and this request for your consent to and waiver of the potential and/or actual conflicts of interest the Firm has described in this letter.

Client Documents. The Firm will maintain documents the Client provides to the Firm in our client file for the matter. At the conclusion of the matter, you may advise the Firm as to which, if any, of the documents in the file you wish the Firm to return. Absent instructions from the Client, the Firm will retain documents in our files for a period of 5 years and ultimately destroy them in accordance with our record retention policy then in effect.

Entire Agreement. This agreement contains the entire agreement between the parties. It supersedes all prior agreements, arrangements, or understandings between the parties. No oral understandings, statements, promises, or inducements contrary to or consistent with the terms of this agreement exist. This agreement is subject to any modification, waiver, or addition only by means of a writing signed by all parties.

Governing Law / Forum Selection. This agreement shall be governed and interpreted according to the laws of the State of Texas and shall be deemed to have been entered into and performed in Harris County, Texas. Any legal action arising from or relating to any disputes under this Agreement shall be brought in the district courts of Harris County, Texas, and you hereby consent to personal jurisdiction of these courts for any such legal actions. If the Firm prevails in any such legal action, you further agree to pay reasonable attorneys' fees and

expenses incurred by the Firm in connection with enforcing this Agreement. With respect to Kean Miller, this letter agreement supplements the Engagement Letter between the Client and Kean Miller dated March 21, 2024.

We thank you for your trust in the Firm and look forward to continuing our mutually satisfactory relationship. Please address any questions or concerns about this letter to Mack Wilson.

Sincerely,

Broocks 'Mack" Wilson
**Wilson PLLC**
708 Main Street, 10th Floor
Houston, Texas 77002
mack@wilson-pllc.com

ACCEPTANCE: I agree to the terms of this letter.

Avrumi Lubin
______________________________
Avrumi "Josh" Lubin, for himself and on behalf of: (1) Spin Capital LLC and (2) JL Special Investments LLC

______________________________
J. Eric Lockridge, Partner, Kean Miller LLP