Avrumi Lubin, Debtor, pro se
1460 Arboretum Parkway
Lakewood, NJ 08701
732-608-4905 | josh@tetonfunding.com

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2026 NOV 18 P 3:09

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>**AVRUMI LUBIN a/k/a JOSH LUBIN,**<br>Debtor. | Case No. 26-17342 (EJO)<br>Chapter 11<br>Hearing: not set |

# DEBTOR'S OBJECTION TO THE TRUSTEE'S APPLICATION TO RETAIN EISNER ADVISORY GROUP LLC (ECF NO. 153)

Avrumi Lubin, the individual Chapter 11 debtor, objects to the proposed employment of Eisner Advisory Group LLC ("Eisner"). The application seeks authority for asset recovery and avoidance analysis, yet the professional's certification reports no connections of the firm or its partners. A current partner of this applicant performed the accounting work addressed in the RWDY litigation, and the confirmed RWDY plan gives Spin Capital, LLC ("Spin") a beneficial interest in certain litigation recoveries. The Trustee alleges that Lubin's membership interest in Spin is property of this estate. The requested scope and the identified connection require examination together.

The Court should deny ECF No. 153 as submitted. Alternatively, it should defer approval, require a verified supplemental disclosure, and determine eligibility for a defined engagement before authorizing employment. This objection seeks independent accounting assistance for the estate on an adequate record; it does not ask the Court to decide the underlying accountant claims.

**I. The requested engagement reaches recovery decisions, not only tax preparation.**

The application identifies tax preparation and other appropriate assistance. ECF No. 153, para. 5. The accompanying certification also proposes assembling records, recovering receivables and other assets, advising which avoidance actions to bring, and performing other work requested by the Trustee and counsel. ECF No. 153-1, para. 4(a)-(e). Neither the application nor its proposed order excludes work concerning Spin or the identified recoveries.

Paragraph 8 of the certification addresses Anthony R. Calascibetta's personal connections. Paragraph 9 separately addresses the connections of the firm and its partners after reasonable and diligent inquiry. Each answers "None." Paragraph 10 addresses disinterestedness and adverse interests. Those answers do not explain the connection identified below, the proposed staffing, or how the assignment would avoid any overlapping evaluation.

Calascibetta's signature is not itself a staffing restriction. Rule 2014(b) permits partners, members and regular associates of an employed accounting firm to act without a further employment order. The firm therefore should identify who will perform and supervise the work and how the relevant connections were evaluated.

**II. The public record identifies a specific connection and its limits.**

*A. A current partner performed the accounting work addressed in RWDY.*

Eisner's directory identifies Trent Millican as a partner of Eisner Advisory Group LLC and a former director of Postlethwaite & Netterville, APAC ("P&N"). Exhibit A, Part 1. This is a connection to the applicant itself. Eisner Advisory Group LLC and EisnerAmper LLP are separately identified entities; this objection does not presume that they are interchangeable or that the applicant assumed P&N's liabilities.

In *In re RWDY, Inc.*, No. 22-11308 (Bankr. W.D. La.), the court described its authorization of Millican and his firm as accountants and the P&N declaration supporting that employment. ECF No. 561 at 2 (Mar. 24, 2025), reproduced in full in Exhibit A, Part 2. The court denied rescission

and disgorgement. It found insufficient support for the alleged knowing, intentional or reckless misrepresentation, and expressly left adequacy of the connections disclosure undecided because that ground had not been raised. *Id.* at 6-7. The court also stated that Millican received none of the stolen funds and that the accountants stopped working when the dispute arose. *Id.* at 4 n.2, 6.

The issue here is prospective: whether the proposed assignment would require this applicant to evaluate rights or recoveries connected to its current partner's prior work. The Louisiana ruling neither establishes malpractice liability nor resolves eligibility for the proposed New Jersey engagement.

*B. The plan connects those recoveries to Spin, whose membership interest the Trustee claims.* The confirmation order approves the attached plan. ECF No. 501, p. 6, para. 1. That plan identifies Spin as an MCA claimant holding Claim 15, distinguishes the RWDY Litigation Trust from the RWDY Distribution Trust, and assigns specified claims to the Litigation Trust. It provides that the MCA claimants share pro rata in any proceeds as trust beneficiaries. RWDY ECF No. 501, Ex. A, ECF-stamped pp. 17, 20, 36-39, especially section 5.6.3(F)-(M), reproduced in Exhibit A, Part 3. The same provisions disclaim any assurance of recovery; section 5.6.5 provides for no direct payment on the MCA claims. The interest asserted here is therefore contingent, not a guaranteed distribution or ownership of the trust's causes of action.

The Trustee alleges that Lubin's membership interest in Spin belongs to this estate. Adv. No. 26-01532, ECF No. 1, para. 8. On that theory, assessing the interest may require evaluating Spin's contingent recovery rights. If Eisner will perform that assessment, evaluate related recoveries or recommend whether further investigation is worthwhile, the Court should determine whether its current partner's prior engagement affects that advice. If those tasks are excluded, the exclusion and responsibility for the work should be stated. Lubin raises this issue without conceding the disputed scope of the Trustee's authority or ownership of any company or trust claim.

*C. The Jet record supports a limited additional personnel inquiry.*

The Jet Oilfield Services, LLC docket records P&N's employment application and approval and a later adversary complaint by Spin and two other creditors against Jet. No. 22-70126 (Bankr. W.D. Tex.), ECF Nos. 80, 111, 193; Exhibit A, Part 4. Those entries support asking whether proposed personnel worked on Jet. They do not establish that Millican did so, that P&N represented Spin, or that any professional incurred liability.

**III. Disclosure permits the Court to decide eligibility; a connection alone does not decide it.**

Section 327(a) requires a professional to be disinterested and to hold or represent no interest adverse to the estate. Section 101(14)(C) includes materially adverse interests arising from direct or indirect relationships. Rule 2014(a)(2)(F) and (a)(3) separately require disclosure of connections. The employment proponent must bring a concrete potential conflict to the Court's attention rather than leave the Court to assemble it from other records. *In re BH & P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir. 1991). A reportable connection and a disqualifying conflict remain different questions.

An actual conflict requires disqualification; a potential conflict is subject to the Court's discretion; appearance alone is insufficient. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476-77 (3d Cir. 1998). In *In re Boy Scouts of America*, 35 F.4th 149, 158-59 (3d Cir. 2022), the court examined the estate's economic interests and the engagement's actual limits, including separate insurance counsel, in affirming retention. The present record provides neither a comparable division of work nor a verified explanation of the identified connection.

*In re Pillowtex, Inc.*, 304 F.3d 246, 251-54 (3d Cir. 2002), involved a substantial alleged preference, not a prior accounting engagement. It nevertheless cautions against approving employment first and postponing resolution of a substantial eligibility question. Appropriate scope limits may address a potential conflict in an otherwise eligible engagement; they do not dispense with an eligibility determination.

Lubin presents this objection in his individual capacity under section 1109(b). He does not purport to represent Spin or either trust. Nor does he rely on creditor representation alone under section 327(c), allege intentional nondisclosure, or ask this Court to determine a current Louisiana appeal. A dismissal, time bar or other disposition may reduce or eliminate the economic significance of particular recoveries. If Eisner relies on a disposition, its supplement should identify the actual order and its scope and explain what related work, if any, remains within this engagement. This Court need not decide the underlying claims to require an accurate employment record.

**IV. The Court should resolve the identified questions before approving employment.**

**Primary relief.** Deny the application as submitted, without prejudice to a properly supported, defined engagement or employment of another qualified professional. Lubin favors an accountant independent of the identified matters. Proposed Order A preserves the Trustee's ability to obtain necessary services without making an unsupported finding of permanent disqualification.

**Alternative relief.** Defer the application and require a verified supplement within seven days after entry, followed by seven days after service for responses, computed under Rule 9006. The supplement should identify the inquiry performed; relevant firm, partner and personnel connections; staffing and supervision; the actual work contemplated; and any material economic interest or obligation relating to the identified claims. It should also identify any work already performed, because the application requests a November 11 effective date. ECF No. 153-1, para. 11; ECF No. 153-3, paras. 2, 4. No commencement of work is presumed.

If Eisner proposes an unrelated tax assignment, it should identify the services that remain, the recovery or valuation decisions excluded, and who would address those decisions independently. Necessary routine tax information should be distinguished from judgments concerning ownership, liability, value or litigation strategy. The Court can then decide eligibility, scope and

safeguards on a developed record. Proposed Order B authorizes no employment and leaves any later approval to a separate order.

If employment is later approved, Lubin requests that Trent Millican be excluded from directly or indirectly performing, supervising or advising on the investigation, valuation or pursuit of recoveries arising from his prior RWDY work, unless expressly permitted by further order after notice and an opportunity to respond. Any proposed retention order should address that exclusion expressly. Excluding Millican would not itself establish the firm's eligibility under section 327.

Lubin requests a hearing if material disputed facts require one, recognizing the Court's discretion under D.N.J. LBR 2014-1(b)(3). The requested relief determines neither malpractice liability nor ownership of any recovery. Rights concerning compensation under sections 328(c) and 330 remain reserved.

Preparation disclosure: I used generative artificial-intelligence assistance. I have reviewed this paper before signing and remain responsible for its factual and legal content.

Dated: 11/18/26

Avrumi Lubin, Debtor, pro se